1 | LAW OFFICES OF JOHN Z. SHAFAI
2 | John Z. Shafai [State Bar No. 170518]
| 9461 Charleville Boulevard
3 | Beverly Hills, California 90212
| Telephone: (310) 788-2889
4 | Facsimile: (310) 788-2885
| john@shafailaw.com
5 |
| Attorneys for Petitioner,
6 | OPEN CAPITAL, LLC, as Assignee of Plaintiff, A.N.
7 |
8 |                UNITED STATES DISTRICT COURT
9 |               CENTRAL DISTRICT OF CALIFORNIA
10 |
11 | ROSA NAVAS, an individual; ALREDO )    CASE NO.  15-cv-9515 SVW (JCx)
12 | NAVAS, an individual; A.N., a minor, individually )
| and as successor in interest to Sergio Navas and by )   [*Honorable Stephen V. Wilson*]
13 | and through his mother and Next Friend Christel )
14 | Emmet; J.N., a minor, individually and as )    NOTICE OF MOTION AND MOTION BY
| successor in interest to Sergio Navas and by and )   PETITIONER OPEN CAPITAL, LLC, FOR
15 | through his mother and Next Friend Christel )    APPROVAL OF TRANSFER OF
16 | Emmet; A.N., a minor, individually and as )    STRUCTURED SETTLEMENT PAYMENT
| successor in interest to Sergio Navas and by and )   RIGHTS; MEMORANDUM OF POINTS
17 | through his mother and Next Friend Christel )    AND AUTHORITIES; DECLARATION OF
18 | Emmet; )    JOHN Z. SHAFAI
19 | )
|                              Plaintiffs, )    Date:   November 30, 2020
20 | )    Time:   1:30 p.m.
|                        vs. )    Place:  Courtroom 10A
21 | )             Unite States District Court
22 | CITY OF LOS ANGELES, a municipality; )             350 West First Street, 10th Floor
| BRIAN VAN GORDON, an individual; and )             Los Angeles, California 90012
23 | DOES 1 through 10, inclusive, )
24 | )
|                              Defendants. )
25 | )
26 | )
| )
27 | )

28 |
29 |
30 |
31 |

1    TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR
2    ATTORNEYS OF RECORD,
3    YOU ARE HEREBY NOTIFIED THAT on November 30, 2020, at 1:30 p.m., in
4    Courtroom 10A of the United States District Court, located at the located at 350 West First
5    Street, 10th Floor, Los Angeles, California 90012, Open Capital, LLC, hereby moves and will
6    move this Court for an order confirming the transfer of structured settlement payment rights by
7    A.N., approved by the Los Angeles County Superior pursuant to California Insurance Code,
8    section 10139.5, and 26 U.S.C. §5891, is permissible.
9    This motion is brought pursuant to California Insurance Code, section 10139.5, and 26
10   U.S.C. §5891.
11   DATED: October 26, 2020                    Respectfully,
12                                              LAW OFFICES OF JOHN Z. SHAFAI
13
14                                      By: _____
15                                              JOHN Z. SHAFAI,
16                                              Attorneys for Petitioner,
                                                OPEN CAPITAL, LLC
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

NOTICE OF MOTION AND MOTION BY PETITIONER OPEN CAPITAL, LLC, FOR APPROVAL OF TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS; MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATION OF JOHN Z. SHAFAI

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

A "structured settlement" is a settlement of a personal injury lawsuit where the cash consideration is paid in accordance with a fixed schedule, usually over the course of many years. Some rely on those periodic payments for ongoing medical treatment and income maintenance. The vast majority does not. This is one such case. Often, consumers who have agreed to receive a structured settlement payment stream (and who are not relying upon these payments for ongoing treatment or income maintenance) later will want to "cash out" some of their future payments in exchange for "up-front" consideration. While some insurers in some instances may agree to offer consumers "cash out" options, specialty finance companies now provide consumers flexible alternatives. Consumers receiving such a settlement can now choose to sell some of their future payments for up-front consideration.

On January 22, 2002, President George W. Bush signed into law House of Representatives Bill No. 2884 ("H.R. 2884"), which enacted into law amendments to the Federal Internal Revenue Code to impose an excise tax on the transfer of structured settlement payment rights, if the transfer is not approved by a state court. The enactment of H.R. 2884, 26 U.S.C. §589, made California Insurance Code, section 10139.5 (the "Transfer Act") operative, thereby granting the state court jurisdiction to hear a petition brought thereunder and grant the requested relief if appropriate.

A.N. agreed to transfer some of his structured settlement payments to Petitioner, Open Capital, LLC ("Petitioner"). Pursuant to 26 U.S.C. §589, and California Insurance Code, section 10139.5, Petitioner brought a Petition in Los Angeles County Superior Court for approval of the that transfer. The state court has approved that transfer. The payment obligor, Pacific Life and Annuity Services, Inc., and the payment issuer, Pacific Life Insurance Company, out of an abundance of caution, have requested that Petitioner obtain approval from this Court, the court that approved the underlying structured settlement agreement.

### II.

### STATEMENT OF FACTS

This Court approved a settlement in this case providing for future payments to A.N. as follows: $1,690.05 payable monthly, guaranteed 8 years, commencing on October 30, 2018,

-3-

through and including September 30, 2026; and a lump sum payment of $49,929.46 due October 30, 2024.

The settlement documents contain form language that incudes the following: "Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise."

A.N. agreed to assign to Petitioner 43 payments of $1,098.53 payable monthly, commencing on March 30, 2023, through and including September 30, 2026; and a lump sum payment of $45,000.00 due October 30, 2024. A.N. did not assign all his payments.  He assignment a portion thereof.

On June 19, 2020, Petition filed a Petition in Los Angeles County Superior Court, Case No. 20STCP01954. The Petition was approved by that Court on September 14, 2020.

### III

### LEGAL ARGUMENT

A.     **The California Transfer Act Contemplates that a Transfer May Contravene the Terms of the Underlying Settlement.**

The Transfer Act, by its own terms, contemplates that a transfer may contravene the terms of the underlying structured settlement agreement.  The Transfer Act therefore sets forth the remedy if a transfer indeed contravenes the terms of the underlying structured settlement agreement.  That remedy does not include an outright prohibition of the transfer.  That remedy is limited to allowing the transfer to go through, but forcing the transferee to indemnify the structured settlement obligor and the annuity issuer for any damages occasioned by them as a result of the transfer.

Insurance Code, section 10137(b) requires that the transfer "complies with the requirements of this article, will not contravene other applicable law, and is approved by a court as provided in Section 10139.5." The Transfer Act, however, does not prohibit a transfer that contravenes the underlying structured settlement agreement, particularly on the basis of an anti-assignment provision.  To highlight the fact that the California Legislature contemplated that these transfers would invariably violate the terms of the underlying structured settlement

agreement (i.e., any purported prohibition against assignment). Insurance Code, section 10139.5(b)(2) provides that "*the transferee shall be liable to the structured settlement obligor and the annuity issuer if the transfer <u>contravenes the terms of the structured settlement agreement</u> . . .*" (emphasis added). In addition, Insurance Code, section 10139.3(d) also provides for indemnification if the transfer does not comply with the terms of the structured settlement agreement ("*The transferee any and assignee shall be liable to the structured settlement obligor and the annuity issuer . . . as a consequence of any <u>failure of the transferee or assignee to comply with . . . the terms of the structured settlement agreement</u>*").

The Transfer Act simply forces the transferee to indemnify the obligor and the annuity issuer to the extent that the subject transfer contravenes the terms of the underlying settlement agreement.

What is the Legislature saying here? It is saying: Go right on a head and approve a transfer if it violates the terms of the structured settlement agreement, but the transferee of those payments (here, Open Capital, LLC) had better be prepared to indemnify the obligor (here, Pacific Life and Annuity Services, Inc.) and the annuity issuer (here, Pacific Life Insurance Company) for their damages for any contravention of the underlying structured settlement agreement.

The sole remedy for a structured settlement obligor or annuity issuer for any damages that may inure as a result of a transfer made in violation of the underlying structured settlement agreement is to turn to the transferee to enforce the statutorily imposed indemnification pursuant to Insurance Code, section 10139.5(b)(2), and Insurance Code, section 10139.3(d). The remedy does not include an outright prohibition against the transfer. If that were what the Legislature wanted, the Legislature would have so provided.

**B.    A.N. Can Waive a Contractual Benefit that Was for His Benefit.**

A.N. is now an adult. It is settled in California that a party benefited by a clause against assignment in a contract may waive his or her rights thereto. Waiver can be explicit or it can be implied from a party's consent. Oliker v. Gershunoff, 195 Cal.App.3d 1288, 1297 (1987). Here, the waiver is explicit by virtue of Oporto having entered into the Transfer Agreement. It is settled that "[a] contracting party may waive provisions placed in a contract solely for his benefit." Wesley N. Taylor Co. v. Russell, 194 Cal.App.2d 816, 828 (1961). See also, Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335 (1947) (A party benefited by a clause

-5-

against assignment in a contract or lease may waive his right thereunder by dealing with an assignee with regard to the contract or lease with knowledge of the assignment).

26 U.S.C. §589 makes clear that there are no adverse tax consequences to the structured settlement obligor and annuity issuer should a transfer occur. And the payee, A.N. is still protected by Internal Revenue Code, section 104. So this turns on whose benefit the provision is for. It is for A.N.'s and he has, by virtue

**C.      The Transfer is in A.N.'s Best Interests.**

Before a California Court can approve a transfer for structured settlement payment rights, the Court must make the following findings:

1.      The transfer is fair and reasonable and is in the best interest of the Payee, taking into account the welfare and support of the Payee's dependents, if any. See, Insurance Code, section 10139.5(a)(1).

2.      The Payee has been advised in writing by Petitioner to seek independent professional advice regarding the transfer and has either obtained such advice or has waived, in writing, the opportunity to receive the advice. See, Insurance Code, section 10139.5(a)(2).

3.      Petitioner has complied with the notification requirements pursuant to Insurance Code, section 10139.5(f)(2).

4.      The transfer does not contravene any applicable law, any applicable statute or the order of any court or other governmental authority. See, Insurance Code, section 10139.5(a)(4).

5.      The Payee understands the terms of the Transfer Agreement, including the terms set forth in the Disclosure Statement required by Insurance Code, section 10136. See, Insurance Code, section 10139.5(a)(5).

6.      The Payee understands and does not wish to exercise the Payee's right to cancel the Transfer Agreement. See, Insurance Code, section 10139.5(a)(6).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-6-

NOTICE OF MOTION AND MOTION BY PETITIONER OPEN CAPITAL, LLC. FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN Z. SHAFAI

/ / /

In approving the transfer on September 14, 2020, the Court made those findings. The Court set a future order to show cause hearing in order to monitor the undersigned counsel's submission of an order that contains this language in keeping with the Court's tentative ruling to approve the transfer, which was confirmed at the hearing.

DATED:  October 26, 2020                    Respectfully noticed,

LAW OFFICES OF JOHN Z. SHAFAI

By:     _____
          JOHN Z. SHAFAI,
          Attorneys for Petitioner,
          OPEN CAPITAL, LLC

## <u>DECLARATION OF JOHN Z. SHAFAI</u>

I, JOHN Z. SHAFAI, declare and state as follows:

1.      I am attorney at law duly licensed to practice law before all of the courts of the State of California and before this Court.  I represent the Petitioner Open Capital, LLC ("Petitioner") in this action. I am providing this Declaration in support of Petitioner's Motion for Approval of Transfer of Structured Settlement Payment Rights filed in this matter.  I have personal knowledge of the facts stated herein, and if called as a witness, I would and could competently testify thereto.

2.      This Court approved a settlement in this case providing for future payments to A.N. as follows: $1,690.05 payable monthly, guaranteed 8 years, commencing on October 30, 2018, through and including September 30, 2026; and a lump sum payment of $49,929.46 due October 30, 2024. True and correct copies of the settlement documents provided to me by Petitioner are attached hereto as Exhibit "1" and are incorporated herein by this reference.

3.      The settlement documents contain form language that incudes the following: "Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise."

4.      A.N. agreed to assign to Petitioner 43 payments of $1,098.53 payable monthly, commencing on March 30, 2023, through and including September 30, 2026; and a lump sum payment of $45,000.00 due October 30, 2024. A.N. did not assign all his payments.   He assignment a portion thereof.

5.      On June 19, 2020, Petition filed a Petition in Los Angeles County Superior Court, Case No. 20STCP01954. A true and correct copy of the Petition filed in Case No. 20STCP01954 is attached hereto as Exhibit "2" and is incorporated herein by this reference. A true and correct copy of the Notice of Hearing filed in Case No. 20STCP01954 is attached hereto as Exhibit "3" and is incorporated herein by this reference.

6.      The Petition was approved by that Court on September 14, 2020. A true and correct copy of the minute order / docket in Case No. 20STCP01954 is attached hereto as Exhibit

-8-

1   "4" and is incorporated herein by this reference.

2       7.    In approving the transfer on September 14, 2020, the Court made the required

3   findings under the California Transfer Act. The Court set a future order to show cause hearing in

4   order to monitor my submission of an order that contains this language in keeping with the

5   Court's tentative ruling to approve the transfer, which was confirmed at the hearing.

6       I declare under penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct and that this Declaration was executed this 26th day of October,

8   2020.

9

10   JOHN Z. SHAFAI

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

NOTICE OF MOTION AND MOTION BY PETITIONER OPEN CAPITAL, LLC, FOR APPROVAL OF TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT RIGHTS; MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATION OF JOHN Z. SHAFAI

# EXHIBIT "1"

# EXHIBIT "1"

Dale K. Galipo, Esq. (SBN 144074)
Melanie T. Partow, Esq. (SBN 254843)
**THE LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-333
Fax: (818) 347-4118
dalekgalipo@yahoo.com
mpartow@galipolaw.com
*Attorneys for Plaintiffs*

LUIS A. CARRILLO Esq. Bar No. 70398
Law Offices of Luis A. Carrillo
A Professional Corporation
1499 Huntington Drive Suite 402
South Pasadena, CA 91030
P: (626) 799-9375
F: (626) 799-9380
email: lac4justice@gmail.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA NAVAS, an individual; ALFREDO NAVAS, an individual; A.N., a minor, individually and as successor in interest to Sergio Navas and by and through his mother and Next Friend Christel Emmet; J.N., a minor, individually and as successor in interest to Sergio Navas and by and through his mother and Next Friend Christel Emmet; A.N., a minor, individually and as successor in interest to Sergio Navas and by and through her mother and Next Friend Christel Emmet, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, a municipality; BRIAN VAN GORDON, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 15-cv-9515 SVW (JCx) <br><br> [*Honorable Stephen V. Wilson*] <br><br> **NOTICE OF UNOPPOSED EX PARTE PETITION AND UNOPPOSED EX PARTE PETITION FOR ORDER APPROVING THE COMPROMISE OF CLAIMS BY MINOR PLAINTIFFS A.N., J.N., A.N., A.B., AND R.B.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DALE K. GALIPO IN SUPPORT AND EXHIBITS; [PROPOSED] ORDER** |

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTIE THAT**

Petitioner Christel Emmet (guardian ad litem for the minor plaintiffs A.N., J.N., and A.N.) and Petitioner Blanca Chevez (guardian ad litem for the minor plaintiffs R.B. and A.B.), by and through Plaintiffs' counsel Dale K. Galipo, will and hereby does petition this Court, ex parte, for an Order approving the settlement of the claims of the minor plaintiffs A.N., J.N., A.N., R.B., and A.B and the distribution of the settlement funds.

Petitioners make this application under Federal Rule of Civil Procedure 17(c)(2), Local Rule 83-5.1, Local Rule 83-5.3, and California Code of Civil Procedure 372. The grounds for this application are set forth in the attached Memorandum of Points and Authorities and Declaration of Dale K. Galipo.

Prior to filing this *ex parte* application, Plaintiffs' counsel contacted defense counsel in compliance with Local Rule 7-19 through 7-19.1. Defense counsel are:

Cory Brente
Colleen Smith
200 N. Main St., 6th Floor
Los Angeles, CA 90012
Phone: (213) 978-7021
Fax: (213) 978-8785
Email: cory.brente@lacity.org
Email: colleen.smith@lacity.org

Defense counsel stated that they **do not oppose** the filing of this petition. *See* Declaration of Dale K. Galipo in Support of Unopposed Ex Parte Application for Approval of Minor's Compromise ("Galipo Decl.") at ¶ 2.

The reason for seeking approval of the minors' compromise on an *ex parte* basis is to ensure that the rates currently locked in for the annuity structured payment schedules by the life insurance companies, which were vetted and selected for each minor plaintiff by their guardians ad litem, do not expire. *Id.*

1   Respectfully submitted,
2   DATED:  April 17, 2017                     LAW OFFICES OF DALE K. GALIPO
                                               LAW OFFICES OF LUIS A. CARRILLO
3

4                                              By:_____s/ Melanie T. Partow_____
                                                  Dale K. Galipo
5                                                 Luis A. Carrillo
                                                  Melanie T. Partow
6                                                 Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PETITION FOR APPROVAL OF MINORS' COMPROMISE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Christel Emmet, guardian *ad litem* for minor plaintiffs A.N., J.N., and A.N., and Blanca Chevez, guardian ad litem for minor plaintiffs R.B. and A.B., hereby submit a proposed order for approval of the minors' compromises in this matter, and request that the Court approve the proposed distributions of the minors' funds.

The instant claims of minor plaintiffs A.N., J.N., A.N., and R.B., and A.B. arose out of the shooting-death of Sergio Navas by City of Los Angeles Police Officer Brian Van Gordon on March 5, 2015. Galipo Decl. at ¶ 3. The plaintiffs are Sergio Navas' parents (Rosa Navas and Alfredo Navas) and Sergio Navas' five minor children, A.N., J.N., A.N., R.B. and A.B.

The parties agreed to settle the case. The agreement obligates Defendants to pay to the plaintiffs and their attorneys of record the total sum of $2,500,000.00. *Id.* at ¶ 5. Plaintiffs (including the guardian ad litem for the minor plaintiffs) have agreed, among themselves, that the 2,500,000 gross settlement proceeds are to be distributed as follows:

| | |
|---|---|
| Alfredo Navas | $250,000 |
| Rosa Navas | $250,000 |
| A.N. | $400,000 |
| J.N. | $400,000 |
| A.N. | $400,000 |
| R.B. | $400,000 |
| A.B. | $400,000 |

Galipo Decl. at ¶ 5.

///
///
///

Local Rule 83-5.1 provides that "[i]nsofar as practicable, hearings on petitions to settle, compromise or dismiss a claim in an action involving a minor or incompetent person shall conform to California Code of Civil Procedure Section 372 and California Rule of Court 3.1384." These code sections refer to the requirement of court approval and incorporate other rules requiring disclosure of various pertinent facts. California Rule of Court 3.1384 provides that "[a] petition for court approval of a compromise or covenant not to sue under Code of Civil Procedure section 372 must comply with rules 7.950, 7.951, and 7.952." Petitioners hereby provide and disclose the required information in this memorandum and the attached Declaration of Dale K. Galipo.

## II. DISCUSSION

### A. Procedural Framework

District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors. Rule 17(c) provides, in relevant part, that a district court "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." FED. R. CIV. P. 17(c). In general, all transactions involving the claims of minors and their proceeds are subject to court approval.

The Local Rules provide the applicable procedural framework. Local Rule 17-1.2 provides that no claim involving a minor "shall be settled, compromised, or dismissed without leave of the Court embodied in an order, judgment, or decree." Local Rule 17-1.3 provides that "[i]nsofar as practicable, hearings on petitions to settle, compromise or dismiss a claim in an action involving a minor or incompetent person shall conform to California Code of Civil Procedure Section 372 and California Rule of Court 3.1384." These code sections refer to the requirement of court approval and incorporate other rules requiring disclosure of various pertinent facts. California Rule of Court 3.1384 provides that "[a] petition for court approval of a compromise or

1  covenant not to sue under Code of Civil Procedure section 372 must comply with rules
2  7.950, 7.951, and 7.952." Finally, Local Rule 17-1.5 provides that in call cases
3  involving the claims of minors, "the Court shall fix the amount of attorney's fees."
4      Because A.N. (1), J.N., A.N. (2), R.B., and A.B. are minors, they and their
5  guardian ad litems propose to use their portions of the award to individually purchase
6  an annuity for each minor which will distribute the money over time with interest, with
7  guaranteed payments.
8      Accordingly, pursuant to the above Local Rules, Movants and plaintiffs'
9  attorneys make the following disclosures and request that the Court approve the
10 following transactions.

**B.    Disclosures pursuant to California Rule of Court 7.950**

(1)    Petitioners are Christal Emmet (for minor plaintiffs A.N., J.N., and A.N. and
Blanca Chevez (for minor plaintiffs R.B. and A.B.).   Petitioners are the court-
appointed guardian *ad litem* for the four minor Plaintiffs.

(2)    The claimants are the five minor plaintiffs A.N., J.N., A.N., R.B., and A.B.

(3)    The ages and gender of each claimant is as follows:

Minor Plaintiff A.N.(1) is a 17-year-old male born on October 30, 1999 to
Christel Emmet and decedent Sergio Navas.

Minor Plaintiff J.N. is a 13-year-old male born on August 19, 2003 to Christel
Emmet and decedent Sergio Navas.

Minor Plaintiff A.N. (2) is a 12-year-old female born on June 15, 2004 to
Christel Emmet and decedent Sergio Navas.

Minor Plaintiff R.B. is a three-year-old female born January 16, 2014 to Blanca
Chevez and decedent Sergio Navas.

Minor Plaintiff A.B. is a three-year-old male born January 16, 2014 to Blanca
Chevez and decedent Sergio Navas.

Galipo Decl. at ¶ 4.

(4)     The nature of the plaintiffs' claims are set forth in the operative complaint filed in this action.

(5)     The damages for the claimants arise from their individual losses of their father's comfort, care, companionship, training, support, and guidance, as well as survival damages for the decedent's own loss of life, loss of enjoyment of life and physical pre-death pain and suffering. *Id.* at ¶ 3.

(6)     The claimants have not received medical treatment in connection with this case. *Id.*

(7)     Medical billing is not relevant. *Id.*

(8)     The gross amount of the settlement that Defendants agree to pay is $2,500,000. Of the $2,500,000 gross settlement amount, Plaintiffs and Petitioners agree to distribute $400,000 to each minor, for a gross total of $2,000,000 of the $2,500,000 being distributed to the minor plaintiffs.[1]  Plaintiffs' counsel, The Law Offices of Dale K. Galipo and The Law Offices of Luis A. Carrillo, are requesting attorneys' fees of 40 percent of the $2,000,000 in gross settlement proceeds that Plaintiffs and Petitioners agree to distribute to the minor plaintiffs, or $800,000. Galipo Decl. at ¶¶ 8-12, 18.  The contingency retainer agreement between Plaintiffs and their attorneys provide for a 40 percent contingency fee and Section 1988 fees. *Id.* at ¶ 18.

        Plaintiffs' attorneys also seek reimbursement for litigation costs of $4,335. *Id.* at ¶ 6.  Of the total litigation costs, $600 was incurred by the minor plaintiffs R.B. and A.B. only and concern DNA testing.  Plaintiffs and Petitioners agreed among themselves that the remaining $3,735 in litigation costs would be split six ways, resulting in the payment of $622.50 in costs by A.N., $622.50 in costs by J.N., $622.50 in costs by A.N., $922.50 in costs by R.B. (one-sixth of the costs incurred by all

---

[1] Of the $500,000 gross remaining settlement funds, Plaintiffs and Petitioners agree to distribute $250,000 to the Rosa Navas, the decedent's mother and $250,000 to Alfredo Navas, the decedent's father.

plaintiffs plus $300 for half of the DNA testing costs), $922.50 in costs by A.B. (one-sixth of the costs incurred by all plaintiffs plus $300 for half of the DNA testing costs), and the final one-sixth of the costs by the parent plaintiffs ($311.25 in costs by Alfredo Navas and $311.25 by Rosa Navas). *Id.*

Plaintiffs' attorneys also seek reimbursement for several money advances made to Petitioner Christel Emmet for assistance with necessary living expenses for A.N., J.N., and A.N. during the two year course of this litigation in the amount of $23,400. *Id.* at ¶ 7.

The contingency fee, litigation costs and advances are the amounts that the Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo would be due under the existing retainer agreements. *Id.* at ¶¶ 10-12, 18. This case involved a substantial amount of risk. *Id.* at ¶ 19. If Plaintiffs had prevailed at trial and a likely appeal, statutory attorneys' fees due to Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo under the retainer agreements likely would exceed $1,500,000.00. *Id.* If Law Offices of Dale K. Galipo were not awarded a fully compensatory fee in such cases, it would not be able to take them. *Id.* In turn, minor plaintiffs such as A.N., J.N., A.N., R.B., and A.B. would not be able to attract competent counsel who could achieve similar results. *Id.*

(9)     In summary, the gross amount of the settlement of A.N.(1)'s claims is $400,000. After deducting the agreed upon contingency attorney fees, litigation costs, and reimbursement for monies advanced for the minor plaintiff's necessary daily needs during the course of the litigation, the total net settlement due to A.N.(1) is $231,577.5. A.N.(1) will reach age 18 in 2017.   It is proposed that $41,577.50 be placed in a blocked account and that $190,516.00 be used to fund a guaranteed structured settlement annuity that will make scheduled payments directly to A.N.(1). Attached hereto as "**Exhibit A**" to this Petition, is a proposed structured settlement annuity, which is incorporated herein in its entirety by reference. *Id.* at ¶ 8. A.N.(1) and his

guardian *ad litem* agree to this proposal and believe that it is in the best interests of A.N. The net payout to A.N.(1) will be $253,235.76.

The gross amount of the settlement of J.N.'s claims is $400,000. After deducting agreed attorneys' fees, litigation costs, and reimbursement for monies advanced for the minor plaintiff's necessary daily needs, the total net settlement due to J.N.(1) is $231,577.5. It is proposed that $231,577.5 be used to fund a guaranteed structured settlement annuity. Attached hereto as "**Exhibit B**" to this Petition, is a proposed structured settlement annuity, which is incorporated herein in its entirety by reference. *Id.* at ¶ 9. A.N.'s guardian *ad litem* agrees to this proposal and believes that it is in the best interests of her son. The net payout to J.N. will be $289,427.

The gross amount of the settlement of A.N.(2)'s claims is $400,000. After deducting agreed attorneys' fees, litigation costs, and reimbursement for monies advanced for the minor plaintiff's necessary daily needs, the total net settlement due to A.N.(1) is $231,577.5. A.N.(2) requires the creation of a Special Needs Trust. It is proposed that a payment of $31,577.50 be used to create and fund the special needs trust and that $200,000 be used to fund a guaranteed structured settlement annuity. Attached hereto as "**Exhibit C**" to this Petition, is a proposed structured settlement annuity, which is incorporated herein in its entirety by reference. Id at ¶ 7. A.N.(2)'s guardian *ad litem* agrees to this proposal and believes that it is in the best interests of her daughter. The net payout to A.N.(2) is $253,639.90.

The gross amount of the settlement of A.B.'s claims is $400,000. After deducting agreed attorneys' fees and litigation costs, the total net settlement due to R.B is $239,077.5. It is proposed that a payment of $239,0775 be used to create and fund a guaranteed structured settlement annuity. Attached hereto as "**Exhibit D**" to this Petition, is a proposed structured settlement annuity, which is incorporated herein in its entirety by reference. *Id.* at ¶ 11. A.B.'s guardian ad litem agrees to this proposal and believes that it is in the best interests of her son. The net payout to A.B. is $416,000.

The gross amount of the settlement of R.B.'s claims is $400,000. After deducting agreed attorneys' fees and litigation costs, the total net settlement due to R.B is $239,077.5. It is proposed that a payment of $239,0775 be used to create and fund a guaranteed structured settlement annuity. Attached hereto as "**Exhibit E**" to this Petition, is a proposed structured settlement annuity, which is incorporated herein in its entirety by reference. *Id.* at ¶ 12. R.B.'s guardian ad litem agrees to this proposal and believes that it is in the best interests of her daughter. The net payout to R.B. is $416,000.

(10) The Petitioners and guardians ad litems have no claims against the defendants or the minor plaintiffs in connection with the subject incident. *See consent, below.*

(11)   California Welfare and Institutions Code Section 14124.73 does not apply.

(12)   This motion seeks an order for payment of money to a special needs trust for minor plaintiff, A.N.(2).

**C.     Disclosures pursuant to California Rule of Court 7.951.**

(1) This petition was prepared by attorney Melanie T. Partow (California Bar Number 254843), of the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, representing the minor plaintiffs. Galipo Decl. at ¶ 13.

(2) The Law Offices of Dale K. Galipo and The Law Offices of Luis A. Carrillo did not become concerned with this matter at the instance of any party against whom the claim of said minor is asserted. *Id.* at ¶ 14.

(3) The Law Offices of Dale K. Galipo The Law Offices of Luis A. Carrillo represents the plaintiffs in this matter but is not employed by any other party or any insurance carrier involved in the matter. *Id.* at ¶ 15.

(4) The Law Offices of Dale K. Galipo and The Law Offices of Luis A. Carrillo have not received any compensation for their services in connection herewith from any person. *Id.* at ¶ 16.

(5) The Law Offices of Dale K. Galipo and The Law Offices of Luis A. Carrillo do not expect to receive any additional compensation for their services in connection with this case other than the contingency fees set forth herein and agreed to by the adult plaintiffs and the guardians ad litem for the five minor plaintiffs. *Id.* at ¶ 17.

(6) The Law Offices of Dale K. Galipo and The Law Offices of Luis A. Carrillo accepted this engagement for a contingency fee, plus reimbursement for any costs advanced. *Id.* at ¶ 18.  The retainer agreements provide for a 40 percent attorney fee if the matter concludes after commencement of a lawsuit, and for recovery of Section 1988 fees. *Id.*

## D.   Movants' Endorsements

Petitioners have made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident giving rise to the minors' claims, the parties responsible for the incident, and the nature, extent and seriousness of the minors' injuries.  Petitioners further understand the transactions proposed in this Petition and request that the Court approve them.

Petitioners recommend the transaction and the proposed distributions to the minors as being fair, reasonable, and in the best interest of the minors, and request that the Court approve this Petition and make such other and further orders as may be just and reasonable.

### *I.   Request by Petitioner Christel Emmet for Minor A.N. (1)*

For A.N. (1) who will turn 18 on October 30, 2017, Petitioner Christel Emmet specifically requests that the Court enter an order approving the proposed annuity described in "**Exhibit A**".  In this proposal, Petitioner requests a lump sum to be placed in a blocked account accessible to A.N. upon his 18th birthday.  Thereafter, annuity payments will be made directly to A.N. beginning at age 19 on a monthly basis for 8 years.  A.N. will receive a lump sum payment in 2024. *See* Galipo Decl. at ¶ 8; Exhibit A.

2.    *Request by Petitioner Christel Emmet for Minor J.N.*

For J.N., Petitioner Christel Emmet specifically requests that the Court enter an order approving the proposed annuity described in "**Exhibit B**". In this proposal, the annuity will make modest monthly payments directly to J.N. beginning at age 18 and variable lump sum payments until the year 2030. *See* Galipo Decl. at ¶ 9; Exhibit B.

3.    *Request by Petitioner Christel Emmet for Minor A.N.(2)*

For A.N.(2), Petitioner specifically requests that the Court enter an order approving the proposed annuity described in "**Exhibit C**". In this proposal, a lump sum payment will seed a Pooled Special Needs Trust under 42 U.S.C. §1396p(d)(4)(C) with CPT as Trustee per CA Probate Code §§3602, 3604(b), and 3611.Special Needs Trust. The remainder will find an annuity. The annuity will make guaranteed monthly payments to the special needs trust for 30 years. *See* Galipo Decl. at ¶ 9; Exhibit C.

A 42 U.S.C. §1396p(d)(4)(C) "Pooled" special needs trust is a trust created and managed by a nonprofit organization. A separate account is maintained for each beneficiary of the trust. Each account can be invested and managed separately to meet the objectives of the beneficiary. The account is created for the sole benefit of an individual with disability by the individual's parent, grandparent, legal guardian, court, or the individual.

The Pooled Special Needs Trust was established and is managed by CPT, a national 501(C)(3) not-for-profit and first party Special Needs Trust provider. The trust has provided trust services to over six hundred clients in California and has tens of millions under administration and all accounts are bondable.

Petitioner Christel Emmet, the mother and guardian ad litem of beneficiary A.N.(2), and Susan Lindsey, the grandmother and legal guardian of A.N.(2) shall serve as equal beneficiaries (50%/50%). Susan Lindsey shall be the Beneficiary Advocate. All distributions requested by the Beneficiary Advocate are reviewed by the Trustee (CPT) for appropriateness and compliance with public benefit laws.

Pursuant to Probate Code §2643, the petitioner requests that that the Court authorize the Trustee to receive a one time initial $4,000 trust set up fee total, and annual payments on account at the rate of 2% of the funds in the individual account, with $4,000 annual minimum, without further order.

Pursuant to Probate Code §2643, if bond and accountings are waived, the Trustee will receive a one-time initial $3,000 trust set up fee total, and annual payments on account at the rate of 1% of the funds in the individual account, with $2,000 annual minimum, without further order.

Payment is reasonable in this particular case because the cost of administrative services for the pooled special need trust account and trustee are inclusive. The costs are a fraction of those associated with a corporate trustee, professional conservator or traditional Trustee.  Therefore, the fees for the pooled special needs trust are a great value to the beneficiary.

The names, addresses and relationships of all persons entitled to notice are as follows:

A.N.(2)
12336 Foxcroft Place
Granada Hills, CA 91344

Christel Emmet
12336 Foxcroft Place
Granada Hills, CA 91344

CPT
1 Civic Center Drive – Suite 310
San Marcos, CA 92069

Department of Health Services, Remainder Beneficiary
MS 4720, P.O. Box 997425, Sacramento, CA 95899-7425

Department of Mental Health, Remainder Beneficiary
1600 9th Street, Sacramento, CA 95814

Department of Developmental Disabilities, Remainder Beneficiary
1600 9th Street, Sacramento, CA 95814

    *4.*    *Request by Petitioner Blanca Chevez for Twin Minors A.B. and R.B.*

Petitioner specifically requests that the Court enter an order approving the proposed annuities described in "**Exhibits D and E**." In these identical proposals, Petitioner requests modest monthly disbursements to assist with raising her three year-old twin son and daughter between now and the time they are 18 years old. Petitioner is a responsible adult who works full time as a teacher. While she is doing the best she can to raise toddler twins A.B. and R.B., as a working single mother of young twins, her finances are currently strained, and she struggles to scrape together the funds necessary for child care, basic daily needs, financial support to sustain their own residence (they currently reside with Petitioner's brother in his home), and the educational and extracurricular opportunities to develop and nurture A.B. and R.B.'s talents and interests.

Petitioner requests a one-time lump sum payment of $7,500 per minor to be payable on July 15, 2017, to cover the expenses of first and last month's rent and a security deposit so that she and the twin minors A.B. and R.B. may move into and establish their own residence and purchase beds, dressers and other furniture for A.B. and R.B. Petitioner has not requested or received any advances or monies of any kind, from attorneys or otherwise, against this settlement for A.B. or R.B.

Petitioner further requests the sum of $375 per minor, per month, for the next four and a half years, and thereafter, $450 per minor, per month, until the twins reach age 18. These modest monthly payments are requested to help pay for preschool tuition, tutoring, sports, art, music, and test preparation courses. Petitioner submits that because A.B. and R.B.'s father is deceased and no longer able to provide childcare, guidance, or child support, it is in A.B. and R.B.'s best interest that a small fraction of

the funds that were awarded in connection with their father's death be used to help raise them. Petitioner further submits that these disbursements are reasonable and in the twins' best interest, and do not meaningfully diminish the very significant funds that will become available to A.B. and R.B. once they reach majority.

Petitioner further requests approval of the annuities described in Exhibits D and E, which propose that, the twins A.B. and R.B. will each receive guaranteed payments of $25,000 annually for four years (intended to assist with college tuition) beginning when the twins reach majority in 2032. The proposed annuities further guarantee monthly payments of $800 for three years beginning at age 22, followed by lump sum payments at ages 26, 30 and 35 for a total payout of $416,000 for each minor A.B. and R.B.

**E. Attorneys' Fees and Minor Plaintiffs**

Local Rule 17-1.5 provides that in call cases involving the claims of minors, "the Court shall fix the amount of attorney's fees." *See also* Local Rule 83-5.3 (identical rule effective June 1, 2012, superseded by current rule). The attorneys' fees that are requested to be approved represent the amounts that the Law Offices of Dale K. Galipo and Law Offices of Luis A. Carrillo would be due under the existing retainer and fee-splitting agreements. Galipo Decl. at ¶ 18. These are also the amounts that an adult plaintiff would pay for the same legal services, and Plaintiff's attorneys submit that the result should be no different because their client is a minor.

In *Robidoux v. Rosengren*, 638 F.3d 1177, 1182 (9th Cir. 2011), the district court rejected a proposed settlement under conditions where 56 percent of the total settlement value was allocated to attorney's fees. The Ninth Circuit reversed on the grounds that "the district court's special duty to protect minor plaintiffs requires only that the district court consider whether the net recovery of each minor plaintiff is fair and reasonable, without regard to the amount received by adult co-plaintiffs and what they have agreed to pay plaintiffs' counsel." The Ninth Circuit remanded for consideration of whether

the minors' recoveries were fair and reasonable, without regard to the amount of attorneys' fees. This holding suggests that 56 percent of the total recovery being allocated to attorneys' fees is not *per se* disallowed. *See also Nephew v. Santa Rosa Mem'l Hosp.*, No. 15-CV-01684-JSC, 2015 WL 5935337, at *3 (N.D. Cal. Oct. 13, 2015) ("requested 33% attorneys' fee award is reasonable in light of the signed contingency agreement"); *Caldwell v. Boeing Co.*, No. 14CV2636-BEN KSC, 2015 WL 4199986, at *2 (S.D. Cal. July 9, 2015) ("Under *Robidoux*, the Court is not required to conduct an inquiry into the reasonableness of attorneys' fees); *Gill v. Macy's Corp. Servs.*, No. 1:12-CV-01985-AWI, 2013 WL 4478898, at *2 (E.D. Cal. Aug. 19, 2013) (approving a similar transaction that involved paying one portion of the total recovery to finance an annuity for the minor plaintiff, the remainder to plaintiff's attorneys); *Reyes v. City of Pinole*, No. C 12-2636 LB, 2013 WL 3157902, at *2 (N.D. Cal. June 20, 2013) (approving a settlement, "half of which is allocated for attorneys' fees"); *McCue v. S. Fork Union Sch. Dist.*, No. 1:10-CV-00233-LJO, 2012 WL 2995666, at *7 (E.D. Cal. July 23, 2012) (a contingency fee of 40 percent might be justified); *Arriaga v. Target Corp.*, No. CIV. S-10-1167 LKK, 2012 WL 1720503, at *1 (E.D. Cal. May 15, 2012) (settlement of $275,000, with distribution of $109,519.97 to minor and $165,480.03 to attorneys).

The minors' claims in this case involved a substantial amount of risk and were vigorously litigated. *Id.* at ¶ 19. Plaintiffs' attorneys put a tremendous number of hours into the case over the past two years and attended multiple settlement conferences, resulting in a favorable result for the minor plaintiffs. *Id.* at ¶ 19. As a result, the minors will enjoy payments of over $1,628,301 million spread throughout their lives.

If the minor plaintiffs' attorneys were not awarded a fully compensatory fee in such cases, similarly experienced, skilled, and reputable attorneys would be discouraged from taking them. Specifically, it would provide a disincentive for skilled attorneys to take cases involving minor plaintiffs, which if anything, require a higher

level of legal expertise and experience than cases involving adult plaintiffs.  Civil rights cases are difficult enough for attorneys to take and win, without the additional disincentive of an arbitrarily-reduced fee at the end.  In sum, a reduction of the full contractual fee would inhibit the provision of high quality of legal services to civil rights victims who are minors and plaintiffs such as the minors in this case would not be able to attract competent counsel who could achieve similar results. *Id.*
Accordingly, Plaintiffs' attorneys in this case request the approval of the full amount of their attorneys' fees and costs without reduction, as agreed by the Petitioners.

## III. CONCLUSION

For the reasons above, the Court should approve the proposed settlement of The minors' claims and enter the proposed disbursement orders submitted concurrently herewith.

Respectfully submitted,

Dated: April 17, 2017                    LAW OFFICES OF DALE K. GALIPO
                                         LAW OFFICES OF LUIS A. CARRILLO

                                         _____
                                         Dale K. Galipo
                                         Luis A. Carrillo
                                         Melanie T. Partow
                                         Attorneys for Plaintiffs

# DECLARATION OF DALE K. GALIPO

I, Dale K. Galipo, hereby declare as follows:

1.      I am an attorney licensed to practice law in this United States District Court.  I am one of the attorneys of record for plaintiffs A.N.(1), J.N., A.N.(2), R.B. and A.B. and their guardians *ad litem* in this action. I have personal knowledge of the matters stated herein and would and could testify competently thereto if called.  I make this declaration in support of the above motion.

2.      Prior to the filing of this ex parte application, Plaintiffs' counsel contacted defense counsel in compliance with Local Rule 7-19 through 7-19.1.  Defense counsel are:

Cory Brente
Colleen Smith
200 N. Main St., 6th Floor
Los Angeles, CA 90012
Phone: (213) 978-7021
Fax: (213) 978-8785
Email: cory.brente@lacity.org
Email: colleen.smith@lacity.org

I am informed and thereon believe that defense counsel do not oppose the filing of this application on an *ex parte* basis.  The reason for seeking approval of the minors' compromise on an *ex parte* basis is to ensure that the rates currently locked in by the life insurance companies for the annuity structured payment schedules, which have been vetted and selected for each minor plaintiff by their guardians *ad litem*, do not expire.

3.      Plaintiffs' damages in this case arise from (1) the injuries suffered by their father, for which they can recover damages as their father's successors in interest, and (2) their individual losses of their father's comfort, care, companionship, training, support, and

guidance. The minor plaintiffs have not received medical treatment in connection with this case and medical billing is not relevant.

4.      Petitioners are Christel Emmet (for minor plaintiffs A.N., J.N., and A.N. and Blanca Chevez (for minor plaintiffs R.B. and A.B.).   Petitioners are the court-appointed guardian *ad litem* for the four minor Plaintiffs.  The claimants are the five minor plaintiffs A.N., J.N., A.N., R.B., and A.B.  The ages and gender of each claimant is as follows: minor plaintiff A.N.(1) is a 17-year-old male born on October 30, 1999 to Christel Emmet and decedent Sergio Navas; minor plaintiff J.N. is a 13-year-old male born on August 19, 2003 to Christel Emmet and decedent Sergio Navas; minor plaintiff A.N. (2) is a 12-year-old female born on June 15, 2004 to Christel Emmet and decedent Sergio Navas; minor plaintiff R.B. is a three-year-old female born January 16, 2014 to Blanca Chevez and decedent Sergio Navas; minor plaintiff A.B. is a three-year-old male born January 16, 2014 to Blanca Chevez and decedent Sergio Navas.

5.      The gross amount of the settlement in this case of the claims for all seven plaintiffs is $2,500,000.  The plaintiffs agreed among themselves to distribute the settlement proceeds as follows:

| | |
|---|---|
| Alfredo Navas | $250,000 |
| Rosa Navas | $250,000 |
| A.N. | $400,000 |
| J.N. | $400,000 |
| A.N. | $400,000 |
| R.B. | $400,000 |
| A.B. | $400,000 |

6.      Attorneys in this case incurred total litigation costs in the amount of $4,335.  Of the total litigation costs, $600 in costs are attributable to the minor plaintiffs A.B. and R.B. only for DNA testing.  The seven plaintiffs agreed among themselves to split the remaining $3,735 in litigation costs six ways, with the parents of the decedent sharing one-sixth of the costs and the minor plaintiffs to each bear 1/6[th] of the costs.  This

agreement resulted in the apportionment of the total litigation costs among the seven

plaintiffs as follows:

| | |
|---|---|
| Alfredo Navas | $311.25 |
| Rosa Navas | $311.25 |
| A.N. | $622.50 |
| J.N. | $622.50 |
| A.N. | $622.50 |
| A.B. | $922.50 |
| R.B. | $922.50 |

7.     Periodic cash disbursements totaling $23,400 over two years was advanced to

Petitioner Christel Emmet for expenses relating to housing, food and clothing and

necessary daily expenses for the custody and care of minor plaintiffs A.N., J.N., and

A.N. Petitioner Christel Emmet, as guardian ad litem for the minor plaintiffs A.N.,

J.N., and A.N., agreed that $23,400 would be reimbursed to attorneys from A.N., J.N.,

and A.N.'s settlement proceeds.

8.     The gross amount of A.N.(1)'s settlement proceeds is $400,000.  A.N.(1) will

become of age in October, 2017.  Of this gross amount, $41,061.50 is proposed to go

into a blocked account.  $190,516 is proposed to be used to fund a structured annuity

for A.N.(1), with the proceeds to be distributed to him over time, as is set forth in

**Exhibit A** hereto.  The difference is proposed to be distributed to his attorneys, Law

Offices of Dale K. Galipo and Law Offices of Luis A. Carrillo pursuant to the

contingency retainer agreement between plaintiffs and their attorneys, which provides

for a 40 percent contingency, Section 1988 fees and reimbursement for litigation costs

and any monies advanced against the settlement.

9.     The gross amount of J.N.'s settlement proceeds is $400,000.  Of this gross

amount, $231,577.50 is proposed to be used to fund a structured annuity for J.N., with

the proceeds to be distributed to him over time, as is set forth in **Exhibit B** hereto.  The

difference is proposed to be distributed to his attorneys, Law Offices of Dale K. Galipo

and Law Offices of Luis A. Carrillo pursuant to the contingency retainer agreement between plaintiffs and their attorneys, which provides for a 40 percent contingency, Section 1988 fees and reimbursement for litigation costs and any monies advanced against the settlement.

10.     The gross amount of A.N.(2)'s settlement proceeds is $400,000.  Of this gross amount, $31,577.50 is proposed to be used as a seed cash payment to fund a Special Needs Trust. $200,000 is proposed to be used to fund a structured annuity for A.N.(2), with the proceeds to be distributed to the Special Needs Trust over time, as is set forth in **Exhibit C** hereto.  The difference is proposed to be distributed to his attorneys, Law Offices of Dale K. Galipo and Law Offices of Luis A. Carrillo pursuant to the contingency retainer agreement between plaintiffs and their attorneys, which provides for a 40 percent contingency, Section 1988 fees and reimbursement for litigation costs and any monies advanced against the settlement.

11.     The gross amount of A.B.'s settlement proceeds is $400,000.  Of this gross amount, $239,077.50 is proposed to be used to fund a structured annuity for A.B., with the proceeds to be distributed over time – first to Petitioner Blanca Chevez on A.B.'s behalf until A.B. is of age and thereafter to A.B. directly, as is set forth in **Exhibit D** hereto.  The difference is proposed to be distributed to his attorneys, Law Offices of Dale K. Galipo and Law Offices of Luis A. Carrillo pursuant to the contingency retainer agreement between plaintiffs and their attorneys, which provides for a 40 percent contingency, Section 1988 fees and reimbursement for litigation costs.

12.     The gross amount of R.B.'s settlement proceeds is $400,000.  Of this gross amount, $239,077.50 is proposed to be used to fund a structured annuity for R.B., with the proceeds to be distributed over time – first to Petitioner Blanca Chevez on R.B.'s behalf until R.B. is of age and thereafter to R.B. directly, as is set forth in **Exhibit E** hereto.  The difference is proposed to be distributed to her attorneys, Law Offices of Dale K. Galipo and Law Offices of Luis A. Carrillo pursuant to the contingency

retainer agreement between plaintiffs and their attorneys, which provides for a 40 percent contingency, Section 1988 fees and reimbursement for litigation costs.

13.     Petitioners and Plaintiffs are represented by the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, and Law Offices of Luis A. Carrillo, located at 1499 Huntington Drive Suite 402, South Pasadena, CA 91030.  This ex parte petition for order approving compromise of minor's claims was prepared by Melanie T. Partow of my office at my direction and under my supervision.

14.     The Law Offices of Dale K. Galipo and the Law Offices of Luis A Carrillo did not become concerned with this matter at the instance of any party against whom the claims are asserted or of any party's insurance carrier.

15.     The Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo are not employed by any other party or any insurance carrier involved in the matter.

16.     The Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo have not received any compensation for their services in connection with the minor plaintiffs' claims from any person.

17.     The Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo do not expect to receive additional compensation for their services in connection with the minor plaintiffs' claims.

18.     The Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo accepted this engagement for a contingency fee, plus reimbursement for any costs advanced and any monies advanced. The retainer agreement provides for a 40 percent attorney fee recovery if the matter concludes after commencement a lawsuit. The retainer agreement also provides that the 40 percent retainer is in addition to any attorneys' fees awarded under Section 1988.

19.     This police shooting-death case involved a substantial amount of risk. Moreover, in §1988 attorney fees motions filed by my office, Courts in this district have

repeatedly approved my lodestar at $950/hour.  Multiple attorneys worked a large number of hours on this case, including Mr. Luis Carrillo, who has decades of experience litigating civil rights police shooting cases, and Melanie Partow, an associate in my office who has over ten years of experience litigating civil rights police shooting cases.  The contingency fee did not increase because plaintiffs are represented by multiple counsel or because plaintiffs are represented by two law firms.  The two law firms will share the single contingency rate set forth in the retainer agreement.  If Plaintiffs had prevailed at trial and a likely appeal, statutory attorneys' fees due to Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo under the retainer agreements likely would exceed $1,500,000.00.  If Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo were not awarded a fully compensatory fee in such cases, it would not be able to take them.  *Id.*  In turn, minor plaintiffs such as A.N., J.N., A.N., R.B., and A.B. would not be able to attract competent counsel who could achieve similar results.

20.     Attached hereto as "**Exhibit F**" is a sample annuity policy for the court's review.

21.     Attached hereto as "**Exhibit G**" is a ratings sheet for Pacific Life Insurance Company and Pacific Life & Annuity Company.

22.     Attached hereto as "**Exhibit H**", is a sample statement of Irrevocable Guarantee for the annuities through Pacific Life.

23.     Attached hereto as "**Exhibit I**", is a true and correct copy of the CPT Master Trust.

24.     Attached hereto as "**Exhibit J**", is a sample of the CPT Trust Set Up Documents.

///

///

///

1       I declare under penalty of perjury of the laws of the United States of America

2  that the foregoing is true and correct, and that this declaration was executed this 17th

3  day of April, 2017 at Woodland Hills, California.

4

5               _____/s/ Dale K. Galipo_____

6                       Dale K. Galipo

# EXHIBIT A

## Annuity Language- Minors Petition & Order

A draft for $190,516.00, shall be made payable to Pacific Life & Annuity Services Inc. These funds shall be used to purchase an annuity for the benefit of the minor, A.N.(1), in which Pacific Life Insurance Company (hereinafter referred to as "Assignee") will provide the following periodic payments as set forth below to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

All sums and periodic payments set forth herein constitute damages on account of personal injuries or sickness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

### Periodic payments payable to A.N.(1):

$ 1,690.05    Payable Monthly, Guaranteed 8 years, Commencing on 10/30/2018, last payment on 9/30/2026

$ 49,929.46   Lump Sum Payment on 10/30/2024

The Parties hereto acknowledge and agree that the Defendant, the City of Los Angeles, will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Pacific Life & Annuity Services Inc., (hereinafter referred to as "Assignee") of the Defendant's liability to make the periodic payments described herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from such obligations hereunder as are assigned to Assignee. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check, in the amount specified to the address of record.

The Plaintiff agrees she has not received or relied upon any advice or representation as to the tax effect of this Agreement. In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Insurer on behalf of the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee) shall at all times remain

directly and solely responsible for and shall receive credit for all such payments made to Plaintiff. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the Defendant to make the periodic payments.

Periodic payments under from Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff. The Assignee's obligation for payment of the periodic payments shall be no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation is assigned.

Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Insurer on behalf of the Defendant and/or Assignee shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier"). The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee may have Annuity carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

# EXHIBIT B

## Annuity Language- Minors Petition & Order

A draft for $231,577.50, shall be made payable to Pacific Life & Annuity Services Inc. These funds shall be used to purchase an annuity for the benefit of the minor, J.N., in which Pacific Life Insurance Company (hereinafter referred to as "Assignee") will provide the following periodic payments as set forth below to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

All sums and periodic payments set forth herein constitute damages on account of personal injuries or sickness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

### Periodic payments payable to J.N.:

| | |
|---|---|
| $ 1,500.00 | Payable Monthly, Guaranteed 3 years, Commencing on 8/19/2021, last payment on 7/19/2024 |
| $ 2,000.00 | Payable Monthly, Guaranteed 6 years, Commencing on 8/19/2024, last payment on 7/19/2030 |
| | |
| $ 15,000.00 | Lump Sum Payment on 8/19/2021 |
| $ 15,000.00 | Lump Sum Payment on 8/19/2024 |
| $ 30,000.00 | Lump Sum Payment on 8/19/2028 |
| $ 31,427.11 | Lump Sum Payment on 8/19/2030 |

The Parties hereto acknowledge and agree that the Defendant, the City of Los Angeles, will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Pacific Life & Annuity Services Inc. , (hereinafter referred to as "Assignee") of the Defendant's liability to make the periodic payments described herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from such obligations hereunder as are assigned to Assignee. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check, in the amount specified to the address of record.

The Plaintiff agrees she has not received or relied upon any advice or representation as to the tax effect of this Agreement. In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Insurer on behalf of the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee) shall at all times remain directly and solely responsible for and shall receive credit for all such payments made to Plaintiff. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the Defendant to make the periodic payments.

Periodic payments under from Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff. The Assignee's obligation for payment of the periodic payments shall be no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation is assigned.

Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Insurer on behalf of the Defendant and/or Assignee shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier"). The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee may have Annuity carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

# EXHIBIT C

## <u>Annuity Language- Minors Petition & Order</u>

A draft for $200.00.00, shall be made payable to Pacific Life & Annuity Services Inc. These funds shall be used to purchase an annuity for the benefit of the minor, A.N.(2), in which Pacific Life Insurance Company (hereinafter referred to as "Assignee") will provide the following periodic payments as set forth below to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

All sums and periodic payments set forth herein constitute damages on account of personal injuries or sickness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

### <u>Periodic payments payable to CPT as Trustee for the benefit of A.N.(2):</u>

$ 616.84          Payable Monthly for Life, Guaranteed for 30 years,
                  Commencing on 8/1/2017, last guaranteed payment on 7/01/2047

The Parties hereto acknowledge and agree that the Defendant, the City of Los Angeles, will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Pacific Life & Annuity Services Inc. , (hereinafter referred to as "Assignee") of the Defendant's liability to make the periodic payments described herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from such obligations hereunder as are assigned to Assignee. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check, in the amount specified to the address of record.

The Plaintiff agrees she has not received or relied upon any advice or representation as to the tax effect of this Agreement. In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Insurer on behalf of the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee) shall at all times remain directly and solely responsible for and shall receive credit for all such payments made to Plaintiff. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the

duties and responsibilities of the Defendant to make the periodic payments.

Periodic payments under from Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff. The Assignee's obligation for payment of the periodic payments shall be no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation is assigned.

Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Insurer on behalf of the Defendant and/or Assignee shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier"). The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee may have Annuity carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

# EXHIBIT D

## Annuity Language- Minors Petition & Order

A draft for $239,077.50, shall be made payable to Pacific Life & Annuity Services Inc. These funds shall be used to purchase an annuity for the benefit of the minor, A.B., in which Pacific Life Insurance Company (hereinafter referred to as "Assignee") will provide the following periodic payments as set forth below to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

All sums and periodic payments set forth herein constitute damages on account of personal injuries or sickness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

### Periodic payments payable to A.B.:

| | |
|---|---|
| $25,000.00 | Payable Annually, Guaranteed 4 years, Commencing on 1/16/2032, last payment on 1/16/2035 |
| $ 800.00 | Payable Monthly, Guaranteed 3 years, Commencing on 1/16/2036, last payment on 12/16/2038 |

| | |
|---|---|
| $ 20,000.00 | Lump Sum Payment on 1/16/2040 |
| $ 37,500.00 | Lump Sum Payment on 1/16/2044 |
| $148,400.00 | Lump Sum Payment on 1/16/2049 |

### Periodic payments payable to Blanca Chevez, as Parent and Guardian of A.B.:

| | |
|---|---|
| $ 7,500.00 | Lump Sum Payment on 7/15/2017 |
| $ 375.00 | Payable Monthly, Guaranteed 4 years and 6 months only, Commencing on on 8/15/2017, last payment on 1/15/2022 |
| $ 450.00 | Payable Monthly, Guaranteed 9 years and 11 months only, Commencing on on 2/15/2022, last payment on 12/15/2031 |

The Parties hereto acknowledge and agree that the Defendant, the City of Los Angeles, will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Pacific Life & Annuity Services Inc. , (hereinafter referred to as "Assignee") of the Defendant's liability to make the periodic payments described herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from such obligations hereunder as are assigned to Assignee. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check, in the amount specified to the address of record.

The Plaintiff agrees she has not received or relied upon any advice or representation as to the tax effect of this Agreement. In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Insurer on behalf of the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee) shall at all times remain directly and solely responsible for and shall receive credit for all such payments made to Plaintiff. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the Defendant to make the periodic payments.

Periodic payments under from Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff. The Assignee's obligation for payment of the periodic payments shall be no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation is assigned.

Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Insurer on behalf of the Defendant and/or Assignee shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier"). The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee may have Annuity carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

# EXHIBIT E

## Annuity Language- Minors Petition & Order

A draft for $239,077.50, shall be made payable to Pacific Life & Annuity Services Inc. These funds shall be used to purchase an annuity for the benefit of the minor, R.B., in which Pacific Life Insurance Company (hereinafter referred to as "Assignee") will provide the following periodic payments as set forth below to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

All sums and periodic payments set forth herein constitute damages on account of personal injuries or sickness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

### Periodic payments payable to R.B.:

| | |
|---|---|
| $25,000.00 | Payable Annually, Guaranteed 4 years, Commencing on 1/16/2032, last payment on 1/16/2035 |
| $    800.00 | Payable Monthly, Guaranteed 3 years, Commencing on 1/16/2036, last payment on 12/16/2038 |
| $ 20,000.00 | Lump Sum Payment on 1/16/2040 |
| $ 37,500.00 | Lump Sum Payment on 1/16/2044 |
| $148,400.00 | Lump Sum Payment on 1/16/2049 |

### Periodic payments payable to Blanca Chevez, as Parent and Guardian of R.B.:

| | |
|---|---|
| $ 7,500.00 | Lump Sum Payment on 7/15/2017 |
| $    375.00 | Payable Monthly, Guaranteed 4 years and 6 months only, Commencing on on 8/15/2017, last payment on 1/15/2022 |
| $    450.00 | Payable Monthly, Guaranteed 9 years and 11 months only, Commencing on on 2/15/2022, last payment on 12/15/2031 |

The Parties hereto acknowledge and agree that the Defendant, the City of Los Angeles, will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Pacific Life & Annuity Services Inc., (hereinafter referred to as "Assignee") of the Defendant's liability to make the periodic payments described herein.  Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from such obligations hereunder as are assigned to Assignee.  The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check, in the amount specified to the address of record.

The Plaintiff agrees she has not received or relied upon any advice or representation as to the tax effect of this Agreement. In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Insurer on behalf of the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee) shall at all times remain directly and solely responsible for and shall receive credit for all such payments made to Plaintiff. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the Defendant to make the periodic payments.

Periodic payments under from Assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff. The Assignee's obligation for payment of the periodic payments shall be no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation is assigned.

Periodic payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Insurer on behalf of the Defendant and/or Assignee shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier"). The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee may have Annuity carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

# EXHIBIT F

Case 2:15-cv-09515-SVW-JC   Document 46-6   Filed 04/18/17   Page 2 of 9   Page ID #:290



Pacific Life Insurance Company
700 Newport Center Drive
Newport Beach, CA  92660

1-888-728-5611

---

### INDIVIDUAL SINGLE PREMIUM SETTLEMENT ANNUITY CONTRACT

#### Annuity Payments to be Made to Owner's Designee

Pacific Life Insurance Company, a stock company, ("Pacific Life") will pay annuity payments to the contract Owner, or such person(s) as the contract Owner may designate, subject to the provisions of this and the following pages which are made a part of this contract, according to the attached Contract Data page(s).

**READ YOUR CONTRACT CAREFULLY.**  This contract is a legal contract between the contract Owner and Pacific Life.  Pacific Life is a stockholder owned company.  As such, purchasing and owning a Pacific Life contract does not confer any membership rights nor ownership rights in Pacific Life or any other company affiliated with Pacific Life.

**Free Look Right –** At any time within 10 days after you receive this contract, you may return it to us or the broker through whom you bought it.  We will refund any premium paid less any annuity payments made.

This Contract is issued in consideration of the application and payment of premium.

This contract is executed for Pacific Life at Newport Beach, California, to be effective as of the Contract Date.

#### PACIFIC LIFE INSURANCE COMPANY

Chairman and Chief Executive Officer                    Secretary

#### Single Premium Settlement Annuity
#### Immediate Annuity – No Cash Value
#### Non-Participating – No Annual Dividends
#### Annuity Payments Specified in Contract Data
#### Annuities Payable in Fixed Dollar Amounts

## TABLE OF CONTENTS

**CONTRACT DATA** .............................................................................................. 1

**GENERAL PROVISIONS** ............................................................................... 2-3

## CONTRACT DATA

**Contract Number:  20129999**                    **Contract Date:  April 1, 2012**

**Owner:  PACIFIC LIFE & ANNUITY SERVICES, INC.**


## SCHEDULE OF BENEFITS


**Measuring Life:**          **JOHN DOE**
**Payee Name:**           **JOHN DOE**
**Contract/Certificate No.: 27545-99999**


**Benefits paid:**

   (Please see Application.)

--------------------------------------------          **END**          --------------------------------------------------

NO BENEFITS, INCLUDING ANY DEATH BENEFITS, ARE PAYABLE EXCEPT ON THE DATES AND
IN THE AMOUNTS SET FORTH ABOVE.



**SERVICE CENTER**

**Send Forms and written requests to:**

Pacific Life Insurance Company
P.O. Box 84307
Lincoln, NE  68501-4307

**Hours:** Between 6:00 am and 5:00 pm, Pacific Standard Time.
**Toll-Free Number for Contract Owners:**    1-888-728-5611

Please use our toll-free number to present inquiries or obtain information about your coverage and for us
to provide assistance in resolving complaints or you may call your state insurance department at
1-303-894-7490.




                                                                                            Page 1

## GENERAL PROVISIONS

**Cash Values –** This Contract does not have cash or surrender values and cannot be surrendered in exchange for a lump sum.

**Owner of Contract -** The Owner of this Contract will be entitled to the rights granted by this contract or allowed by Pacific Life under this Contract.  If the owner is a partnership, the rights belong to the partnership as it exists when a right is exercised.  If the owner is an individual, upon the death of the owner, the rights belong to the executor or administrator of the owner's estate unless otherwise provided in this contract.

**Change of Designation -** The owner has the right at any time to designate to whom annuity payments will be made.  A change of designation may only be made by filing a satisfactory written notice with Pacific Life.  A change of designation will not be in effect until recorded at the administrative office of Pacific Life.  The change of designation shall be effective on the date the notice of change is signed by the owner, unless otherwise specified by the owner.  Any payment made before Pacific Life records a change of designation will not be changed.

**Change of Owner -**  A change in owner shall be effective on the date the notice of change is signed by the owner, unless otherwise specified by the owner, subject to any payments made or actions taken by Pacific Life prior to its' receipt of the notice of change. However, assignment of this contract will not be binding on Pacific Life until it is recorded at its administrative office.  Pacific Life assumes no responsibility for the sufficiency or validity of any assignment.  However, when an assignment is filed with Pacific Life and recorded at the administrative office, the Owner's rights will be subject to it.

**Measuring Life –** The Measuring Life is a natural person on whose life the benefit payments are based. There may be more than one Measuring Life under the Contract.

**Beneficiary –** Any annuity payments to be made after the death of any Measuring Life shall be made to such party as shall have been designated as Beneficiary in the Application or, if the Application does not provide for such designation, then to the Beneficiary designated in conformity with this provision.  If no Beneficiary is living at the time of the death of a Measuring Life, payment shall be made to the decedent's estate.  No designation or change of designation of a Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Pacific Life in accordance with Pacific Life's customary procedures for processing such requests; and (ii) is confirmed by Pacific Life. The change of designation of  Beneficiary shall be effective on the date the notice of change is signed by the owner, unless otherwise specified by the owner, subject to any payments made or actions taken by Pacific Life.  Except for a designation that has been expressly identified in the Application as irrevocable, any designation of a Beneficiary shall be deemed to be revocable; and no party that is designated as a Beneficiary (other than a party irrevocably designated as a Beneficiary in the Application) shall, solely by virtue of its designation as a Beneficiary, be deemed to have any cognizable interest in any annuity payments.

**Incontestability –** Pacific Life will not contest the validity of this Contract.

**Payment of Proceeds -** If the Schedule of Benefits provides for the payment of benefits as long as a Measuring Life shall live, Pacific Life has the right before any payment is made to require due proof that the Measuring Life is living on the payment date, but may not require this proof more than once in any twelve-month period.   For such benefits, no fractional payment will be made for the period from a payment date to the date of death of a Measuring Life.

If the Schedule of Benefits provides for payment of any benefits by reason of the death of a Measuring Life, due proof of death of the Measuring Life must be submitted to the administrative office of Pacific Life before such payment is made.

**Misstatement of Age or Sex -** If the age and/or sex of a Measuring Life has been incorrectly stated, any amount payable under this contract shall be such as the premium paid would have purchased at the correct age and/or sex according to the rate used by Pacific Life to originally purchase the benefits.  Any underpayments or overpayments made by Pacific Life shall be added to or deducted from the payments to be made after the adjustment with interest at 3% per annum.

Page 2

**General Provisions - continued**

**Non-Participating –** This Contract is classified as a non-participating contract.  It does not participate in our profits or surplus, and therefore no dividends are payable.

**The Contract** - This Contract is issued in consideration of the application and payment of the premium.  This Contract and the application for it, a copy of which is attached to and made a part of this Contract, constitute the entire Contract.   All statements made by or for the applicant will be considered representations and not warranties.   No statement shall void this Contract or be used in defense of a claim unless it is contained in the written application and a copy of the application is attached to this Contract when issued.

**Who is Authorized to Make Changes in this Contract** - No agent has authority to change this contract or to waive any of its provisions.  No change, modification, or addition to this contract shall be valid unless evidenced by written endorsement hereon or written amendment hereto signed by the president and secretary of Pacific Life.

**Conformity with Interstate Insurance Product Regulation Commission Standards –** This contract was approved under the authority of the Interstate Insurance Product Regulation Commission  and issued under the Interstate Insurance Product Regulation Commission standards.  If there is any Contract provision that is in conflict with any Interstate Insurance Product Regulation Commission standards applicable to this Contract when this Contract was issued, the provision is amended to conform to that standard.  Any such amendment is effective on the Contract Date.

Page 3



**PACIFIC LIFE**

Pacific Life Insurance Company ● 700 Newport Center Drive ● Newport Beach, CA  92660

## SINGLE PREMIUM SETTLEMENT ANNUITY CONTRACT

**Single Premium Settlement Annuity
Immediate Annuity – No Cash Value
Non-Participating – No Annual Dividends
Annuity Payments Specified in Contract Data**

**NOTICE:  PACIFIC LIFE IS AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER**

Pacific Life is an Equal Opportunity and Affirmative Action Employer and agrees to comply with all the provisions contained in Executive Order No. 11246, including specifically the Equal Employment Opportunity clause in Section 202, the Vietnam Era Veteran's Readjustment Assistance Act of 1974, Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. 793, and implementing rules and regulations 41 CFR 60-1.4, 41 CFR 60-250.5 and 41 CFR 60-741.5(a), all amended and revised and hereby incorporated herein by specific reference, as though fully set forth herein.

# EXHIBIT G

# WHAT THE RATINGS MEAN





Financial strength is a consideration in choosing an insurance company. After all, you want the insurance company you select to be there when it is time to pay benefits. Financial strength is rated by independent rating agencies such as A.M. Best, Standard & Poor's, Fitch and Moody's. The chart below shows the different rating categories. Pacific Life Insurance Company's and Pacific Life & Annuity Company's financial strength ratings, as of May 1, 2011, are displayed in bold print. These ratings do not apply to the safety or performance of any separate accounts or mutual funds. For current ratings information, see our websites at www.PacificLife.com and www.PacificLifeandAnnuity.com.

| A.M. Best | | Standard & Poor's | | Fitch | | Moody's | |
|---|---|---|---|---|---|---|---|
| A++ | Superior | AAA | Extremely Strong | AAA | Exceptionally Strong | Aaa | Exceptional |
| **A+** | **Superior** | AA+ | Very Strong | AA+ | Very Strong | Aa1 | Excellent |
| A | Excellent | AA | Very Strong | AA | Very Strong | Aa2 | Excellent |
| A- | Excellent | AA- | Very Strong | AA- | Very Strong | Aa3 | Excellent |
| | | **A+** | **Strong** | **A+** | **Strong** | **A1** | **Good** |
| | | A | Strong | A | Strong | A2 | Good |
| | | A- | Strong | A- | Strong | A3 | Good |
| B++ | Good | BBB+ | Good | BBB+ | Good | Baa1 | Adequate |
| B+ | Good | BBB | Good | BBB | Good | Baa2 | Adequate |
| B | Fair | BBB- | Good | BBB- | Good | Baa3 | Adequate |
| B- | Fair | BB+ | Marginal | BB+ | Moderately Weak | Ba1 | Questionable |
| | | BB | Marginal | BB | Moderately Weak | Ba2 | Questionable |
| | | BB- | Marginal | BB- | Moderately Weak | Ba3 | Questionable |
| | | B+ | Weak | B+ | Weak | B1 | Poor |
| | | B | Weak | B | Weak | B2 | Poor |
| | | B- | Weak | B- | Weak | B3 | Poor |
| C++ | Marginal | CCC+ | Very Weak | CCC+ | Very Weak | Caa1 | Very Poor |
| C+ | Marginal | CCC | Very Weak | CCC | Very Weak | Caa2 | Very Poor |
| C | Weak | CCC- | Very Weak | CCC- | Very Weak | Caa3 | Very Poor |
| C- | Weak | CC | Extremely Weak | CC | Very Weak | Ca | Extremely Poor |
| | | | | C | Very Weak | C | Extremely Poor |
| D | Poor | R | Regulatory Action | | | | |
| E | Under Regulatory | | | | | | |
| | Supervision | | | | | | |
| F | In Liquidation | | | | | | |
| S | Suspended | | | | | | |

Insurance products are issued by Pacific Life Insurance Company in all states except New York, and in New York by Pacific Life & Annuity Company. Product availability and features may vary by state.

MKTG-OC-950F



## PACIFIC LIFE

Pacific Life Insurance Company
Newport Beach, CA
(800) 800-7681 • www.PacificLife.com

Pacific Life & Annuity Company
Newport Beach, CA
(888) 595-6996 • www.PacificLifeandAnnuity.com

Pacific Life refers to Pacific Life Insurance Company and its affiliates, including Pacific Life & Annuity Company. Insurance products are issued by Pacific Life Insurance Company in all states except New York and in New York by Pacific Life & Annuity Company. Product availability and features may vary by state. Each insurance company is solely responsible for the financial obligations accruing under the products it issues. Insurance products and their guarantees, including optional benefits and any fixed subaccount crediting rates, are backed by the financial strength and claims-paying ability of the issuing insurance company. They are not backed by the broker-dealer or the insurance agency from which this product is purchased or by any affiliates of those entities and neither make any representations or guarantees regarding the claims-paying ability of the issuing insurance company and do not protect the value of the variable investment options. Variable insurance products and shares of Pacific Select Fund are distributed by **Pacific Select Distributors, Inc.** (member FINRA & SIPC) a subsidiary of Pacific Life Insurance Company, and are available through licensed third party broker dealers.

Pacific Life's individual life insurance products are marketed exclusively through independent third-party producers which may include bank affiliated entities.

| | | |
|---|---|---|
| Insurance Professional's Name | Broker-Dealer's Name | State Insurance License Number |

Investment and Insurance Products: Not a Deposit — Not FDIC Insured —
Not Insured by any Federal Government Agency — No Bank Guarantee — May Lose Value

MKTG-OC-550E

15-28862-06   5/11

# EXHIBIT H

No._____

# Statement of Irrevocable Guarantee

Claimant:_____       Date of Qualified Assignment_____

Pacific LifeCorp (PLC), a stock holding company domiciled in the State of Delaware, hereby states and represents as follows:

*Whereas*, PLC has created Pacific Life & Annuity Services, Inc. (PLASI), a wholly-owned subsidiary domiciled in the State of Colorado, to act as assignee and third-party owner with respect to Qualified Assignments as provided in Section 130(c) of the Internal Revenue Code;

*Whereas*, PLASI has entered into a Qualified Assignment in the above referenced case; and

*Whereas*, PLC guarantees all of the obligations of PLASI, including the above referenced obligation.

*Now, therefore*, PLC states that if PLASI shall fail to make any payment as assumed under said Qualified Assignment, then PLC, by virtue of said guarantee of all of the obligations of PLASI, shall make such payment as and when due.

This statement is executed and signed this _____ day of _____, _____

Pacific LifeCorp

Audrey L. Milfs
Vice President and Secretary

# EXHIBIT I



**CALIFORNIA CHARITIES POOLED TRUST**

**MASTER TRUST**

# COMPLIANCE WITH CALIFORNIA RULES OF COURT 7.903

1. The master trust and other agreements do not contain a "no-contest" provision.

2. Sections 1.3 & 12.4 of the master trust prohibit modification or revocation without court approval.

3. The trustee is clearly identified in section 2.2 of thex master trust.

4. Section 11.3 of the master trust prohibits investments by the trustee other than those permitted under Probate Code section 2574.

5. Section 10.4 of the master trust requires the trustee to post bond in the amount required under Probate Code section 2320 et seq.

6. Section 9.4 of the master trust requires the trustee to file accounts and report for court approval in the manner and frequency required by Probate Code sections 1060 et seq. and 2620 et seq.

7. Section 10.8 of the master trust requires court approval of changes in trustees and a court order appointing any successor trustee.

8. Sections 9.2 & 10.5 of the master trust require compensation of the trustee, the members of any advisory committee, or the attorney for the trustee, to be in just and reasonable amounts that must be fixed and allowed by the court.

**TABLE OF CONTENTS**

AMENDED AND RESTATED DECLARATION OF TRUST OF THE  CALIFORNIA CHARITIES POOLED TRUST .............. 2

**ARTICLE ONE  ESTABLISHING THE TRUST** .................................................................................. 2
SECTION 1.1    NAME OF THE TRUST ................................................................................................. 2
SECTION 1.2    TYPE OF TRUST ......................................................................................................... 2
SECTION 1.3    IRREVOCABILITY OF TRUST ........................................................................................ 2
SECTION 1.4    TRUST DEFINITIONS .................................................................................................. 3
SECTION 1.5    TRUST INTENT & PURPOSE ......................................................................................... 3
SECTION 1.6    TRUST FUNDING ........................................................................................................ 3

**ARTICLE TWO PARTIES** ................................................................................................................. 3
SECTION 2.1    SETTLOR/CHARITABLE ORGANIZATION/NON PROFIT ................................................. 3
SECTION 2.2    TRUSTEE .................................................................................................................... 3
SECTION 2.3    DIRECTED TRUSTEE ................................................................................................... 3
SECTION 2.4    GRANTOR ................................................................................................................. 3
SECTION 2.5    TRUST BENEFICIARY .................................................................................................. 4
SECTION 2.6    INVESTMENT ADVISOR .............................................................................................. 4
SECTION 2.7    DESIGNATED MSA VENDOR ....................................................................................... 4

**ARTICLE THREE JOINDER AGREEMENT** ...................................................................................... 4
SECTION 3.1    EXECUTION OF JOINDER AGREEMENT ........................................................................ 4
SECTION 3.2    GRANTOR'S INTENT IN FUNDING THE TRUST .............................................................. 4
SECTION 3.3    IRREVOCABILITY OF JOINDER AGREEMENT ................................................................. 4
SECTION 3.4    COURT RETAINING JURISDICTION OVER FUNDING OF TRUST ...................................... 5
SECTION 3.5    PARTICIPATION OF INDIVIDUAL NOT DETERMINED DISABLED ..................................... 5

**ARTICLE FOUR INDIVIDUAL BENEFIT ACCOUNT** ....................................................................... 5
SECTION 4.1    ESTABLISHMENT AND MANAGEMENT OF INDIVIDUAL BENEFIT ACCOUNTS ................ 5
SECTION 4.2    IRREVOCABLE CONTRIBUTION .................................................................................... 6
SECTION 4.3    EFFECTIVE DATE OF AN INDIVIDUAL BENEFIT ACCOUNT ............................................ 6
SECTION 4.4    DISBURSEMENTS WILL NOT EXCEED CONTRIBUTIONS .............................................. 6
SECTION 4.5    FUTURE TRANSFER OF ASSETS .................................................................................. 6
SECTION 4.6    COUNSEL FOR AN INDIVIDUAL BENEFIT ACCOUNT .................................................... 6
SECTION 4.7    DETERMINATION OF TAX STATUS OF AN IBA ............................................................. 7

**ARTICLE FIVE BENEFICIARY ADVOCATE** ..................................................................................... 7
SECTION 5.1    NAMING OF BENEFICIARY ADVOCATE BY GRANTOR ................................................... 7
SECTION 5.2    SELECTION OF BENEFICIARY ADVOCATE BY NON PROFIT OR TRUSTEE ...................... 7
SECTION 5.3    ACCEPTANCE BY THE SELECTED BENEFICIARY ADVOCATE ........................................ 7
SECTION 5.4    DUTIES OF THE BENEFICIARY ADVOCATE ................................................................... 7
SECTION 5.5    INFORMATION PROVIDED BY BENEFICIARY ADVOCATE .............................................. 8
SECTION 5.6    REQUESTS POSSIBLY CAUSING REDUCTION OF BENEFITS ......................................... 8
SECTION 5.7    REMOVAL OF THE BENEFICIARY ADVOCATE .............................................................. 8

**ARTICLE SIX  DISBURSEMENTS DURING LIFE OF TRUST BENEFICIARY** ................................... 8
SECTION 6.1    DISCRETIONARY DISBURSEMENT GUIDELINES ........................................................... 8
A.      Discretionary Disbursements for Supplemental Services ..................................................... 8

B.      Disbursements Not To Replace Government Assistance ............................................. 8
C.      Trust Corpus and Income Specifically Not Available to Trust Beneficiary ................... 9
D.      Past Disbursement Decisions No Guarantee for Future Disbursements ...................... 9
SECTION 6.2      LEGAL OPINION ABOUT IMPACT OF DISBURSEMENT ..................................................... 9
SECTION 6.3      TRUSTEE'S DISCRETION FOR DISBURSEMENTS ........................................................... 9
SECTION 6.4      TRUST IS FOR TRUST BENEFICIARY'S SOLE BENEFIT ..................................................... 9
SECTION 6.5      NOT LIABLE FOR FAILING TO IDENTIFY OR MAINTAIN GOVERNMENT ASSISTANCE ............... 9
SECTION 6.6      DISBURSEMENTS FROM MEDICARE SET-ASIDE ARRANGEMENT (MSA) .......................... 10
SECTION 6.7      TRANSFERS BETWEEN POOLED TRUSTS ................................................................... 10
ARTICLE SEVEN  DISTRIBUTION AFTER TRUST BENEFICIARY'S DEATH ............................................... 11
SECTION 7.1      TERMINATION ON DEATH .................................................................................... 11
SECTION 7.2      DETERMINATION OF TRUST REMAINDER SHARES ....................................................... 11
A.      Trust Remainder Share ............................................................................................. 11
B.      Payback Amount ...................................................................................................... 11
C.      Final Remainder Beneficiaries .................................................................................. 11
D.      Formula For Distribution of Remainder Amount ...................................................... 11
SECTION 7.3      PAYING TRUST REMAINDER SHARE ........................................................................ 12
SECTION 7.4      PAYING PAYBACK AMOUNT .................................................................................. 12
A.      Payable Administrative Expenses ............................................................................. 12
B.      Administrative Expenses Not Payable Before Payback Amount ................................ 12
C.      Distribution of the Payback Amount ........................................................................ 12
D.      Beneficiary Counsel to Obtain Payback Amount ...................................................... 13
SECTION 7.5      PAYING FINAL REMAINDER BENEFICIARIES ............................................................... 13
A.      Distribution of Amount Owed to Trust, for Funeral Expenses, or Third Parties ......... 13
B.      Distributions to Final Remainder Beneficiaries ........................................................ 13
SECTION 7.6      NO LIABILITY FOR UNPAID CLAIMS ........................................................................ 13

ARTICLE EIGHT  EARLY TERMINATION DURING LIFETIME OF TRUST BENEFICIARY ........................... 14
SECTION 8.1      EARLY TERMINATION OF TRUST BENEFICIARY'S IBA .................................................. 14

ARTICLE NINE  IBA ADMINISTRATIVE PROVISIONS ......................................................................... 14
SECTION 9.1      TRUST BENEFICIARY INDIVIDUAL BENEFICIARY ACCOUNT .......................................... 14
SECTION 9.2      FEES AND EXPENSES ........................................................................................... 14
SECTION 9.3      IBA VALUATION AND VALUATION DATE ................................................................. 14
SECTION 9.4      PERIODIC REPORT AND COURT ACCOUNT .............................................................. 15
SECTION 9.5      INSPECTION OF IBA RECORDS ............................................................................... 15
SECTION 9.6      PREPARATION OF TAX RETURNS AND ELECTIONS ...................................................... 15
A.      Assistance That May Be Provided ............................................................................ 15
B.      Event of Tax Refund ................................................................................................. 16
C.      Cooperation By Or On Behalf Of Trust Beneficiary .................................................. 16
D.      Compensation for Assistance Provided ................................................................... 16
SECTION 9.7      TAXES AND GRANTOR TRUST STATUS ..................................................................... 16
SECTION 9.8      TRUST NOT A SUPPORT OR MAINTENANCE TRUST .................................................... 16
SECTION 9.9      SPENDTHRIFT PROVISION .................................................................................... 16

ARTICLE TEN  TRUST ADMINISTRATIVE POWERS ........................................................................... 17
SECTION 10.1     ADMINISTRATIVE POWERS ................................................................................... 17

| SECTION 10.2 | OBTAINING GOVERNMENT ASSISTANCE BENEFITS FOR TRUST BENEFICIARY | 18 |
| SECTION 10.3 | LIMITS OF TRUSTEE'S AUTHORITY | 18 |
| SECTION 10.4 | BOND | 18 |
| SECTION 10.5 | COMPENSATION | 19 |
| SECTION 10.7 | TRUST DEFENSE COSTS AND EXPENSES | 19 |
| SECTION 10.8 | RESIGNATION OR REMOVAL OF DIRECTED TRUSTEE | 19 |
| SECTION 10.9 | RESIGNATION OR REMOVAL OF MSA VENDOR | 19 |
| SECTION 10.10 | TRUSTEE AND NON PROFIT EXONERATION | 20 |
| SECTION 10.11 | HIPAA RELEASE PROVISION | 20 |
| SECTION 10.12 | DISBURSEMENT DISPUTES | 20 |
| SECTION 10.13 | PROVISIONS FOR BENEFICIARY'S IBA IF UNDER ONGOING COURT JURISDICTION OR COURT SUPERVISION | 20 |
| A. | Purchase or Sale of Personal Residence | 20 |
| B. | Borrow, Lend, Give Security, Lease, Convey, Exchange | 21 |

**ARTICLE ELEVEN TRUST INVESTMENT POWERS** ... **21**

| SECTION 11.1 | TRUSTEE AND INVESTMENT ADVISOR AUTHORITY | 21 |
| SECTION 11.2 | TRUSTEE DELEGATION OF INVESTMENT AUTHORITY | 21 |
| SECTION 11.3 | LIMITED INVESTMENT POWERS IF IBA IS UNDER ONGOING COURT JURISDICTION | 21 |

**ARTICLE TWELVE TRUST AMENDMENTS** ... **22**

| SECTION 12.1 | TRUST AMENDMENTS | 22 |
| SECTION 12.2 | METHOD OF MAKING AMENDMENTS | 22 |
| SECTION 12.3 | LIMITED SCOPE OF AMENDMENTS | 23 |
| SECTION 12.4 | COURT APPROVAL | 23 |
| SECTION 12.5 | NOT A GENERAL POWER OF APPOINTMENT | 23 |
| SECTION 12.6 | TRUST BENEFICIARY HAS NO RIGHT OF AMENDMENT OR REVOCATION | 23 |

**ARTICLE THIRTEEN GENERAL PROVISIONS AND DEFINITIONS** ... **23**

| SECTION 13.1 | APPLICABLE GOVERNING LAW | 23 |
| SECTION 13.2 | DONATIONS | 23 |
| SECTION 13.3 | RELATED ACTIVITIES | 23 |
| SECTION 13.4 | NOTICES | 23 |
| SECTION 13.5 | INDEMNIFICATION | 24 |
| SECTION 13.6 | EFFECTIVE DATE OF TRUST | 24 |
| SECTION 13.7 | GENDER, SINGULAR AND PLURAL FORMS | 24 |
| SECTION 13.8 | CAPTIONS AND HEADINGS | 24 |
| SECTION 13.9 | SEVERABILITY | 24 |
| SECTION 13.10 | LEGAL CITATIONS | 24 |
| SECTION 13.11 | OTHER REFERENCES | 25 |
| SECTION 13.12 | DEFINITIONS | 25 |

# AMENDED AND RESTATED DECLARATION OF TRUST OF THE CALIFORNIA CHARITIES POOLED TRUST

**Whereas,** CPT a Florida non-profit corporation (herein referred to as "Non Profit") most recently executed the California Charities Pooled Trust on January 15, 2011; and

**Whereas,** The Non Profit, pursuant to Section 1.3 and Article 12 of the California Charities Pooled Trust dated January 15, 2011 reserves the right to amend the trust agreement to comply with its purposes and intent. The Non Profit may also amend the Trust to conform to any statues, rules, or regulations that are approved by any governing body or agency relating to 42 U.S.C § 1396p or related statutes. The Non Profit may also amend the Trust to correct ambiguities, including scrivener errors, which might otherwise require court construction or reformation that affect the primary intent and administration of this Trust; and

**Whereas,** the Non Profit desires to make certain changes to the California Charities Pooled Trust dated January 15, 2011 to update administrative and other provisions and to make changes as a result of change of laws, regulations, and SSA POMS and to correct ambiguities, including scrivener errors, which might otherwise require court construction or reformation that affect the primary intent and administration of this Trust; and

**Whereas,** the Non Profit has not amended the Trust in any way that will convert irrevocable asset contributions into revocable asset contributions, nor made an amendment that will disqualify a Trust Beneficiary from being eligible for, or continuing to receive, his or her Government Assistance benefits; and

**Therefore,** it is hereby agreed by and between the parties hereto, that the California Charities Pooled Trust be amended and restated in full as follows replacing any and all prior Trust agreements:

# ARTICLE ONE
# ESTABLISHING THE TRUST

## SECTION 1.1        NAME OF THE TRUST

The name of the Trust established by this Amended and Restated Declaration is the **California Charities Pooled Trust** ("Trust").

## SECTION 1.2        TYPE OF TRUST

The Non Profit establishes and manages the Master Pooled Self Settled Special Needs Trust solely for the benefit of Persons with Disabilities pursuant to 42 U.S.C. § 1396p(d)(4)(C).

## SECTION 1.3        IRREVOCABILITY OF TRUST

This Trust is irrevocable. A Trust Beneficiary's Individual Benefit Account (IBA) is irrevocable after the Non Profit or Trustee accepts the Trust Beneficiary's Joinder Agreement and Required Documents, the Trustee accepts the Contributed Amount by the Grantor, and the Grantor and the Person with a Disability seeking to become a Trust Beneficiary Complete Enrollment.

Notwithstanding the irrevocability of this Trust, this Trust may be amended from time to time to comply with its purposes and intent as set forth in Article 12. Under no circumstances does a Trust Beneficiary have the right to revoke or amend the Trust or the Trust Beneficiary's IBA.

## SECTION 1.4          TRUST DEFINITIONS

Definitions of the terms used in this Declaration of Trust and the Trust created herein are described in alphabetical order in Section 13.12 of Article Thirteen.

## SECTION 1.5          TRUST INTENT & PURPOSE

It is the intent of the Trust, to comply with all applicable federal and state laws and regulations related to and governing Master Pooled Self Settled Special Needs Trusts solely for the benefit for Persons with Disabilities as set forth in 42 U.S.C. § 1396p(d)(4)(C) and related federal and state laws and regulations.

The purpose of the Trust is to provide a discretionary, safe and effective method for persons with disabilities to benefit from their assets while retaining eligibility for Government Assistance benefits. The Trust provides a discretionary, safe and effective system for the receipt, administration, management, and investment of assets held in an IBA for each Trust Beneficiary and the discretionary disbursement of such assets for the sole benefit of such Trust Beneficiary without causing the Trust Beneficiary to lose eligibility for Government Assistance benefits.

## SECTION 1.6          TRUST FUNDING

Concurrently with the execution of this Trust, the Settlor assigns, conveys, transfers, and delivers a lump sum payment of Ten Dollars and No Cents ($10.00) to the Trust. The Trust estate shall consist of this initial contribution and any additional contributions in cash or property made to the Trust estate at any time by any Grantor.

# ARTICLE TWO
# PARTIES

## SECTION 2.1          SETTLOR/CHARITABLE ORGANIZATION/NON PROFIT

The Non Profit, CPT is a Florida non-profit corporation and a tax-exempt charitable organization and is Settlor of the Trust. The Non Profit has established this Trust and manages it as required by applicable federal and state law. The Non Profit has been granted tax-exempt status by the Internal Revenue Service (IRS) under Internal Revenue Code (IRC) Section 501(c)(3).

## SECTION 2.2          TRUSTEE

The Non Profit shall serve as Trustee and shall be responsible for oversight for the custody, investment asset allocation model selection and disbursement of funds contributed to the Trust for each Trust Beneficiary.

## SECTION 2.3          DIRECTED TRUSTEE

The Non Profit may at any time appoint a Directed Trustee. Any Directed Trustee appointed by the Non Profit shall accept the role as a Directed Trustee in the manner provided by applicable state law. The Directed Trustee will have all of the authority of a Trustee as set forth in the appointment by the Non Profit.

Although the Non Profit may appoint a Directed Trustee, the Non Profit will continue to manage the trust. The Non Profit reserves the right to remove any Directed Trustee and retain another corporate trustee or private professional trustee, if it qualifies to act, as Directed Trustee or Successor Directed Trustee.

## SECTION 2.4          GRANTOR

A Grantor is the Trust Beneficiary himself or herself. A Grantor may also be the parent, grandparent, legal guardian of a Trust Beneficiary, or any person or entity acting pursuant to an order by a court or other legal authority, who contributes assets to a Trust Beneficiary's IBA in the Trust, and also includes, when applicable, any person or entity that contributed his, her or its own assets to the Trust for the sole benefit of a Trust Beneficiary.

3

## SECTION 2.5        TRUST BENEFICIARY

A Trust Beneficiary is a Person with a Disability, as defined in § 1614(a)(3) of the Social Security Act (42 U.S.C. § 1382c(a)(3)), who qualifies under 42 U.S.C. § 1396p. A Trust Beneficiary is also the recipient of services and benefits from the Contributed Amounts plus income earned in the Trust Beneficiary's IBA established by a Grantor solely for the benefit of the Trust Beneficiary.

## SECTION 2.6        INVESTMENT ADVISOR

The Non Profit may retain an independent Investment Advisory Firm as the Investment Advisor responsible for the custody of the assets, risk assessment for each Trust Beneficiary, investment and asset allocation selection and management in accordance with investment objectives established for each IBA, cash management, investment performance analysis, written investment performance reports, written account statements of activities and asset values, and annual summary of account information for each IBA and Trust Beneficiary. The Non Profit reserves the right to remove any Investment Advisor and retain another Investment Advisory Firm or itself as Investment Advisor.

## SECTION 2.7        DESIGNATED MSA VENDOR

The Non Profit may retain an MSA Vendor for purposes of achieving Medicare Secondary Payer compliance in IBAs that contain a Medicare Set-Aside Arrangement (MSAs). MSA Vendor shall be responsible for evaluation and determination of disbursement requests from funds within the IBA identified as MSA funds in accordance with policies established by the Centers for Medicare and Medicaid Services (CMS) to ensure that Medicare remains secondary payer in situations related to the underlying insurance settlement. MSA Vendor shall not be responsible for any investment or physical possession of the MSA funds and shall perform solely administrative functions related thereto. MSA Vendor shall request payments made from MSA funds directly by the Directed Trustee to medical service providers who rendered services deemed appropriate to be paid with MSA funds. The Non Profit reserves the right to remove any designated MSA Vendor and retain another pursuant to notice provisions provided herein.

# ARTICLE THREE
# JOINDER AGREEMENT

## SECTION 3.1        EXECUTION OF JOINDER AGREEMENT

To allow a Trust Beneficiary to join and benefit from this Trust, a Grantor is required to sign a Joinder Agreement and comply with other Required Documents. By the Grantor's execution of the Joinder Agreement and completion of the Required Documents, the Grantor agrees to and accepts the terms of the Trust, the Joinder Agreement, and the Required Documents.

## SECTION 3.2        GRANTOR'S INTENT IN FUNDING THE TRUST

It is the Grantor's intent when providing the Contributed Amount not to displace any Government Assistance benefits that may otherwise be available to the Trust Beneficiary. It shall be the specific intention of all Grantors to establish a fully discretionary, supplemental fund pursuant to 42 U.S.C. § 1396p(d) and to limit the discretionary disbursements solely for the benefit of the Trust Beneficiary for his or her Supplemental Services and further limited by Article Six from this Trust.

## SECTION 3.3        IRREVOCABILITY OF JOINDER AGREEMENT

Subject to approval by the Non Profit, this Trust shall be enforceable against a specific individual seeking to become a Trust Beneficiary upon Grantor's execution of a Joinder Agreement and Required Documents and the Contributed Amount to the Trust. An individual seeking to become a Trust Beneficiary shall have Completed Enrollment when: (1) the Non Profit accepts and approves the Trust Beneficiary's Joinder Agreement; (2) the Contributed Amount is received by the Trust; and (3) the Trustee accepts the Contributed Amount.

4

Upon Completed Enrollment, the individual enrolling and joining in the Trust becomes a Trust Beneficiary of this Trust and the following becomes effective:

A. The Joinder Agreement and the Individual Benefit Account ("IBA") created for the Trust Beneficiary shall become irrevocable as to such Grantor and Trust Beneficiary;

B. The Contributed Amount shall not be refundable to the Grantor except as otherwise provided in Article Eight of the Declaration of Trust;

C. All remainder beneficiary designations set forth in the Joinder Agreement may not be revoked or amended. However, a Trust Beneficiary may by exercise of a special (or limited) power of appointment to any one or more persons or entities, or trusts for their benefit, other than the Trust Beneficiary, the Trust Beneficiary's estate, the Trust Beneficiary's creditors, or creditors of the Trust Beneficiary's estate. This special power of appointment shall be exercised by the Trust Beneficiary in a will, codicil, or other writing specifically referring to and exercising such power of appointment. Unless within 30 days after the Trust Beneficiary's death the Trustee has actual notice of the existence of a will, codicil, or other writing exercising such special power of appointment (whether or not the document has been filed or admitted to probate), the Trustee shall, without incurring any liability to any appointee, proceed as if the power had not been exercised. This clause shall not, however, bar any right of any appointee to enforce the appointment.

D. The Grantor and Trust Beneficiary shall have no further interest in, and do relinquish and release all right, control over, incidents of ownership and interest of any kind or nature in and to, the assets (including any and all assets subsequently contributed to the Trust Beneficiary's IBA); and

E. The Non Profit shall manage the Trust Beneficiary's IBA solely for the benefit of the Trust Beneficiary in accordance with this Declaration of Trust, the Trust Beneficiary's Joinder Agreement, and the Required Documents.

## SECTION 3.4     COURT RETAINING JURISDICTION OVER FUNDING OF TRUST

If a Court authorizes the funding of a Trust Beneficiary's IBA, then the Trust's Joinder Agreement will incorporate any order authorizing the funding of the Trust. Further, the terms of the Court's order shall supersede any terms of the Joinder Agreement or Declaration of Trust that are inconsistent with such order.

## SECTION 3.5     PARTICIPATION OF INDIVIDUAL NOT DETERMINED DISABLED

If the Social Security Administration or any other authorized federal or state governmental entity has not made a determination that an individual seeking to enroll as a Trust Beneficiary of this Trust is a Person with a Disability, the Non Profit is authorized to accept such individual as a Trust Beneficiary if the Non Profit reasonably believes that such individual is (1) a Person with a Disability, or (2) will be determined to be a Person with a Disability by an appropriate federal or state governmental entity.

# ARTICLE FOUR
# INDIVIDUAL BENEFIT ACCOUNT

## SECTION 4.1     ESTABLISHMENT AND MANAGEMENT OF INDIVIDUAL BENEFIT ACCOUNTS

A separate Trust IBA shall be established and maintained for the sole benefit of each Trust Beneficiary, but the Trustee may cause the amounts in the IBA to be pooled for investment and management purposes. The Trustee or any duly authorized agent shall maintain records for each Trust IBA in the name of, and showing the Contributed Amount plus any income earned from the Contributed Amount for each Trust Beneficiary.

## SECTION 4.2          IRREVOCABLE CONTRIBUTION

The Contributed Amount to a Trust Beneficiary's Individual Benefit Account ("IBA") are treated as if the contribution is irrevocably assigned, transferred, conveyed and delivered to the Trustee to be used for the sole benefit of the Trust Beneficiary under the terms of this Trust. The Contributed Amount by (or on behalf of) a Trust Beneficiary must be acceptable to the Trustee. Once accepted by the Trustee, the Contributed Amount is non-refundable to the Trust Beneficiary. The Trustee's acceptance is indicated when the Trustee accepts the Trust Beneficiary's Joinder Agreement and Required Documents, the Trustee accepts the Contributed Amount by the Grantor, and the Grantor and the Person with a Disability seeking to become a Trust Beneficiary Complete Enrollment.

## SECTION 4.3          EFFECTIVE DATE OF AN INDIVIDUAL BENEFIT ACCOUNT

The effective date of a Trust Beneficiary's IBA is indicated by the date the executed Joinder Agreement and Required Documents are approved by the Non Profit and by the establishment of a Trust Beneficiary's IBA. If the Non Profit does not receive the Joinder Agreement and the Required Documents, then the Non Profit may invalidate the Joinder Agreement and not accept the Trust Beneficiary's income or assets. Further, if the Joinder Agreement is invalidated, no IBA will be established for an individual and the individual will not become a Trust Beneficiary of the Trust.

## SECTION 4.4          DISBURSEMENTS WILL NOT EXCEED CONTRIBUTIONS

Subject to the Non Profit's and Trustee's sole and absolute discretion in making disbursements for the sole benefit of a Trust Beneficiary, the total disbursements made on behalf of a Trust Beneficiary shall not exceed the total of the Grantor's Contributed Amount, plus any undistributed income.

## SECTION 4.5          FUTURE TRANSFER OF ASSETS

At any time, or from time to time, a Grantor may transfer, during his or her lifetime or at death, any kind of real or personal property to the Trust, subject to acceptance of such property by the Trustee.  The Grantor shall be subject to the terms of this Trust Agreement and any Joinder Agreement executed for the additional property transferred to and accepted by the Trustee.

The Trustee or Trust Administrator may refuse to accept any addition if the Trustee deems such rejection to be in the best interest of the Trust and a Trust Beneficiary. Each Grantor retains no reversion or other interest in any Trust property.

The Trustee shall not credit any such future designation of property to a particular Trust Beneficiary's IBA until such designated property has been accepted by the Trustee.

## SECTION 4.6          COUNSEL FOR AN INDIVIDUAL BENEFIT ACCOUNT

By the Grantor's execution of the Joinder Agreement and the Trust Beneficiary's completed enrollment in the Trust, the Non Profit and Trustee are expressly authorized to (1) retain an attorney at law as IBA Counsel to provide legal services as may be required or permitted in this Trust or Joinder Agreement, to assist the Non Profit and Trustee, and (2) pay the IBA Counsel for such legal services from the Trust Beneficiary's IBA.

The Non Profit or Trustee may retain and pay the IBA Counsel reasonable attorney's fees and expenses to represent the Trust Beneficiary in any matters related to: (1) the Trust Beneficiary's IBA; or (2) the court's continuing jurisdiction over a Trust Beneficiary's IBA. The amount of compensation for the IBA Counsel shall be an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale.

The compensation of an IBA Counsel if the IBA is under ongoing court jurisdiction as set forth in California Rule of Court 7.903 must be fixed and allowed by the court.

6

SECTION 4.7        DETERMINATION OF TAX STATUS OF AN IBA

Neither the Non Profit, Trustee, nor the Investment Advisor make any claim, warranty, statement, or opinion, either expressly or impliedly, about the tax status of any Trust Beneficiary's IBA. The Non Profit or Trustee may, but are not required to, have an IBA Counsel or other appropriate person determine the tax status of a Trust Beneficiary's IBA.

In the absence of the Non Profit or Trustee obtaining such determination, the Beneficiary Advocate should obtain independent tax advice to determine the tax status of a Trust Beneficiary's IBA.

# ARTICLE FIVE
# BENEFICIARY ADVOCATE

## SECTION 5.1        NAMING OF BENEFICIARY ADVOCATE BY GRANTOR

The Grantor shall name a Beneficiary Advocate and, if possible, a Successor Beneficiary Advocate in the Joinder Agreement, subject to approval by the Non Profit. The Grantor may name the Trust Beneficiary to be the Beneficiary Advocate. If a Grantor fails to name a Beneficiary Advocate or Successor Beneficiary Advocate in the Joinder Agreement, or if the Non Profit does not approve of the Beneficiary Advocate or Successor Beneficiary Advocate named by the Grantor, then the Non Profit may name a Beneficiary Advocate for the Trust Beneficiary.

## SECTION 5.2        SELECTION OF BENEFICIARY ADVOCATE BY NON PROFIT OR TRUSTEE

A Trust Beneficiary may be selected to serve as his or her own Beneficiary Advocate, subject to the approval by the Non Profit or Trustee. In certain circumstances the Non Profit or Trustee may select someone other than the Trust Beneficiary, preferably the Trust Beneficiary's Legal Representative or some other qualified person, to be Beneficiary Advocate.

A Trust Beneficiary's guardian, conservator, or attorney-in-fact will be given preference to serve as a Beneficiary Advocate.

The Grantor authorizes the Non Profit and Trustee to compensate the Beneficiary Advocate selected or approved by the Non Profit or Trustee. Such compensation shall be reasonable based upon the services rendered and the reasonable costs for such services in the community where such services are rendered.

## SECTION 5.3        ACCEPTANCE BY THE SELECTED BENEFICIARY ADVOCATE

Each individual selected as a Beneficiary Advocate or Successor Beneficiary Advocate, if any, shall accept such selection by executing a Beneficiary Advocate Acceptance of Duties agreement. Such agreement shall be incorporated herein by this reference.

## SECTION 5.4        DUTIES OF THE BENEFICIARY ADVOCATE

The Beneficiary Advocate shall act as an agent of the Trust Beneficiary, with the same authority as an attorney-in-fact of the Trust Beneficiary, but with the limited additional authority to obtain guidance, findings and assessments regarding the life care of the Trust Beneficiary, to act as requested by the Non Profit or Trustee for the benefit of the Trust Beneficiary, or to receive notices from the Non Profit or Trustee on behalf of the Trust Beneficiary.

The Beneficiary Advocate shall report such guidance, findings and assessments to the Non Profit and the Trustee. The Non Profit and Trustee shall have the ability to make requests of the Beneficiary Advocate in the course of administering the Trust Beneficiary's IBA for the sole benefit of the Trust Beneficiary.

The Beneficiary Advocate shall notify the Non Profit or Trustee whenever a Government Assistance Benefits Event occurs. A Government Assistance Benefits Event occurs whenever the Trust Beneficiary: (a) applies for Government Assistance benefits; (b) has an application for Government Assistance benefits approved or denied; or (c) has Government Assistance benefits terminated.

The Beneficiary Advocate shall complete all reasonable requests made by the Non Profit and Trustee.

## SECTION 5.5      INFORMATION PROVIDED BY BENEFICIARY ADVOCATE

The Non Profit, Trustee, Investment Advisor or other agents hired by Trust may, but are not required to, rely on the guidance, findings and assessments provided by, or actions of, the Beneficiary Advocate as if made by the Trust Beneficiary.

## SECTION 5.6      REQUESTS POSSIBLY CAUSING REDUCTION OF BENEFITS

For requests for disbursements that, in the sole and absolute discretion of the Non Profit or Trustee, may cause a reduction in the Trust Beneficiary's Government Assistance benefits, the Non Profit or Trustee may retain an IBA Counsel to issue a legal opinion regarding the effect of the requested disbursement upon the Trust Beneficiary's continual eligibility for Government Assistance benefits.

The Non Profit or Trustee may request the IBA Counsel to seek a court order authorizing such disbursement from a court retaining jurisdiction over the Trust Beneficiary or his or her IBA. Notwithstanding a request for such a disbursement, or the legal opinion of the IBA Counsel, the Non Profit and Trustee have sole and absolute discretion to approve or deny such disbursement request.

## SECTION 5.7      REMOVAL OF THE BENEFICIARY ADVOCATE

The Non Profit or Trustee may remove and replace a Beneficiary Advocate if the Non Profit or Trustee reasonably believes such Beneficiary Advocate is not acting in the best interest of the Trust Beneficiary.

If the Trust Beneficiary's IBA is under the continuing jurisdiction of an applicable court, or if the Beneficiary Advocate is a court appointed guardian or conservator of the Trust Beneficiary, the Non Profit or Trustee may obtain a court order to remove and replace such Beneficiary Advocate.

# ARTICLE SIX
# DISBURSEMENTS DURING LIFE OF TRUST BENEFICIARY

## SECTION 6.1      DISCRETIONARY DISBURSEMENT GUIDELINES

Subject to the Trustee's sole and absolute discretion, distributions from any of the individual Trust Beneficiary's IBA may be made only for a Trust Beneficiary's **sole benefit** as follows:

A.    DISCRETIONARY DISBURSEMENTS FOR SUPPLEMENTAL SERVICES
      The Non Profit or Trustee, in its sole and absolute discretion, may approve and disburse any amounts of principal or income, or both, up to the whole thereof, from a Trust Beneficiary's IBA for the Trust Beneficiary's sole benefit for his or her Supplemental Services that are not otherwise provided to the Trust Beneficiary through Government Assistance benefits. Neither the Non Profit nor Trustee is ever obligated or compelled to approve a disbursement request. Further, the Non Profit and Trustee may refuse any request for a disbursement from a Trust Beneficiary's IBA for services that any public or private agency has the obligation to provide to such Trust Beneficiary. Before any discretionary disbursement request is approved and disbursed from a Trust Beneficiary's IBA, the Non Profit or Trustee may, although neither is required to, consider the consequences of such disbursement on the Trust Beneficiary's eligibility for Government Assistance benefits.

B.    DISBURSEMENTS NOT TO REPLACE GOVERNMENT ASSISTANCE
      Distributions from this Trust should not be made to, or for the benefit of, a Trust Beneficiary if the effect of such distribution would be to supplant, replace, or to disqualify a Trust Beneficiary from receiving

8

Government Assistance, without careful consideration. The Trust principal and income is specifically not available to any Trust Beneficiary.

Generally, the Non Profit or Trustee should not make distributions to, or for the benefit of, a Trust Beneficiary in excess of resource and income limitations of any Government Assistance program to which the Trust Beneficiary is entitled. However, such distributions are not specifically prohibited and may be made with the full understanding of how such distributions may affect a Trust Beneficiary's future benefits. The Non Profit or Trustee may, but is not required to, consider the future needs of a Trust Beneficiary when making distributions or when considering requests for distributions.

C.    TRUST CORPUS AND INCOME SPECIFICALLY NOT AVAILABLE TO TRUST BENEFICIARY
The Trust corpus, also known as the Trust's principal and income are specifically not available to any Trust Beneficiary.

D.    PAST DISBURSEMENT DECISIONS NO GUARANTEE FOR FUTURE DISBURSEMENTS
The Non Profit and Trustee are under no duty to make future disbursement decisions based upon past disbursement decisions. All past decisions about disbursement requests by the Non Profit and Trustee, regardless of the reason for such decisions, shall not serve, or be construed, as a pattern, precedent or past conduct, that establishes a duty upon the Non Profit or Trustee to continue making such decisions about disbursement requests.

## SECTION 6.2        LEGAL OPINION ABOUT IMPACT OF DISBURSEMENT

If either the Non Profit or Trustee deems it necessary, the Non Profit or Trustee may retain IBA Counsel to provide a legal opinion regarding the impact or consequence of approving and making or denying any disbursement request on the Trust Beneficiary's eligibility for Government Assistance benefits. The Trustee may pay from the Trust Beneficiary's IBA, the IBA Counsel's reasonable attorney fees and expenses for providing such legal opinion. Furthermore, if either the Non Profit or Trustee deems it appropriate, the Non Profit or Trustee may seek an order approving a disbursement decision from a court of competent jurisdiction.

## SECTION 6.3        TRUSTEE'S DISCRETION FOR DISBURSEMENTS

The Non Profit and Trustee have sole and absolute discretion in approving or denying any disbursement request, and making a disbursement of principal or income, or both, from a Trust Beneficiary's IBA. Neither the Non Profit nor Trustee is obligated or compelled to approve or deny a disbursement request or make a disbursement. The judgment of any other person or entity shall not be substituted for the judgment of the Non Profit or Trustee in either's exercise of discretion in approving or denying a disbursement request or in making a disbursement.

The Trustee may allocate all disbursements between principal and income as the Trustee determines in its sole and absolute discretion.

## SECTION 6.4        TRUST IS FOR TRUST BENEFICIARY'S SOLE BENEFIT

Notwithstanding any other provision in this Trust, The Trust Beneficiary's IBA is for the **sole benefit** of the Trust Beneficiary. All disbursements from the Trust Beneficiary's IBA shall be made for the Trust Beneficiary's sole benefit. The Trust Beneficiary's needs shall supersede the interests of all others including remainder beneficiaries recognized under the Trust or Joinder Agreement.

## SECTION 6.5        NOT LIABLE FOR FAILING TO IDENTIFY OR MAINTAIN GOVERNMENT ASSISTANCE

The Non Profit, Trustee, IBA Counsel, Investment Advisor, Beneficiary Advocate selected by the Non Profit and other Trust agents shall not be liable to any Trust Beneficiary or any other third party, for failing to identify any program or resource available to the Trust Beneficiary.

As evidenced by the execution of the Joinder Agreement, the Grantor, Trust Beneficiary and, if selected by the Grantor, the Beneficiary Advocate and Successor Beneficiary Advocate, as appropriate, recognize, understand and acknowledge the uncertainty and changing nature of the guidelines, laws and regulations pertaining to Government Assistance benefits and agree that the Non Profit, Trustee, IBA Counsel, Investment Advisor, Beneficiary Advocate selected by the Non Profit and other Trust's agents, if applicable, shall not be responsible or liable for causing a period of disqualification or ineligibility for Government Assistance benefits for a Trust Beneficiary.

In addition, the Non Profit, Trustee, IBA Counsel, Investment Advisor, Beneficiary Advocate selected by the Non Profit and other Trust's agents, if applicable, shall not in any event be liable for any loss of benefits by a Trust Beneficiary as long as they, individually, jointly or collectively, did not act with willful misconduct, bad faith, or gross negligence.

It remains the responsibility of the Grantor and Trust Beneficiary, and Beneficiary Advocate selected by either of them, to: (1) seek out and apply for appropriate Government Assistance benefits; and (2) provide all proper documentation and information necessary and required to qualify the Trust Beneficiary, and maintain the Trust Beneficiary qualified, for any such Government Assistance benefits.

## SECTION 6.6    DISBURSEMENTS FROM MEDICARE SET-ASIDE ARRANGEMENT (MSA)

In the event that the Trust Beneficiary has an MSA component to his or her IBA, disbursements of any principle or income from the designated MSA funds shall be made at the sole and absolute discretion of the Non Profit or Trustee, unless there is a designated MSA Vendor contracted for the maintenance of that portion of the IBA.

Payments from the MSA shall only be for medical expenses that would otherwise be covered by Medicare and related to the insurance settlement from which fund were used to establish the MSA. Funds utilized for MSA purposes are limited by the amount of the contribution, whether funded as a lump sum or annually via a financial instrument such as a structured settlement annuity.

In the event of an exhaustion of MSA funds, whether in total or on an annual basis pending the next installment, the Non Profit, Trustee, or MSA Vendor shall contact Medicare and inform it of its need to resume coverage of the injury in question.

The Non Profit, Trustee, or MSA Vendor shall perform all accounting and reporting functions necessary to comply with policies established by the Centers for Medicare and Medicaid Services (CMS). The Non Profit, Trustee or MSA Vendor shall refuse any request for disbursement from a Trust Beneficiary's MSA funds for services neither related to the insurance settlement, nor otherwise covered by Medicare. Any payments made in error that should have otherwise been made from the IBA shall be repaid to the MSA and counted against the Trust Beneficiary's check limit or charged appropriately.

## SECTION 6.7    TRANSFERS BETWEEN POOLED TRUSTS

Unless otherwise not allowed by Social Security Administration (SSA) regulations, transferring a Trust Beneficiary's assets from one 42 U.S.C. §1396p(d)(4)(C) trust to another 42 U.S.C. §1396p(d)(4)(C) trust is not an early termination of the Trust as set forth in Article Eight and does not require the state to be reimbursed.

In the event of such transfer from one 42 U.S.C. §1396p(d)(4)(C) trust to another 42 U.S.C. §1396p(d)(4)(C) trust, no disbursements shall be made other than to the accepting 42 U.S.C. §1396p(d)(4)(C), including expenses in POMS SI 01120.199F.3 and SI 01120.201F.2.c (Program Operations Manual System) or other prohibited expenses as may be determined by the Center for Medicare and Medicaid Services (CMS) or the SSA.

10

## ARTICLE SEVEN
## DISTRIBUTION AFTER TRUST BENEFICIARY'S DEATH

### Section 7.1          Termination On Death

A Trust Beneficiary's IBA shall terminate upon the Trust Beneficiary's death. The Trust Beneficiary's death shall be verified by receipt of a notice of death of a certified copy of the Trust Beneficiary's death certificate to the Non Profit or Trustee.

If the Trustee or Beneficiary Advocate is unable to contact or locate a Trust Beneficiary after expending a reasonable and diligent search, then after a period of five (5) years, the Trust Beneficiary shall be presumed dead.

### Section 7.2          Determination of Trust Remainder Shares

Upon termination of a Trust Beneficiary's IBA by death, the Non Profit or Trustee, in their sole and absolute discretion, shall determine the amount of assets remaining in the Trust Beneficiary's IBA (the "Remainder Amount"). After determining the Remainder Amount, the Non Profit or Trustee shall determine the amounts that shall be retained by the Non Profit (the Trust Remainder Share), the amount that shall be used to payback a State(s) Medicaid agency(ies) ("Payback Amount"), and any remaining amounts to pay the Trust Beneficiary's remainder beneficiaries ("Final Remainder Beneficiaries").

In determining the correct amounts and allocations, the provisions in this Article will control:

A.     TRUST REMAINDER SHARE

The Trust Remainder Share shall consist of the amount in the Remainder Amount that will be retained by the Trust as authorized by 42 U.S.C. § 1396p(d)(4)(C)(iv). In addition to the retention by the Trust set forth in Section 7.2(D), if the Trust Beneficiary's IBA includes a Medicare Set Aside Arrangement (MSA), then the remaining funds contributed as part of a MSA will be added to the Trust Remainder Share on top of any other amount already retained.

B.     PAYBACK AMOUNT

The Payback Amount shall consist of an amount equal to the total amount of medical assistance paid on behalf of the Trust Beneficiary under a State(s) Medicaid plan(s) as provided by applicable federal or state laws as required by 42 U.S.C. § 1396p(d)(4)(C)(iv) to be paid to the State(s) Medicaid agency(ies).

C.     FINAL REMAINDER BENEFICIARIES

The Final Remainder Beneficiaries share shall consist of the amount remaining in the Remainder Share that will be distributed to the Trust Beneficiary's heirs as set forth in the Joinder Agreement.

D.     FORMULA FOR DISTRIBUTION OF REMAINDER AMOUNT

1.   If the Payback Amount is equal to or greater than the Remainder Amount, then:

- The Non Profit shall retain 50% of the Remainder Amount as the Trust Remainder Share as set forth in Section 7.3; and

- The Trustee shall pay the remaining 50% of the assets in the Remainder Amount as the Payback Amount as set forth in Section 7.4.

2.   If the Payback Amount is less than the Remainder Amount, then:

11

- The Non Profit shall first retain 5% of the Remainder Amount as the Trust Remainder Share as set forth in Section 7.3;

- The Trustee shall then pay from the Remainder Amount the full amount of the Payback Amount as set forth in Section 7.4;

- The Trustee shall then finally pay any remaining Remainder Amount to the Final Remainder Beneficiaries as set forth in Section 7.5.

## SECTION 7.3    PAYING TRUST REMAINDER SHARE

The Trustee shall distribute the Trust Remainder Share to the Non Profit. The Non Profit, in its sole and absolute discretion, shall use the Trust Remainder Share to carry out the exempt charitable activities and programs of the Non Profit.

## SECTION 7.4    PAYING PAYBACK AMOUNT

The Trustee shall pay the Payback Amount as set forth in this Section. The Trustee will determine the Payable Administrative Expenses and then pay the Payback Amount as follows:

### A.    PAYABLE ADMINISTRATIVE EXPENSES

Unless applicable federal and state laws and regulations provide otherwise, the Trustee may pay the following Payable Administrative Expenses prior to paying the Payback Amount:

1) Taxes due to the state or federal governments because of the death of the Trust Beneficiary;
2) Reasonable fees and costs, including reasonable attorneys' fees, for the administration of the Trust Beneficiary's estate, including, but not limited to, preparing accountings of the Trust Beneficiary's estate and filing them with the appropriate court, completing and filing appropriate pleadings and documents, or performing other actions necessary for terminating and winding up the Trust Beneficiary's IBA;

### B.    ADMINISTRATIVE EXPENSES NOT PAYABLE BEFORE PAYBACK AMOUNT

Unless applicable federal and state laws and regulations provide otherwise, the Trustee shall not pay any administrative expenses not allowed by the SSA's POMS from assets remaining in the Trust Beneficiary's IBA before distributing such assets to pay the Payback Amount. At the time of drafting of the Trust, the SSA has prohibited the following administrative expenses from being paid prior to paying the Payback Amount:

1) Taxes due from the estate of the Trust Beneficiary, other than those arising from inclusion of the trust in the estate;
2) Inheritance taxes due for residual beneficiaries;
3) Payment of debts owed to third parties;
4) Funeral expenses; and
5) Payments to residual beneficiaries (however, for the purpose of prohibiting payments prior to reimbursement of medical assistance, a pooled trust is not considered a residual beneficiary).

### C.    DISTRIBUTION OF THE PAYBACK AMOUNT

After payment of the Payable Administrative Expenses, if there are any assets remaining in the Remainder Share, the Trustee shall pay the Payback Amount to the appropriate State(s) Medicaid Agency(ies).

D.   BENEFICIARY COUNSEL TO OBTAIN PAYBACK AMOUNT

A Beneficiary Counsel retained by the Trust Beneficiary shall determine the amount of the Payback Amount. The Beneficiary Counsel shall provide the Non-Profit or Trustee with a written assessment ("Payback Determination Assessment") stating the nature and amount of the Payback Amount. If there is no Beneficiary Counsel or the Beneficiary Counsel does not provide the Non-Profit or Trustee with a Payback Determination Assessment to the Trustee's satisfaction, the Non-Profit or Trustee may retain an attorney at law to provide a Payback Determination Assessment. The Trustee has sole and absolute discretion to pay the attorney, his or her reasonable attorney's fees and costs directly from the Trust Beneficiary's IBA. The Trustee also has sole and absolute discretion to rely on or ignore the Payback Determination Assessment regarding the Payback Amount if it reasonably believes the information provided is inaccurate.

## SECTION 7.5    PAYING FINAL REMAINDER BENEFICIARIES

Only after payment of the Payback Amount as set forth in Section 7.4 and before distribution to the Final Remainder Beneficiaries, the Non Profit or Trustee may make the following distributions from the Remainder Amount:

A.   DISTRIBUTION OF AMOUNT OWED TO TRUST, FOR FUNERAL EXPENSES, OR THIRD PARTIES

The Non Profit or Trustee may distribute assets to pay any amounts appropriately owed: (1) to the Trust; (2) for the Trust Beneficiary's funeral expenses; and (3) to third parties, respectively, in such order or as the Trustee may decide in its sole and absolute discretion.

The Non Profit or Trustee may use assets in the Trust Beneficiary's IBA to retain and pay IBA Counsel to use any applicable state probate court claims procedure to assure payment, resolution, termination and release of outstanding claims against the Trust Beneficiary's IBA. The Beneficiary Advocate has the responsibility of notifying the Non Profit or Trustee of any outstanding creditors of the Trust Beneficiary so the creditors can be notified and appropriate procedures used in accordance with applicable state law.

If it becomes necessary for the Non Profit or Trustee to become involved in any state probate court claims procedures, the Non Profit or Trustee may charge an additional fee and be reimbursed for incurred expenses, both to be paid from the Trust Beneficiary's IBA. If there are insufficient assets remaining in the Trust Beneficiary's IBA to pay such additional fees and reimburse such additional expenses, neither the Non Profit nor the Trustee is obligated to become involved in such state probate court claims procedures, and may refrain from doing so without liability to any party, including the Trust Beneficiary's remainder beneficiaries, heirs, assigns, any other agents or descendants, for not taking such action.

B.   DISTRIBUTIONS TO FINAL REMAINDER BENEFICIARIES

After the distributions provided in Section 7.5(A) are made, the Trustee shall distribute any remaining assets in the Remainder Amount to the Final Remainder Beneficiaries pursuant to the Joinder Agreement.

## SECTION 7.6    NO LIABILITY FOR UNPAID CLAIMS

The Trustee, the Non Profit and any MSA Vendor shall not be liable to the Grantor, Trust Beneficiary, his or her Beneficiary Advocate, or any other third party, for any governmental or third party claims that remain unpaid because: (1) the claims were not provided to the Non Profit or Trustee; (2) the claims were unknown to the Non Profit or Trustee; or (3) there were insufficient assets remaining in the Trust Beneficiary's IBA to pay such claims. If the Trustee or Non Profit already made disbursements to the Final Remainder Beneficiaries, the Non Profit or Trustee are not responsible for collecting these funds for the benefit of any third party claim.

# ARTICLE EIGHT
# EARLY TERMINATION DURING LIFETIME OF TRUST BENEFICIARY

### SECTION 8.1        EARLY TERMINATION OF TRUST BENEFICIARY'S IBA

Under no circumstance shall the Trust Beneficiary have the power to terminate the Trust or his or her share in the Trust Beneficiary's IBA at any time under any circumstances.

If a Trust Beneficiary's IBA is terminated prior to the death of the Trust Beneficiary, the State(s) would receive a Payback Amount that shall consist of all amounts remaining in the Trust Beneficiary's IBA at the time of termination up to an amount equal to the total amount of medical assistance paid on behalf of the Trust Beneficiary under the State Medicaid plan(s) as set forth in Section 7.4.

After the Payback Amount has been paid, if there are any assets remaining, the Trustee shall distribute all of the remaining assets to the Trust Beneficiary.

The Trust shall have no Trust Remainder Share right to any funds in the Trust Beneficiary's IBA on early termination.

# ARTICLE NINE
# IBA ADMINISTRATIVE PROVISIONS

### SECTION 9.1        TRUST BENEFICIARY INDIVIDUAL BENEFICIARY ACCOUNT

A separate Individual Beneficiary Account ("IBA") shall be established, administered and maintained for the sole benefit of each Trust Beneficiary enrolled in the Trust. However, for purposes of investment and management of assets contained in each IBA, the Non Profit may have the Trustee pool all of the assets contained in the IBAs for investment and management purposes while separately administering and maintaining each Trust Beneficiary's IBA. The Trustee shall maintain records showing the increases and decreases in value of each Trust Beneficiary IBA.

### SECTION 9.2        FEES AND EXPENSES

The fees and expenses for enrolling a Trust Beneficiary and creating an IBA for the Trust Beneficiary ("Enrollment Fees"), annually administering and maintaining each Trust Beneficiary's IBA ("Annual Administration Fees"), and if applicable, fees and expenses necessary for contracting with MSA Vendor to administer MSA funds within the IBA shall be initially assessed in accordance with the written fee schedule for the Non Profit or Trustee in effect at the time of Complete Enrollment of the Trust Beneficiary.

All subsequent Annual Administration Fees shall be assessed in accordance with the written fee schedule in effect at the time the Annual Administration Fees are assessed. The Non Profit or Trustee may adjust the Enrollment Fees schedule and the Annual Administration Fees schedule from time to time.

If there is continuing court jurisdiction over an individual IBA, the compensation must be fixed and allowed by the court.

### SECTION 9.3        IBA VALUATION AND VALUATION DATE

The initial IBA valuation shall occur on the first day of the month in which the Trust Beneficiary's IBA is initially funded with assets or income. The initial IBA valuation shall be the amount of the assets or income initially funded by the Trust Beneficiary.

The date in which the Trust Beneficiary's IBA is initially funded shall be the initial valuation date. The annual valuation date shall be the annual anniversary of the initial valuation date. The annual IBA valuation shall be the value of the assets in the

Trust Beneficiary's IBA on the annual valuation date or the highest value of the assets that were in the Trust Beneficiary's IBA during the prior year, whichever is highest. The Non Profit or Trustee may make adjustments to the annual valuation amount, as either may deem necessary.

## SECTION 9.4        PERIODIC REPORT AND COURT ACCOUNT

For accounting purposes, the Trust and each Trust Beneficiary's IBA thereof shall be operated on a calendar year basis.

The Trustee will provide periodic reports, at least annually, to the Non Profit and to each Trust Beneficiary, or to his or her Beneficiary Advocate if designated to receive such periodic reports. The periodic reports shall show all receipts and disbursements to and from, the Trust Beneficiary's IBA during the previous reporting period. Account statements showing all receipts and disbursements sent directly from the financial institution shall constitute a periodic report.

If the Trust Beneficiary receiving the periodic reports, or his or her Beneficiary Advocate, as appropriate, desires to object to the periodic reports, the time to object ("Objection Time Period") is one hundred eighty (180) days from the date the Trust Beneficiary, or his or her Beneficiary Advocate, as appropriate, receives the periodic reports. The Trust Beneficiary's failure, or failure by his or her Beneficiary Advocate, as appropriate, to object within the Objection Time Period shall conclusively be deemed by the Non Profit and Trustee as an acceptance by the Trust Beneficiary and his or her Beneficiary Advocate, as appropriate, of all matters and transactions set forth in the periodic reports.

If the Trust Beneficiary's IBA is subject to ongoing court jurisdiction as that term is defined by California Rule of Court 7.903, the Trustee of any IBA shall file a periodic Account and Report for court approval. The first Account and Report shall be filed one year from the date the court first approves the IBA, and every two years thereafter or as otherwise required in the manner and frequency required by California Probate Code §§1060-1064 and 2620-2628 or at the time period required by court order.

## SECTION 9.5        INSPECTION OF IBA RECORDS

A Trust Beneficiary's IBA records shall be available at all reasonable times and upon reasonable prior written notice by the Trust Beneficiary delivered to the Non Profit or Trustee. Such notice shall request an inspection of the Trust Beneficiary's IBA records. The Non Profit or Trustee shall not be required to furnish Trust records to any individual, corporation or other entity unless ordered by a court with competent jurisdiction.

Neither the Non Profit nor the Trustee shall be required to furnish Trust Beneficiary IBA records to any individual, corporation or other entity who is not the Trust Beneficiary, his or her Beneficiary Advocate, or court retaining jurisdiction over the Trust Beneficiary or IBA. When the Trust Beneficiary, his or her Beneficiary Advocate, provides the appropriate prior written notice or court order, the Non Profit or the Trustee may furnish the Trust Beneficiary IBA records to any individual, corporation or other entity. The determination by the Non Profit and Trustee as to the sufficiency of any and all written authorizations or notices requesting inspection of a Trust Beneficiary's IBA records shall be final.

## SECTION 9.6        PREPARATION OF TAX RETURNS AND ELECTIONS

The Non Profit, Trustee, or MSA Vendor shall not be responsible for either the preparation or filing of any tax return on behalf of any Trust Beneficiary.

   A.    ASSISTANCE THAT MAY BE PROVIDED
   Either the Non Profit, Directed Trustee, or MSA Vendor may, but is not required to, provide assistance to a professional tax preparer to:

       1.   Prepare and file any type of tax return, tax form or tax schedule for a Trust Beneficiary;

       2.   Prepare fiduciary income tax returns including making any necessary or appropriate elections in connection therewith;

15

3. Pay a part or all of a Trust Beneficiary's income tax liability that results from income received by the Trust but properly reported on a Trust Beneficiary's income tax return. The assets used to pay any such income tax liability shall be obtained directly from a Trust Beneficiary's IBA and paid directly to the appropriate taxing authority and shall not be available to the Trust Beneficiary. A Trust Beneficiary shall not have any right or interest in any assets used from the Trust Beneficiary's IBA to pay such income tax liability.

### B.   EVENT OF TAX REFUND

If a Trust Beneficiary receives a tax refund, any amount refunded to such Trust Beneficiary shall be paid directly to the Trust to the extent such refund is attributable to any amount of income tax liability previously paid by the Trustee. The Non Profit or Trustee, in their sole and absolute discretion, may deposit such refund into the Trust Beneficiary's IBA.

### C.   COOPERATION BY OR ON BEHALF OF TRUST BENEFICIARY

A Trust Beneficiary, or his or her Beneficiary Advocate, shall execute all letters, powers of attorney or other documents required or requested by the taxing authority, Non Profit, or Trustee to facilitate payment of any refund to the Trust.

### D.   COMPENSATION FOR ASSISTANCE PROVIDED

The Non Profit, Trustee, or their agent, if appropriate, shall receive additional compensation and reimbursement of expenses for any assistance provided. The Non Profit or Trustee shall pay such compensation from the IBA for the Trust Beneficiary who was assisted.

## SECTION 9.7      TAXES AND GRANTOR TRUST STATUS

In establishing the Trust, it is the intent of the Non Profit and Trustee that each Trust Beneficiary's IBA be treated as a Grantor Trust for purposes of determining the Trust Beneficiary's tax liability. For the sole purpose of determining such tax liability and having each Trust Beneficiary's IBA treated as a Grantor trust, each Grantor shall have the power to reacquire trust corpus by substituting other property of an equivalent value pursuant to Section 675(4)(C) of the Internal Revenue Code. For purposes of this Section 9.7, "trust corpus" shall have the same meaning as assets in an IBA as used elsewhere throughout this Trust. Further, nothing in this Section shall in any way affect or modify the intent or purpose of the Trust or any of the provisions found in this Declaration of Trust.

## SECTION 9.8      TRUST NOT A SUPPORT OR MAINTENANCE TRUST

A Trust Beneficiary has no right to demand a distribution for his or her own support or maintenance. The Non Profit or Trustee owe no duty of support or maintenance to any Trust Beneficiary.

## SECTION 9.9      SPENDTHRIFT PROVISION

The Trust, and any Trust Beneficiary's IBA, shall not be subjected to creditors of any of the Trust Beneficiary. The Trust, or the assets held in any Trust Beneficiary's IBA for his or her benefit, shall not cause public and private assistance benefits of the Trust Beneficiary to be affected. The Trust, or any portion of the Trust, is not a resource to any Trust Beneficiary except in the sole and absolute discretion of the Trustee. No part of the principal of the Trust created herein should be used to supplant or replace a Trust Beneficiary's public assistance benefits of any county, state, federal or other governmental agency which has a legal responsibility to serve persons who are incapacitated, disabled or institutionalized, without careful consideration. This Trust is not a resource to the Beneficiary. It is not available to the Beneficiary except in the Trustee's discretion, and then only to the extent that other resources are not available to provide for the Beneficiary.

No part of this Trust or Trust Beneficiary IBAs shall be: (1) subject to any voluntary or involuntary anticipation or assignment by any Trust Beneficiary; (2) subject to voluntary or involuntary attachment, levy or control by any public or private creditor of any Trust Beneficiary; (3) subject to a taking by legal or equitable actions, proceedings, suits, or procedures by any

16

voluntary or involuntary creditor, including those who provided services or products to a Trust Beneficiary; and (4) subject to a voluntary or involuntary compelled distribution to any creditor of a Trust Beneficiary.

No interest in the principal or income of the Trust shall be anticipated, assigned or encumbered, or shall be subject to any creditor's claim or to legal process, of any Trust Beneficiary. Furthermore, because this trust is to be conserved and maintained for the Trust Beneficiary throughout the Beneficiary's life, no part of the corpus thereof, neither principal nor undistributed income, shall be construed as part of the Trust Beneficiary's "estate" or be subject to the claims of voluntary or involuntary creditors for the provision of care and services, including residential care, by any public entity, office, department or agency of any State, or the United States, or any governmental agency.

# ARTICLE TEN
# TRUST ADMINISTRATIVE POWERS

### SECTION 10.1    ADMINISTRATIVE POWERS

The Non Profit, Trustee, Investment Advisor, or MSA Vendor shall have full power within the scope of their individual duties and responsibilities, subject to any court retaining jurisdiction over a Trust Beneficiary's IBA, to do all acts and things necessary to accomplish the purposes of the Trust and each IBA.

The Non Profit, Trustee, and Investment Advisor shall perform their respective duties as provided in this Trust and any other agreements incorporated herein to receive, hold, manage and control all income and principal in the IBAs and to do such other acts or things concerning the Trust as may be appropriate to effectuate the intent and purpose of the Trust.

The power and authority of the Non Profit, Trustee, and Investment Advisor shall include, but is not limited to, all of the powers and authority conferred upon them under applicable federal and state laws and regulations. All such laws and regulations are hereby incorporated by reference into this Trust. The Non Profit, Trustee, or Investment Advisor shall have the authority, within their scope of responsibility, and subject to any court retaining jurisdiction over an IBA, to do the following:

a.  The Trustee may invest in non-income producing assets, may invest in housing owned by the Trust jointly with one or more persons;

b.  The Trustee may be directed to make disbursements or distributions of Trust assets or assets in a Trust Beneficiary's IBA in money or in kind, or partly in money and partly in kind. The judgment and determination of the Trustee of the fair market value on the date of disbursement or distribution, whether or not requiring pro rata disbursement or distribution of specific assets and, whether or not requiring pro rata allocation of the tax basis of such assets disbursed or distributed, shall be binding and conclusive on all interested persons;

c.  The Trustee may be directed to retain any property (whether or not income producing) that may be transferred to the Trust until such time as the Trustee is directed to dispose of such property. However, the Trustee shall not be required to disburse or distribute income producing property to a Trust Beneficiary if it will or may disqualify the Trust Beneficiary from receiving Government Assistance benefits;

d.  The Trustee, with the consent of the Non Profit or order from any court retaining continuing jurisdiction over a Trust Beneficiary's IBA, may: (a) borrow money, with the payment of no interest or such interest as the Trustee deems appropriate, for any purpose connected with the protection, preservation, improvement of the Trust, or the enhancement of benefits to the Trust Beneficiaries; or (b) encumber or obtain one or more mortgages on, or pledges of, any part or all of the property held by the Trust whenever the Trustee shall deem it appropriate;

e.  The Trustee, with the consent of the Non Profit, may pay, compromise or adjust any claims or lawsuits of the Trust against others or of others against the Trust as the Trustee shall deem appropriate;

17

f.   The Trustee may employ accountants, attorneys, consultants, government benefit specialists and other agents as may be necessary; and from appropriate Trust Beneficiary IBAs or Trust assets compensate them for their services and reimburse them for reasonable and necessary expenses rendered to or on behalf of the Trustee or a Trust Beneficiary, subject to applicable state and federal laws and regulations and, if applicable, any Court retaining jurisdiction of a Trust Beneficiary IBA.

g.   The Trustee may be directed to make adjustments between principal and income as provided under the laws of the state having jurisdiction over the Trust Beneficiary IBAs; and

h.   The Trustee may be directed to hold assets in nominee form, continue a business, carry out agreements, deal with other fiduciaries and deal with other business organizations in which the Trustee or Non Profit may have an interest.

## SECTION 10.2      OBTAINING GOVERNMENT ASSISTANCE BENEFITS FOR TRUST BENEFICIARY

The Non Profit nor the Trustee is required to obtain Government Assistance benefits for a Trust Beneficiary. The Non Profit or Trustee may seek and pay for the services of IBA Counsel, Beneficiary Advocates or other people or entities, including any federal, state and local agencies that are established to assist people with disabilities, to identify programs or resources that may provide legal, social, financial, developmental or other assistance to a Trust Beneficiary.

The Qualified Persons shall not in any event be liable to any Trust Beneficiary, or his or her Beneficiary Advocate, for failing to identify any programs or resources that may be available to such Trust Beneficiary because of his or her disabilities. It shall be the sole responsibility of the Trust Beneficiary, or his or her Beneficiary Advocate, to seek and apply for appropriate Government Assistance benefits or other public or private benefits.

However, the Non Profit or Trustee may retain IBA Counsel or other professional individuals or entities to take any and all steps necessary to obtain or maintain the eligibility of any Trust Beneficiary for any and all Government Assistance benefits if requested to do so by the Beneficiary Advocate or in its own sole and absolute discretion. The Non Profit or Trustee is authorized to compensate the IBA Counsel and other qualified individuals or entities from the Trust Beneficiary's IBA in order to obtain Government Assistance. Neither the Non Profit nor the Directed Trustee shall incur any liability for any unfavorable result regarding an attempt to obtain a Trust Beneficiary's Government Assistance benefits except in case of intentional misconduct, gross negligence done in bad faith or with reckless indifference to the interest of the Trust Beneficiary.

## SECTION 10.3      LIMITS OF TRUSTEE'S AUTHORITY

No authority described in this Trust or available to the Trustee pursuant to applicable law shall be construed to enable the Trustee to purchase, exchange or otherwise deal with or dispose of the assets contained in any Trust Beneficiary's IBA for less than adequate or full consideration in money or money's worth or to enable any person to borrow the assets contained in any Trust Beneficiary's IBA, directly or indirectly, without adequate interest or security.

## SECTION 10.4      BOND

A.   Bond is not required for the Non Profit or Trustee unless a Trust Beneficiary's IBA is under ongoing court jurisdiction as defined by California Rules of Court 7.903.

B.   If a Trust Beneficiary's IBA is under ongoing court jurisdiction as defined by California Rules of Court 7.903, a corporate fiduciary acting as Trustee shall still not be required to furnish any bond for the faithful performance of its duties. However, any named Trustee, successor Trustee, or person with authority to direct the Trustee to make disbursements who is not a corporate fiduciary shall have no authority to act during the Trust Beneficiary's lifetime without a court order fixing bond for that trust Beneficiary's IBA in the amount required by California Probate Code §§ 2320-2335, the payment of such bond shall be a proper expense of the Trust and paid from the appropriate Trust Beneficiary's IBA.

18

SECTION 10.5       COMPENSATION

A.  If a Trust Beneficiary's IBA is not under ongoing court jurisdiction as defined by California Rules of Court 7.903, the Non Profit and Trustee shall be compensated for services rendered and reimbursed reasonable expenses incurred on behalf of the Trust or a Trust Beneficiary ("Fees"). The Trustee shall have the authority to pay the Fees to the Non Profit, Trustee, or MSA Vendor directly from a Trust Beneficiary's IBA. The Non Profit or Trustee may modify fee schedules because of changes in the Trust's economic and general circumstances by providing thirty (30) days notice to the Trust Beneficiary(ies) affected.

In the event of any controversy or claim arising out of or relating to any fees, costs, or compensation owed to the Trustee or Non Profit for their services, the parties in interest shall first attempt to settle the dispute by mediation. If a settlement is not reached within sixty (60) days after service of a written demand for mediation, any unresolved controversy or claim shall be settled by arbitration. Judgment on the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction

B.  If a Trust Beneficiary's IBA is under ongoing court jurisdiction as defined by California Rules of Court 7.903, the Trustee or the attorney for the Trustee shall be allowed just and reasonable compensation as fixed and allowed by the court. Periodic payments shall be permitted as allowed under California Probate Code § 2643 and California Rule of Court 7.755.

SECTION 10.7       TRUST DEFENSE COSTS AND EXPENSES

The costs and expenses of defending the Trust from any claim, demand, legal or equitable action, suit or proceeding may, in the sole and absolute discretion of the Trustee or the Non Profit, be: (a) charged on a pro rata basis to all Trust Beneficiary IBAs; or (b) charged only against the IBAs of the affected Trust Beneficiaries. The Trustee or Non Profit, each in its sole and absolute discretion, shall determine whether defense costs affect a substantial number of Trust Beneficiary IBAs and warrant allocation among all Trust Beneficiary IBAs or whether the issue requiring defense of the Trust is limited to a single Trust Beneficiary's IBA or only to certain Trust Beneficiary IBAs, warranting allocation only to such Trust Beneficiary IBAs. Defense costs shall also include challenges to the validity of the Trust, or the construction of language used in this Declaration of Trust, Joinder Agreement, or the use of the Trust for a specific Trust Beneficiary, by any federal or state governmental or semi-governmental agency, or private third party or entity.

SECTION 10.8       RESIGNATION OR REMOVAL OF DIRECTED TRUSTEE

A Directed Trustee may resign or may be removed by the Non Profit upon thirty (30) days written notice, and, if applicable, subject to confirmation by any court-retaining jurisdiction over a Trust Beneficiary's IBA affected by the resignation or removal. If a Directed Trustee resigns or is removed, the Non Profit may select a Successor Directed Trustee and provide written notice to the Trust Beneficiaries, directly, or to their Beneficiary Advocate, as the Non Profit may decide, in its sole and absolute discretion.

Any Successor Directed Trustee shall act without any liability for the acts or omissions of any predecessor Directed Trustee. If required by court order, the appointment of a Directed Trustee or any successor trustee shall be done only with court approval.

SECTION 10.9       RESIGNATION OR REMOVAL OF MSA VENDOR

A MSA Vendor may resign or may be removed by the Non Profit upon thirty (30) days written notice, and, if applicable, subject to confirmation by any court-retaining jurisdiction over a Trust Beneficiary's IBA affected by the resignation or removal. If a MSA Vendor resigns or is removed, the Non Profit may select a Successor MSA Vendor and provide written notice to the Trust Beneficiaries, directly, or to their Beneficiary Advocate, as the Non Profit may decide, in its sole and absolute discretion.

Any Successor MSA Vendor shall act without any liability for the acts or omissions of any predecessor MSA Vendor. If required by court order, the appointment of a MSA Vendor or any successor MSA Vendor shall be done only with court approval.

## SECTION 10.10   TRUSTEE AND NON PROFIT EXONERATION

As evidenced by the execution of the Joinder Agreement, the Grantor, Trust Beneficiary, and his or her Beneficiary Advocate, if any, understand and acknowledge that none of the Qualified Persons shall be liable to any Grantor, Trust Beneficiary, or Beneficiary Advocate, and their heirs, successors and assigns or any other party for the Non Profits or Trustee's acts or omissions, except in cases of willful misconduct, bad faith, or gross negligence. This includes for any disbursement from the Trust Beneficiary's IBA that reduces or terminates the Government Assistance benefits received by the Trust Beneficiary or makes the Trust Beneficiary ineligible for Government Assistance benefits.

## SECTION 10.11   HIPAA RELEASE PROVISION

By signing the Joinder Agreement, a Trust Beneficiary, directly or indirectly through his or her Grantor, or Beneficiary Advocate, authorizes the release of all individually identifiable protected health information and medical records pertaining to the Trust Beneficiary to the Non Profit, the Trustee, Investment Advisor, or MSA Vendor, and their designated directors, officers, members, employees and agents. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. 1320d and 45 C.F.R. 160-164 and to all entities and individuals covered by HIPAA. This authority has no expiration date and will only expire if revoked in writing by one of the persons granting it, with written notice to the Qualified Persons, and delivered to an applicable health care provider.

## SECTION 10.12   DISBURSEMENT DISPUTES

If at any time a dispute arises between the Trust Beneficiary or his or her Beneficiary Advocate and a third party vendor about whether or not a disbursement request should be approved for a product or a service provided by the third party vendor to or for the benefit of a Trust Beneficiary, the Non Profit or Trustee, in their sole and absolute discretion, may act as an arbitrator to determine whether or not such disbursement should be made to avoid litigation expenses, fines or penalties. The decision by the Non Profit or Trustee shall be final as to the approval or denial of the disbursement request.

If at any time a dispute arises between the Trust Beneficiary or his or her Beneficiary Advocate and a taxing agency about whether or not a disbursement request should be approved and disbursed to the taxing authority for the benefit of a Trust Beneficiary, the Non Profit or Trustee, in their sole and absolute discretion, may act as an arbitrator to determine whether or not disbursement request should be approved or denied to avoid litigation expenses, fines or penalties.

Additionally, the Non Profit or Trustee may make a disbursement to a third party vendor or taxing authority even if the Trust Beneficiary or his or her Beneficiary Advocate did not request such disbursement. Neither the Non Profit nor the Trustee shall be liable for approving or denying a disbursement request or making such disbursement. The Non Profit or Trustee shall be held harmless from any claims of third parties and taxing authorities for debts of a Trust Beneficiary. The Non Profit or Trustee may pay the Non Profit or Trustee additional compensation for these services and reimbursement of expenses from a Trust Beneficiary's IBA.

## SECTION 10.13   PROVISIONS FOR BENEFICIARY'S IBA IF UNDER ONGOING COURT JURISDICTION OR COURT SUPERVISION

If a Beneficiary's IBA is under the ongoing court jurisdiction, then (in addition to the rules set forth elsewhere in this Trust) that Beneficiary's IBA must comply with the following additional requirements:

A. PURCHASE OR SALE OF PERSONAL RESIDENCE

If the Trustee agrees to the purchase or sale of a personal residence for a beneficiary, the purchase or sale must be authorized by a court pursuant to the rules applicable to a California conservatorship or guardianship. The sales must be returned to court for confirmation.

B. BORROW, LEND, GIVE SECURITY, LEASE, CONVEY, EXCHANGE

If the Beneficiary's IBA is $20,000 or greater, then the Trustee may not borrow money, lend money, give security, lease, convey, or exchange any property of the estate without prior authorization of a court of competent jurisdiction.

# ARTICLE ELEVEN
# TRUST INVESTMENT POWERS

## SECTION 11.1      TRUSTEE AND INVESTMENT ADVISOR AUTHORITY

The Trustee and Investment Advisor, as appropriate, shall have full discretionary power and authority, subject to any court retaining jurisdiction over a Trust Beneficiary's IBA as that term is defined in California Rule of Court 7.903, to do all acts and things necessary to accomplish the intent and purpose of the Trust. The Trustee and Investment Advisor shall perform their respective duties as provided in this Declaration of Trust and any other agreements incorporated herein, to receive, hold, administer, manage, invest, and control all the income and principal and to do such other acts or things concerning the Trust and Trust Beneficiary's IBA. The power and authority of the Trustee and Investment Advisor shall include, but is not limited to, all of the powers and authority conferred upon them under applicable federal and state laws and regulations. All such laws and regulations are hereby incorporated by reference into this Declaration of Trust.

## SECTION 11.2      TRUSTEE DELEGATION OF INVESTMENT AUTHORITY

For the Trustee to meet its responsibilities under applicable state uniform prudent investor laws and uniform principal and income laws, or any other applicable state laws, and amendments thereto, the Trustee may delegate some or all of its investment functions to an Investment Advisor.

## SECTION 11.3      LIMITED INVESTMENT POWERS IF IBA IS UNDER ONGOING COURT JURISDICTION

If a Trust Beneficiary's IBA is under ongoing court jurisdiction as that term is defined by Rule of Court 7.903, this Section limits the investment authority of Trustee or Non Profit as follows:

a. Except as authorized by court order, the Trustee shall have the power to invest trust funds, without authorization of the court, as set forth in California Probate Code § 2574. The Trustee, without authorization of the court, may invest funds in direct obligations of the United States, or of the State of California, maturing not later than 5 years from the date of making the investment.

b. United States Treasury bonds redeemable at par value on the death of the holder for payment of federal estate taxes, regardless of maturity date.

c. Securities listed on an established stock or bond exchange in the United States that are purchased on such exchange.

d. Eligible securities for the investment of surplus state moneys as provided for in Government Code § 16430.

e. An interest in a money market mutual fund registered under the Investment Company Act of 1940 (15 United States Code § 80a-1 through a-64 or an investment vehicle authorized for the collective investment of trust funds pursuant to § 9.18 of Part 9 of Title 12 of the Code of Federal Regulations, the portfolios of which are limited to United States government obligations maturing not later than 5 years from the date of investment and to repurchase agreements fully collateralized by United States government obligations.

21

    f.    Units of a common trust fund described in Financial Code §1564. The common trust fund shall have as its objective investment primarily in short-term fixed income obligations and shall be permitted to value investments at cost pursuant to regulations of the appropriate regulatory authority.

Nothing in this section limits the authority of the Trustee to seek court authorization for any other type of investment or to make other investments with court authorization.

# ARTICLE TWELVE
# TRUST AMENDMENTS

## SECTION 12.1       TRUST AMENDMENTS

The Non Profit may amend any provision of this Trust to:

    a.    Add or modify terms of the Trust so that the Trust will protect the financial resources governed by this agreement and to comply with the intent of this Trust that Trust assets shall not be considered income or resources for all needs-based and entitlement benefits from any agency, such as Regional Center services, Social Security Disability Insurance (SSDI), Medicare, Medicaid (In California "Medi-Cal"), Supplemental Security Income (SSI), In-Home Supportive Service (IHSS), Section 8, and any other special purpose benefits for which a Trust Beneficiary is eligible or would be eligible if the terms of this Trust were modified or supplemented;

    b.    Alter the administrative and investment powers of the Trustee to comply with any changes in the law;

    c.    Reflect tax or other legal changes that affect trust administration;

    d.    To comply with specific requirements of state and federal law which may be applicable to a Trust Beneficiary or his or her IBA;

    e.    To comply with Internal Revenue Service, or other federal or state government agency requests, requirements, laws or regulations as may be necessary from time to time; and

    f.    Correct ambiguities, including scrivener errors, which might otherwise require court construction or reformation.

    g.    Notwithstanding the foregoing, the Non Profit shall not amend this agreement in any manner that would limit or alter the rights of any Trust Beneficiary in any trust assets held by the trust before the amendment, unless the purpose of the amendment is to modify an existing provision in the trust that defeats the Trust's intent of preserving public benefits.

    h.    The Non Profit shall not amend the Trust in any way that will convert irrevocable asset contributions into revocable asset contributions. No amendment shall be made that will disqualify a Trust Beneficiary from being eligible for, or continuing to receive, his or her Government Assistance benefits.

## SECTION 12.2       METHOD OF MAKING AMENDMENTS

The Non-Profit may amend the Trust by making an amendment or attaching an addendum to the Declaration of Trust. The Declaration of Trust may be amended by the Non-Profit after giving thirty (30) days written notice to the Trust Beneficiaries, or their Beneficiary Advocates. Alternatively, the Non-Profit may attach an addendum to the Trust and subsequently give written notice of the addendum to the Trust Beneficiaries, or their Beneficiary Advocate. If an amendment or addendum only affects a limited number of Trust Beneficiaries, notice only has to be given to the affected Trust Beneficiaries or their Beneficiary Advocates.

### SECTION 12.3       LIMITED SCOPE OF AMENDMENTS

All contributions of assets to the Trust and to a Trust Beneficiary's IBA are irrevocable and subject to the terms of this Trust. The Non-Profit shall not amend the Trust in any way that will convert irrevocable asset contributions into revocable asset contributions. No amendment shall be made that will disqualify a Trust Beneficiary from being eligible for, or continuing to receive, his or her Government Assistance benefits.

### SECTION 12.4       COURT APPROVAL

Any amendment affecting a Trust Beneficiary IBA that is under continuing court jurisdiction must be submitted for approval by such court unless the court specifically orders otherwise.

### SECTION 12.5       NOT A GENERAL POWER OF APPOINTMENT

The Non Profit's authority shall not be a general power of appointment under Internal Revenue Code §§2041, 2514. Accordingly, the Non Profit's powers cannot be exercised in favor of the Non Profit, the estate of the Non Profit, or any creditor of the Non Profit.

### SECTION 12.6       TRUST BENEFICIARY HAS NO RIGHT OF AMENDMENT OR REVOCATION

Under no circumstances, does a Trust Beneficiary have a right to amend or revoke the Trust or the Trust Beneficiary's IBA. For purposes of this Trust, a Trust Beneficiary has no right to invoke Probate Code §§ 15400 et seq. provisions to amend, revoke, or restate the Trust or the Trust Beneficiary's IBA.

# ARTICLE THIRTEEN
# GENERAL PROVISIONS AND DEFINITIONS

### SECTION 13.1       APPLICABLE GOVERNING LAW

This Trust shall be exclusively governed by, and exclusively interpreted in accordance with, the laws of the State of California, and where appropriate, federal laws.

### SECTION 13.2       DONATIONS

Donations, gifts, and devises to the Non Profit shall be for the benefit of the Non Profit and shall be irrevocable. Any undistributed income of the Trust that is attributable to the Trust Remainder Share shall be accumulated and added to the principal of the Trust Operating Account.

### SECTION 13.3       RELATED ACTIVITIES

The Qualified Persons may engage in activities related to the Trust and receive compensation as long as there is no actual conflict of interest between these activities and their responsibilities to the Trust after full disclosure to the Trust Beneficiary, or his or her Beneficiary Advocate, of any apparent conflict of interest that may exist.

### SECTION 13.4       NOTICES

All notices and consents shall be in writing and sent by U.S. mail, overnight courier, or by personal delivery, with a receipt acknowledged in writing, to the respective individual or entity at the addresses listed in the Joinder Agreement unless corrected or changed address information is provided in the same manner to: (1) the Qualified Persons and Trust by the

Grantor, Trust Beneficiary, or his or her Beneficiary Advocate, or (2) the Grantor, Trust Beneficiary, or his or her Beneficiary Advocate, by the Non Profit or Trustee, as appropriate.

## SECTION 13.5        INDEMNIFICATION

The Grantor, Trust Beneficiary and his or her Beneficiary Advocate shall assume liability for and indemnify and hold harmless the Non Profit, the Trustee, the Investment Advisor, and their shareholders, directors, officers, employees, agents, subcontractors, successors, business partners, and assigns, individually or collectively, from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, and expenses, including reasonable legal expenses, of whatsoever kind or nature imposed on incurred by, or asserted against the Non Profit, the  Trustee, the Investment Advisor, and their shareholders, directors, officers, employees, agents, subcontractors, successors, business partners, and assigns, individually or collectively, arising from any of their acts or omissions in performing under this Agreement.  However, the Trustee, the Investment Advisor, including their shareholders, directors, officers, employees, agents, subcontractors, successors, business partners, and assigns, individually or collectively, shall not be indemnified with respect to matters as to which he, she or it shall be finally determined to have been guilty of willful misconduct, bad faith or gross negligence in their performance by a court of competent jurisdiction.

This right of indemnification shall not be exclusive of other rights to which the Non Profit, the Trustee, the Investment Advisor, and their shareholders, directors, officers, employees, agents, subcontractors, successors, business partners, and assigns, individually or collectively, may be entitled as a matter of law, equity, or otherwise.

## SECTION 13.6        EFFECTIVE DATE OF TRUST

The Trust is established by the Non Profit on the date of its first execution and said date shall be the effective date of the Trust.

## SECTION 13.7        GENDER, SINGULAR AND PLURAL FORMS

Words denoting the masculine or feminine gender shall be construed to mean or include the opposite gender and the singular form shall be construed to include the plural and the plural the singular, as the context requires or admits.

## SECTION 13.8        CAPTIONS AND HEADINGS

The captions and headings of Articles, Sections, subsections, paragraphs and subparagraphs used in this Declaration of Trust are not only for reference purposes only and shall have an effect on the interpretation of this Declaration of Trust or the Trust created herein.

## SECTION 13.9        SEVERABILITY

The invalidity or unenforceability of any provision of this Declaration of Trust shall not affect the validity or enforceability of any other provisions of this Declaration of Trust. If any provision of this Declaration of Trust or Trust created therefrom is determined to be invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Declaration of Trust shall be interpreted and construed as if any invalid or unenforceable provision had never been included in this Declaration of Trust, and such invalid and unenforceable provision shall not invalidate or make unenforceable the other provisions of this Declaration of Trust.

## SECTION 13.10        LEGAL CITATIONS

If a legal citation is incorrectly stated, the correct citation shall be deemed to have been stated. If a California citation is described, but the law of another state or federal law is applicable, the then applicable citation for such state or federal law shall be deemed to have been described. Citations include amendments that may be made from time to time.

## SECTION 13.11    OTHER REFERENCES

If a reference to a section in another document is incorrectly stated, the correct reference shall be deemed to have been described.

## SECTION 13.12    DEFINITIONS

For purposes of this Declaration of Trust, the following definitions shall apply:

**Allowable Disbursements** mean payments from a Trust Beneficiary's IBA permitted by the Trust or Trust Beneficiary's Joinder Agreement.

**Assets** mean and include both the principal and income of the Trust or a Trust Beneficiary's IBA, as applicable.

**Beneficiary Advocate** means the person and successor persons, as applicable, named in the Joinder Agreement who are authorized, in the same capacity as an attorney-in-fact agent of the Trust Beneficiary, to communicate with the Trustee or Non Profit about the Trust Beneficiary's investment interests, health care, social activities, care management, residential options and other issues relating to the life care of the Trust Beneficiary or otherwise act on behalf of or receive notice for the Trust Beneficiary.

**Centers for Medicare and Medicaid Services (CMS)** means the federal agency under the Department of Health and Human Services that is charged with the enforcement of the MSP. In furtherance of that responsibility, it creates all policy with regard to seeking reimbursement for services improperly paid by Medicare as well as prevents future improper payments from occurring.

**Complete(d) Enrollment** means that the Joinder Agreement is approved by the Non Profit and the Trustee; the assets to be contributed to the Trust are received by the Trustee; and the Trustee accepts the contributed assets.

**Contributed Amount or contributed assets** means the initial amount and any subsequent amounts of property, income, or money contributed or transferred to the Trust and deposited into a Trust Beneficiary's IBA.

**Directed Trustee** means a Directed Trustee, Directed Trustees, a Co-Directed Trustee, Co-Directed Trustees, a Successor Directed Trustee or Co-Successor Directed Trustees as may be applicable and appointed by the Non Profit. In applicable circumstances, the Directed Trustee may be referred to as Trustee in this Trust agreement.

**Disabled Person or Person with Disability** means a person having a physical or mental impairment that complies with the requirements of 42 U.S.C. § 1382c(a)(3).

**Government Assistance** means any and all services, medical care, benefits and financial assistance that may be provided by any county, state or federal agency, now or in the future, to or on behalf of a Trust Beneficiary that arises from eligibility or receipt of Supplemental Security Income (SSI) benefits, Medicaid or other similar governmental benefits for persons with mental health or other disabilities.

**Grantor** means a parent, grandparent, spouse or legal guardian of a Trust Beneficiary, a Trust Beneficiary himself or herself, or any person or entity acting pursuant to an order by a court, who contributes assets or income to a Trust Beneficiary's Individual Benefit Account in the Trust, and also includes, when applicable, any person or entity that contributed his, her or its own assets to the Trust for the sole benefit of a Trust Beneficiary, whether by gift, will, contract, or agreement.

**Individual Benefit Account (IBA)** means a separate account maintained for each Trust Beneficiary, but for purposes of investment and management of funds, the Trustee may pool these accounts. The Trust maintains solely for the benefit of an individual Trust Beneficiary and shall be equal to the initial value of the Contributed Amount on the Trust Beneficiary's behalf less disbursements made on behalf of the Trust Beneficiary, increased by earnings and appreciation, less taxes, expenses, depreciation, administrative costs, administrative expenses, and fees.

**Individual Benefit Account Counsel (IBA Counsel)** an attorney retained to protect the benefits of a Trust Beneficiary's IBA. The attorney may be paid from the Trust Beneficiary's IBA or pro rata among all Trust Beneficiaries' IBAs based on the sole and absolute discretion of the Non Profit or Trustee.

**Investment Policy** is the policy described by the Trustee for investing the assets in the IBA in consultation with and upon the advice of the Investment Advisor.

**Joinder Agreement** is a separate written agreement used by an individual to enroll and participate in the Trust as a Trust Beneficiary of the Trust. The written agreement is between the Non Profit, Trustee and the Grantor and permits the Grantor to establish an IBA for the sole benefit of a Trust Beneficiary.

**Legal Representative** means a legal guardian, natural guardian, conservator, agent (or attorney-in-fact) acting under a durable power of attorney, trustee, representative payee, custodian under the Uniform Gift or Transfers to Minors Act of any state, or other person caring for a Trust Beneficiary who can act on behalf of a Trust Beneficiary for the purpose of making binding agreements with the Trust.

**Master Pooled Self Settled Special Needs Trust** refers to the Trust described in this Declaration of Trust and created herein.

**Medicaid** refers to a state's Medicaid programs and equivalents. In California, the program is called Medi-Cal and any reference to Medicaid includes California's Medi-Cal program.

**Medicare** refers to the federal entitlement program providing medical care to the elderly and disabled.

**Medicare Secondary Payer Act (MSP)** is a federal statute that prohibits Medicare from providing benefits in situation where a primary payer, generally meaning some form of insurance, was identified as being responsible for providing such care.

**Medicare Set-Aside Arrangement (MSA)** means funds within an IBA designated in a settlement as being intend for the payment of future medical expenses related to the settlement that would otherwise be entitled to coverage through the Medicare program.

**MSA Vendor** means entity that specializes in the administration of MSAs intended to protect parties to an settlement from recovery actions by CMS under the Medicare Secondary Payer Act after a settlement is finalized.

**Person with a Disability** see **Disabled Person**

**Qualified Persons** refers to the Non Profit, Trustee, Investment Advisor, or MSA Vendor, and their successors, assigns, agents, subcontractors, directors, officers, employees and members.

**Reimbursement Claims** refers to the applicable claims or liens of any governmental agency that is entitled to reimbursement for benefits paid to or for the benefit of a Trust Beneficiary because of being a participant of the Trust.

**Remainder Amount** means all of the remaining funds, if any, in an IBA of a deceased Trust Beneficiary or an IBA that has been terminated.

**Required Documents** refers to any documents required to enroll and participate in the Trust, including the Joinder Agreement and any other documents required by the Non Profit or the Trustee.

**Successor Directed Trustee** means a Directed Trustee that has been appointed to succeed the functions and obligations of the original, initial, or previous Directed Trustee. The term applies to each Successor Directed Trustee, but such Successor Directed Trustee is referred to as a Trustee in this Declaration of Trust and the Trust created herein.

**Supplemental Services** are services that provide for the "special needs," "supplemental needs" and "supplemental care," of a Trust Beneficiary, and include non-support disbursements, and non-support needs and non-support care that are not provided by Government Assistance benefits.

**Trust Application** means the application completed and signed by a Grantor when applying to enroll an individual as a Trust Beneficiary of the Trust.

**Trust Beneficiary** means a Disabled Person, as defined in § 1614(a)(3) of the Social Security Act (42 U.S.C. § 1382c(a)(3)), who qualifies under 42 U.S.C. § 1396p, and who is identified by a Grantor as the sole recipient of services and benefits from the assets in IBA created within this Trust for such person with a disability.

**Trust Operating Account** means the account into which the Remainder Amount is paid when a Trust Beneficiary's IBA is terminated. This account is owned by the Non Profit and funds can be transferred to the Non Profit to be used by the Non Profit to carry out its not for profit and tax exempt purposes.

**Trust Remainder Share** means the amount of a Trust Beneficiary's IBA Remainder Amount retained by the Trust in the Trust Operating Account.

**Remainder of this page left blank intentionally**

27

# Execution on 2/16/16

**IN WITNESS WHEREOF,** the undersigned hereby subscribes and executes this Declaration of Trust on the date and year first written above.

CPT (Non Profit and Trustee)

By: _____

Title: _Executive Director_____

Witness 1

Sign _____

Print _Michelle Minocci_____

Witness 2

Sign _Yuliana Burks_____

Print _Yuliana Burkhardt_____

---

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

---

State of California _____)

County of San Diego _____)

On 2/16/16 before me Smita K Padilla Notary Public, personally appeared William E. Lindahl who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand:

_Smita K. Padilla_                                    [Officer's seal]

SMITA K. PADILLA
COMM. #2056544
Notary Public - California
San Diego County
My Comm. Expires Jan. 31, 2018

28

# EXHIBIT J



## CALIFORNIA CPT TRUST SET UP DOCUMENTS FOR

_____

1

# LEGAL AUTHORITY FOR SPECIAL NEEDS TRUSTS

Means tested benefits are benefits available to people with minimal income and minimal assets. If a person's income or assets exceed the specified limit, he or she will not be eligible for the benefit. Two primary examples of means tested benefits are Supplemental Security Income (SSI) and Medicaid (Medi-Cal). Adults are eligible for SSI if they have a disability that prevents them from working and earning a self-sufficient wage, and they do not have more than the allotted amount of assets. Minor children (under age 18) may be eligible for SSI if they have severe functional limitations from a physical or mental condition.

The federal **Omnibus Budget Reconciliation Act of 1993 (OBRA '93)** is a federal law that affects how people with disabilities can maintain a trust and still qualify for Medicaid. The **Foster Care Independence Act of 1999** is a federal law that affects how disabled individuals can have a trust and still qualify for SSI as seen in 42 U.S.C. §1396p(d)(4)(C). Both laws allow many people with disabilities to place their own money into a trust and become, or remain, eligible for Medicaid (Medi-Cal) and SSI. This is accomplished through a Pooled Special Needs Trust.

*When properly designed, a Special Needs Trust enables disabled individuals to keep or remain eligible for Medicaid (Medi-Cal) or SSI benefits, although the level of benefits may be reduced in some circumstances.*

# F.T.C. PRIVACY NOTICE

In accordance with the requirement of the Federal Trade Commission, a "Privacy of Consumer Financial Information" notice is required to be provided to consumers by "financial institutions". A "financial institution" is defined as a business, which is engaging in "financial activities." Pursuant to this rule, any firm or institution that handles estate planning or tax advice is subject to this requirement. There can be substantial penalties if this notice is not provided to clients.

Our policies and practices with respect to protecting the confidentiality of non-public personal information that CPT, collects is: the information you provide us is confidential. We will not disclose any of this information without your consent. All of our employees are aware of this confidentiality and the need to protect your information. We do not provide your information to any other organization or person outside our office without your express permission. However, the nature of your case may require that we disclose certain information to others, for example, when tax returns are filed with State or Federal agencies, other information may be contained in documents filed with a court or at the request of a government agency providing you with benefits.

This procedure does not change how we have always handled confidential information; it is merely complying with the requirements of the Federal Trade Commission.

2

# DISCLOSURE AND ACKNOWLEGEMENT TO JOIN
# CALIFORNIA CHARITIES POOLED TRUST (CPT)

I _____ have been informed of and understand the following:

1. A person who is a trust beneficiary of a Pooled Trust must be disabled as defined by the SSA.
2. The Pooled Trust protects financial eligibility for SSI and Medicaid (Medi-Cal).
3. The beneficiary will have an Individual Beneficiary Account (IBA) as part of joining the Pooled Trust equal to the amount of funding made by the beneficiary.
4. If Pooled Trust is funded for SSI recipient age 65 or older, there may be a three-year loss of SSI, then SSI is reinstated.
5. If trust is funded when a Medi-Cal only recipient is age 65 or older, there will be no loss of Medi-Cal on the intial funding of the trust, but there may be a penalty for later funding into same account.
6. The beneficiary, their Representative Payee, or other legal representative is responsible for notifying government agencies of a change in beneficiary's income or resources.
7. The beneficiary, their Representative Payee, or other legal representative must notify CPT as soon as possible if the beneficiary receives a suspension or change in eligibility for any public benefits.
8. Pooled Trust income is taxable to the trust beneficiary and appropriate tax forms will be provided by CPT to the beneficiary, their Representative Payee, or other legal representative as required.
9. Pooled Trust disbursements must be for "sole benefit" of beneficiary.
10. Pooled Trust disbursements require CPT to exercise discretion so the trustee may require invoice, receipts and other evidence to substantiate disbursement.
11. CPT will withdraw from the IBA, upon intial funding any trust setup fee and the administration fees.
12. Upon death or early termination of beneficiary's IBA, the State Medicaid agency has a right of recovery for the total medical assistance paid on behalf of beneficiary that takes priority over any other person's right to remaining funds.
13. Upon death or early termination of beneficiary's IBA, CPT has a right to retain an amount or percentage of funds remaining in the IBA of not more than _____% if money remains after State Medicaid recovery and no more than 50% if State Medicaid recovery is equal to or greater than remaining IBA funds.
14. SSI has no right of recovery from IBA upon death or early termination by beneficiary.

By signing below, I acknowledge and adopt all statements made in all CPT Trust Set Up documents.

Date:_____          Witness

Beneficiary Signature:                 Sign:

Printed Name: _____   Printed Name: _____

3

# BENEFICIARY ADVOCATE ACCEPTANCE OF DUTIES
### *Required only if Trust Beneficiary has an Advocate*

The undersigned, _____, ("Beneficiary Advocate") has been selected to serve as the Beneficiary Advocate (as described in the Charities Pooled Trust Master Trust Agreement) by the _____ ("Trust Beneficiary"). The Beneficiary Advocate hereby accepts this appointment, acknowledges the duties associated with this position, and agrees to faithfully perform all of the duties as described in the Master Trust Agreement and as follows:

1.    The Trust Beneficiary hereby appoints Beneficiary Advocate to act as an agent of the Trust Beneficiary for purposes of managing Trust Beneficiary's Individual Beneficiary Account (IBA) and for all related transactions concerning the Pooled Trust.

2.    The Beneficiary Advocate of the Trust Beneficiary shall be authorized to:

    a.  Timely respond to all requests made by the trustee of the Master Trust Agreement, ("Trustee");

    b.  Act as requested by the Trustee for the Trust Beneficiary's benefit; and

    c.  Receive notices and communication from the Trustee on behalf of the Trust Beneficiary.

3.    The Trustee may, but is not required to, rely on the guidance, findings and assessments provided, requests made, or actions, by the Beneficiary Advocate. If the Beneficiary Advocate provides guidance, findings and assessments, makes requests, or acts, which in the sole and absolute discretion of the Trustee pertains to a disbursement request that may cause a reduction in the Trust Beneficiary's public benefits, the Trustee may retain an attorney to provide a legal opinion regarding the disbursement's effect upon the Trust Beneficiary's continued eligibility for public benefits. The Trustee may request a court order authorizing such disbursement from a court retaining jurisdiction over the Trust Beneficiary's trust account. Notwithstanding such a disbursement request, or the legal opinion of counsel, the Trustee has sole and absolute discretion to approve or deny such disbursement.

4.    The Trustee has sole and absolute discretion to remove and replace a Beneficiary Advocate if, in the opinion of the Trustee, the Beneficiary Advocate is not acting in the best interest of the Trust Beneficiary. If the Trust Beneficiary's trust account is under the continuing jurisdiction of an applicable court, or if the Beneficiary Advocate is a court appointed guardian or conservator of the Trust Beneficiary, the Trustee may obtain a court order to remove and replace the Beneficiary Advocate.

The undersigned, as Beneficiary Advocate, agrees that by signing this document, the Beneficiary Advocate shall abide by the terms herein and shall be responsible for all duties as described in the Master Trust Agreement, on behalf of and for the sole benefit of the Trust Beneficiary.


Date:_____                      Witness

Advocate Signature:  _____        Sign: _____

Printed Name: _____    Printed Name: _____

4

# CALIFORNIA CHARITIES POOLED TRUST
# JOINDER AGREEMENT

This is an irrevocable contract between the parties _____ ("Beneficiary") and California Charities Pooled Trust (CPT). The purpose of this contract is to establish an Individual Benefit Account (IBA) with CPT for the Beneficiary's sole benefit.

By signing this contract, Beneficiary acknowledges and agrees to the following terms and conditions:

1. This contract is irrevocable.
2. Beneficiary has received and reviewed the *California Charities Pooled Trust* Master Trust Agreement.
3. Beneficiary agrees to the terms set forth in the *California Charities Pooled Trust* Master Trust Agreement.
4. Beneficiary is funding an IBA with the property listed in Schedule A below.
5. Beneficiary acknowledges that all Trustee fees will be charged according to Schedule B below.
   a. Beneficiary understands that fees will be taken directly from the IBA without prior notice.
   b. Beneficiary understands that Schedule B is subject to change from time to time without notice.
6. Unless Beneficiary has designated otherwise in Schedule C, upon Beneficiary's death, any assets that remain in the IBA shall be distributed to the Beneficiary's estate.
7. Beneficiary acknowledges that he has had an opportunity to review all documents referenced with an attorney.
8. This contract is not enforceable until signed by both the Beneficiary and CPT.

**Benefits** (Check all that apply) ☐ MediCal  ☐ SSI  ☐ IHSS  ☐ SSDI  ☐ Medicare  ☐ Section 8/HUD

Date:_____                     Witness

Trust Beneficiary: _____         Sign: _____

Printed Name: _____         Printed Name: _____

CPT Agrees to Authorize Joinder to the California Charities Pooled Trust

By:_____
    William E. Lindahl, MBA, CLPF
    CPT Executive Director

## Schedule A: Funding Amount

Approximate funding amount: $ _____ and $ _____ per month from an annuity irrevocably assigned to the trust. Source of funds (e.g. inheritance or litigation recovery): _____.

## Schedule B: Trustee Fees

One time Trust Setup Fee of $ _____ . Annual Administration Fee of $_____ or _____ % whichever is greater with a $ _____ minimum per year.

5

> *A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of <u>California                          </u>)

County of _____)

On _____ before me,_____ _____ <u>Notary Public</u>, personally appeared , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand:


_____                    [Officer's seal]

6

## SCHEDULE C: INTAKE & REMAINDER BENEFICIARY DESIGNATION

I acknowledge that I am entitled to designate Residual Beneficiaries.

  (a) If the Beneficiary is under the age 18, then on death the remaining assets shall be distributed to the Beneficiary's estate, unless ordered otherwise by a court of competent jurisdiction.
  (b) A Beneficiary that has attained age 18 may designate a remainder beneficiary(ies) on the form below. If the Beneficiary fails to name a remainder beneficiary(ies) then the Trustee shall distribute the remaining assets to the Beneficiary's estate. The Beneficiary may alter remainder beneficiary(ies) later.

### TRUST BENEFICIARY

| | | |
|---|---|---|
| First: | Last: | |
| Date of birth: | SSN: | Phone: |
| Street address: | | |
| City: | State: | ZIP code: |
| Email: | Minor:   Yes   No | |
| Disability: | | |

Individual authorized to request funds from trust:   **Self**   **Beneficiary Advocate**

### BENEFICIARY ADVOCATE

| | | |
|---|---|---|
| Full name: | Email: | |
| Type:   POA   Guardian   Parent   Grandparent   Friend   Family Member   Attorney | | |
| Street address: | | Phone: |
| City: | State: | ZIP code: |

### REMAINDER BENEFICIARIES
(add additional pages if needed)

| | | |
|---|---|---|
| Full Name: | Phone: | Percent: |
| Relation: | Address: | SSN: |
| Full Name: | Phone: | Percent: |
| Relation: | Address: | SSN: |
| Full Name: | Phone: | Percent: |
| Relation: | Address: | SSN: |

7

1   Dale K. Galipo, Esq. (SBN 144074)
    Melanie T. Partow, Esq. (SBN 254843)
2   **THE LAW OFFICES OF DALE K. GALIPO**
    21800 Burbank Blvd., Suite 310
3   Woodland Hills, CA 91367
    Tel: (818) 347-333
4   Fax: (818) 347-4118
    dalekgalipo@yahoo.com
5   mpartow@galipolaw.com
    *Attorneys for Plaintiffs*
6

7   LUIS A. CARRILLO Esq. Bar No. 70398
    Law Offices of Luis A. Carrillo
8   A Professional Corporation
    1499 Huntington Drive Suite 402
9   South Pasadena, CA 91030
    P: (626) 799-9375
10  F: (626) 799-9380
    email: lac4justice@gmail.com
11

12                **UNITED STATES DISTRICT COURT**
13                **CENTRAL DISTRICT OF CALIFORNIA**

14  ROSA NAVAS, an individual;          ) **Case No.: 15-cv-9515 SVW (JCx)**
15  ALFREDO NAVAS, an individual;       )
    A.N., a minor, individually and as  ) [*Honorable Stephen V. Wilson*]
16  successor in interest to Sergio Navas and )
    by and through his mother and Next  ) **[PROPOSED] ORDER**
17  Friend Christel Emmet; J.N., a minor, ) **APPROVING COMPROMISE OF**
    individually and as successor in interest ) **MINORS' CLAIMS**
18  to Sergio Navas and by and through his )
    mother and Next Friend Christel Emmet; ) <u>Filed concurrently with:</u>
19  A.N., a minor, individually and as  ) NOTICE OF UNOPPOSED EX
20  successor in interest to Sergio Navas and ) PARTE PETITION AND
    by and through her mother and Next  ) UNOPPOSED EX PARTE PETITION
21  Friend Christel Emmet,              ) FOR ORDER APPROVING THE
                                        ) COMPROMISE OF CLAIMS BY
22              Plaintiffs,             ) MINOR PLAINTIFFS A.N., J.N.,
                                        ) A.N., A.B., AND R.B.;
23                                      ) MEMORANDUM OF POINTS AND
24          vs.                         ) AUTHORITIES; DECLARATION
                                        ) OF DALE K. GALIPO IN SUPPORT
25  CITY OF LOS ANGELES, a             ) AND EXHIBITS;
    municipality; BRIAN VAN GORDON,    )
26  an individual; and  DOES 1 through 10, )
    inclusive,                         )
27                                      )
                Defendants.
28

# [PROPOSED] ORDER

Having considered the unopposed ex parte petition for approval of minors' compromise, and good cause appearing therefore, the Court GRANTS the petition and makes the following orders:

1.     The proposed settlement of the plaintiffs' claims in the total amount of $2,500,000 is approved, including the structured settlement annuity set forth in Exhibits A, B, C, D, and E to the petition.

2.     Attorneys' fees and reimbursable costs in the amount of $827,112.5 for the Law Offices of Dale K. Galipo and the Law Offices of Luis A. Carrillo are approved as reasonable for the minors' portion of the settlement and shall be paid from the total settlement amount.

3.     The parties shall execute a settlement agreement and release in accordance with this Order.

4.     A special needs trust shall be established for minor plaintiff A.N.(2).  The amounts held as net proceeds of this legal action for minor plaintiff A.N.(2) shall be placed with Trustee CPT in a Pooled Special Needs Trust account.  The funds, being in a Special Needs Trust, are not to be considered an "available resource" in regards to A.N.'s eligibility for public benefits.

CPT is hereby authorized in limited circumstances to make the following reformations to the Trust:

a. To conform the provisions of the Trust to any rules or regulations that are issued by any governing body or agency relating to the intent and purposes of the Trust as well as to meet the requirements of any new laws, rules or regulations applicable to the trust;

b. To continue to meet the purposes of the Trust;

c. To clarify the construction and administration of the Trust;

d.  To comply with the specific requirements of state and/or federal law which may be applicable to the Beneficiary;

e.  To comply with Internal Revenue Service, other government agency requests and/or the requirements of state laws as may be necessary from time to time; or

f.  To qualify as a support organization under Section 509(a)(3) of the Internal Revenue Code.

CPT is hereby permitted to invest the individual trust account for A.N.(2) in mutual funds and in government bonds maturing in greater than five years.

The requirement of CPT to provide the Court with Accounts and Reports pursuant to Probate Code Section 1060 et seq, and 2620 et seq. is waived.

CPT is hereby authorized a $3,000 set up fee, and ongoing fees at the rate of 1% with a $2,000 annual minimum. CPT is hereby authorized a $3,000 set up fee, and ongoing fees at the rate of 1% with a $2,000 annual minimum.

CPT is hereby authorized to purchase/spend on parental support items (vehicle, portion of rent/housing expenses, etc), because the parent(s) do not have sufficient means to supply them without using trust assets.

5.      Within 30 days of entry of this Order, Defendants shall prepare and deliver drafts in the following amounts, payable as follows:

<u>Minor plaintiff A.N.</u>

**A draft for $41,061.50** shall be made payable to Law Offices of Dale K. Galipo Attorney Client Trust Account and delivered to 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367. These funds shall be placed in a blocked account for the benefit of minor plaintiff A.N.

**A draft for $190,516.00** shall be made payable to Pacific Life & Annuity Services, Inc. (hereinafter referred to as "Assignee") and delivered to Ringler Associates, ATTN: Tory Owens, 151 Kalmus Drive, Ste C140, Costa Mesa, CA 92626. Assignee will provide the periodic payments to be made by Pacific Life

Insurance Company (hereinafter referred to as "Annuity Carrier"), rated A+ Class XV by A.M. Best Company as set forth in Exhibit A to the petition.

Minor Plaintiff J.N.

**A draft for $231,577.50** for minor plaintiff J.N. shall be made payable to Pacific Life & Annuity Services, Inc. (hereinafter referred to as "Assignee") and delivered to Ringler Associates, ATTN:  Tory Owens, 151 Kalmus Drive, Ste C140, Costa Mesa, CA 92626.  Assignee will provide the periodic payments to be made by Pacific Life Insurance Company (hereinafter referred to as "Annuity Carrier"), rated A+ Class XV by A.M. Best Company as set forth in Exhibit B to the petition.

Minor Plaintiff A.N.(2)

**A draft for $31,577.50** shall be made payable to CPT AS TRUSTEE FOR THE BENEFIT OF "ANNABELLE NAVAS" and shall be delivered to Wells Fargo Advisors, 11300 State Road 54, Trinity, FL 34655 for the creation of a special needs trust.

**A draft for $200,000** for minor plaintiff A.N. shall be made payable to Pacific Life & Annuity Services, Inc. (hereinafter referred to as "Assignee") and delivered to Ringler Associates, ATTN:  Tory Owens, 151 Kalmus Drive, Ste C140, Costa Mesa, CA 92626.  Assignee will provide the periodic payments to be made by Pacific Life Insurance Company (hereinafter referred to as "Annuity Carrier"), rated A+ Class XV by A.M. Best Company as set forth in Exhibit C to the petition.

Minor Plaintiff A.B.

**A draft for $239,077.50** shall be made payable to Pacific Life & Annuity Services, Inc. (hereinafter referred to as "Assignee") and delivered to Atlas Settlement Group, Attention Melissa Baldwin, 24265 Juanita Drive, Laguna Niguel, California 92677.  Assignee will provide the periodic payments to be made by Pacific Life Insurance Company (hereinafter referred to as "Annuity Carrier"), rated A+ Class XV by A.M. Best Company as set forth in Exhibit D.

Minor Plaintiff R.B.

**A draft for $239,077.50** for minor plaintiff R.B. shall be made payable to Pacific Life & Annuity Services, Inc. (hereinafter referred to as "Assignee") and delivered to Atlas Settlement Group, Attention Melissa Baldwin, 24265 Juanita Drive, Laguna Niguel, California 92677. Assignee will provide the periodic payments to be made by Pacific Life Insurance Company (hereinafter referred to as "Annuity Carrier"), rated A+ Class XV by A.M. Best Company as set forth in Exhibit E.

<u>Minor Plaintiffs' Attorneys' Fees and Costs and Adult Plaintiffs' Gross Settlement Proceeds</u>

**A draft for $1,327,112.5** to be made payable to the Law Offices of Dale K. Galipo Attorney Client Trust Account shall be delivered to the Law Offices of Dale K. Galipo (to account for $827,112.5 for the minor plaintiffs' portion of attorney fees and reimbursable costs and advances and $500,000 in gross settlement proceeds for the parents of the decedent, plaintiffs Rosa Navas and Alfredo Navas).

6.      Defendant City of Los Angeles (the "City") will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Assignee of the Defendant's liability to make the periodic payments described herein. Such assignment, if made, shall be accepted by Petitioners and Plaintiffs without right of rejection and shall completely release and discharge the City from such obligations hereunder as are assigned to Assignee. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check, in the amount specified to the address of record.

7.      Upon the qualified assignment being made by the City to Assignee, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the City by this agreement shall instead be binding upon Assignee, and the City shall be released from all obligations to make said periodic payments, and Assignee shall at all times remain directly and solely responsible for and shall receive credit

for all such payments made to Petitioners and Plaintiffs. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the City to make the periodic payments.

8.     All sums and periodic payments set forth above are described as damages on account of personal injuries or sickness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

9.     The above periodic payments from Assignee cannot be accelerated, deferred, increased or decreased. Furthermore, Petitioners and Plaintiffs shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

10.     The City and/or Assignee shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset," within the meaning of Section 130(d) of the Code, in the form of an annuity policy from Pacific Life Insurance Company ("Annuity Carrier"). Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership.

11.     In the cases of minor Plaintiffs A.B. and R.B., Assignee will have the Annuity Carrier mail payments directly to Petitioner Blanca Chevez, as set forth above (until A.B. and R.B. reach the age of majority, and then directly to A.B. and R.B.). Blanca Chevez shall be responsible for maintaining the currency of the proper mailing addresses to Assignee.

**IT IS SO ORDERED.**

Dated: _____     _____
                                Honorable Stephen V. Wilson
                                United States District Court
                                Central District of California

# EXHIBIT "2"

# EXHIBIT "2"

Electronically FILED by Superior Court of California, County of Los Angeles on 06/19/2020 11:11 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
20STCP01954

LAW OFFICES OF JOHN Z. SHAFAI
John Z. Shafai [State Bar No. 170518]
9461 Charleville Boulevard, #334
Beverly Hills, California 90212
Telephone: (310) 788-2889
Facsimile: (310) 788-2885

Attorneys for Petitioner,
OPEN CAPITAL, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| In Re: | CASE NO.   20STCP01954 |
| OPEN CAPITAL, LLC | Unlimited Jurisdiction. |
| | PETITION FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS |

Pursuant to California Insurance Code, section 10139.5, Petitioner, OPEN CAPITAL, LLC ("Petitioner"), hereby respectfully alleges as follows:

**The Payee**

1.     The payee of the structured settlement payments, A. NAVAS (the "Payee"), resides in the County of Los Angeles, in the State of California. Venue is proper in this Court pursuant to Insurance Code, section 10139.5(f)(1), because the Payee resides in the County of Los Angeles.

2.     The Payee is the recipient of certain structured settlement payments under which Pacific Life and Annuity Services, Inc. (the "Payment Obligor") is the obligor and pursuant to which the Payment Obligor purchased an annuity contract issued by Pacific Life Insurance

-1-

Company (the "Payment Issuer") to fund the aforesaid obligation.

3.     The Payee does not have a copy of the underlying structured settlement agreement and an affidavit attesting to the same is attached hereto as Exhibit "1" and is incorporated herein by this reference.

4.     Subject to the Court's approval of this Petition, Payee has entered into a transfer agreement with Petitioner's assignor (the "Transfer Agreement") to transfer those certain structured settlement payments described in Paragraph 1 of the Transfer Agreement (the "Transferred Payments"). A true and correct copy of the Transfer Agreement is attached hereto as Exhibit "2" and is incorporated herein by this reference.

### The Disclosure Statement Complies with Insurance Code, section 10136(b)

5.     Pursuant to Insurance Code, section 10136(b), ten or more days prior to the Payee signed the Transfer Agreement, Petitioner provided to Payee a separate written disclosure statement (the "Disclosure Statement"). A true and correct copy of the Disclosure Statement is attached hereto as Exhibit "3" and is incorporated herein by this reference.

6.     The Disclosure Statement discloses all of the information and other disclosures required by Insurance Code, section 10136.

### The Transfer Agreement Complies with Insurance Code, section 10136(b)

7.     Pursuant to the Insurance Code, section 10136(c), the Transfer Agreement contains the following information and further disclosures:

A.     A statement that the agreement is not effective until the date on which a court enters a final order approving the transfer agreement and that payment to the payee pursuant to the transfer agreement will be delayed up to 30 days or more after the date the payee signed the transfer agreement in order for the court to review and approve the transfer agreement. See, Insurance Code, section 10136(c)(1); Transfer Agreement, ¶ 3(a).

B.     The amounts and due dates of the structured settlement payments to be transferred. See, Insurance Code, section 10136(c)(2); Transfer Agreement, ¶ 1.

C.     The aggregate amount of the structured settlement payments to be transferred. See, Insurance Code, section 10136(c)(3); Transfer Agreement, ¶ 3(b).

D.     The aggregate amount of all expenses, if any, to be deducted from the purchase price to be paid to the payee in exchange for the payments to be transferred, and an itemization of all expenses by type and amount, if any. See, Insurance Code, section

-2-

10136(c)(4); Transfer Agreement, ¶ 3(c).

E.   The amount payable to the payee, net of all expenses, in exchange for the payments to be transferred. See, Insurance Code, section 10136(c)(5); Transfer Agreement, ¶ 3(d).

F.   The discounted present value of all structured settlement payments to be transferred, is set forth as follows. This is the value of your structured settlement in current dollars. See, Insurance Code, section 10136(c)(6); Transfer Agreement, ¶ 3(e).

G.   The federal rate, as described in Insurance Code, section 10134(c), used in determining the discounted present value. See, Insurance Code, section 10136(c)(7); Transfer Agreement, ¶ 3(f).

H.   An explanation of the effective equivalent interest rate. See, Insurance Code, section 10136(c)(8); Transfer Agreement, ¶ 3(g).

I.   The quotient (expressed as a percentage) obtained by dividing the net payment amount by the discounted present value of the payments. See, Insurance Code, section 10136(c)(9); Transfer Agreement, ¶ 3(h).

J.   A statement that the payee should obtain independent professional advice regarding any federal and state income tax consequences arising from the proposed transfer, and the transferee may not refer the payee to any specific adviser for that purpose. See, Insurance Code, section 10136(c)(10); Transfer Agreement, ¶ 3(i).

K.   A statement that the court approving the transfer agreement retains continuing jurisdiction to interpret and monitor implementation of the agreement as justice may require. See, Insurance Code, section 10136(c)(11); Transfer Agreement, ¶ 3(j).

L.   The following statement: "If you believe that you were treated unfairly or was misled as to the nature of the obligations you assumed upon entering into this agreement, you should report those circumstances to your local district attorney or the office of the Attorney General." See, Insurance Code, section 10136(c)(12); Transfer Agreement, ¶ 3(k).

M.   A statement printed in 14-point type, circumscribed by a box with a bold border, and set forth immediately above or adjacent to the space reserved for the payee's signature with specific instructions on how to cancel the transfer. See, Insurance Code, section 10136(c)(13); Transfer Agreement, the paragraph just below ¶ 19, and just above where the Payee signed the Transfer Agreement.

-3-

**The Transfer Complies with Insurance Code, section 10137**

8.    The transfer set forth herein is fair and reasonable and in the best interest of the Payee, taking into account the welfare and support of the Payee's dependents, if any.   The evidence in support of this is shall be presented in the Affidavit of the Payee, a true and correct copy of which is attached hereto as Exhibit "4" and which is incorporated herein by this reference, along with any testimony to be provided at the hearing should the Court deem inquiry appropriate.

9.    The transfer set forth herein complies with the requirements if Insurance Code, section 10134, et seq., and will not contravene other applicable law.

**The Transfer Agreement Complies with Insurance Code, section 10138**

10.    The Transfer Agreement Complies with Insurance Code, section 10138, by not containing any of the following provisions:

A.    Any provision that waives the seller's right to sue under any law, or in which the seller agrees not to sue, or that waives jurisdiction or standing to sue under the contract. See, Insurance Code, section 10138(a)(1).

B.    Any provision that requires the seller to indemnify and hold harmless the buyer, or to pay the buyer's costs of defense, in any claim or action brought by the seller or on the seller's behalf contesting the sale for any reason. See, Insurance Code, section 10138(a)(2).

C.    Any provision that waives benefits or rights conferred by law with respect to garnishment of wages. See, Insurance Code, section 10138(a)(3).

D.    Any provision providing that the contract is confidential or proprietary, belonging to the buyer. See, Insurance Code, section 10138(a)(4).

E.    Any provision in which the seller stipulates to a confession of judgment. See, Insurance Code, section 10138(a)(5).

F.    Any provision requiring the seller to pay the buyer's attorney's fees and costs if the purchase agreement is not completed. See, Insurance Code, section 10138(a)(6).

G.    Any provision requiring the seller to pay any tax liability arising under the federal tax laws, other than the seller's own tax liability, if any, that results from the transfer. See, Insurance Code, section 10138(a)(7).

H.    Any provision providing for brokerage fees incurred in the contract to be deducted from the purchase price disclosed pursuant to paragraph (5) of subdivision (b) of

-4-

Insurance Code, section 10136.  See, Insurance Code, section 10138(a)(8).

I.     Any forum selection provision providing for jurisdiction to be in a court outside of California for any action arising under the contract.  See, Insurance Code, section 10138(a)(9).

J.     Any choice-of-law provision that provides for controlling law to be other than California law in any action arising under the contract.  See, Insurance Code, section 10138(a)(10).

K.     A provision that provides the transferee with a security interest or collateral interest in any structured settlement payments rights that exceed the actual dollar amount of the structured settlement payment rights being transferred.  See, Insurance Code, section 10138(a)(11).

L.     Any provision that creates a "buyer's right of first refusal" to purchase any remaining structured settlement payment rights that the payee may desire to sell in the future.  See, Insurance Code, section 10138(a)(12).

**The Transfer Complies with Insurance Code, section 10139**

11.     Pursuant to Insurance Code, section 10139.5, Petitioner is, by serving the Notice of Hearing on the Attorney General, filing with the Attorney General, a copy of the Petition, a copy of the Disclosure Statement, a copy of the Transfer Agreement, copies of the underlying structured settlement documents to the extent available, a copy of the proof of service to all interested parties, and a verified statement from Petitioner stating that all of the conditions set forth in Insurance Code, sections 10136, 10137, and 10138, have been met.  See Insurance code, section 10139(a).

**The Transfer Complies with Insurance Code, section 10139.3**

12.     Pursuant to Insurance Code, section 10139.3(a), nothing in the transfer set forth herein requires that the Payee waive any of the provisions of Insurance Code, section 10134, et seq.

13.     Pursuant to Insurance Code, section 10139.3(b), Petitioner has and will continue to assume the sole responsibility for compliance the requirements of Insurance Code, sections 10136, 10137, and 10138.

14.     Pursuant to Insurance Code, section 10139.3(c), nothing in the transfer set forth herein provides that the Payee shall incur any penalty, forfeit any application fee or other

-5-

1  payments, or otherwise incur any liability to Petitioner based on any failure of the transfer to
2  satisfy the requirements of Insurance Code, sections 10136, 10137, and 10138.

3      15.    Pursuant to Insurance Code, section 10139.3(d), Petitioner shall be liable to the
4  structured settlement obligor and the annuity issuer for any and all taxes incurred as a
5  consequence of the transfer or as a consequence of any failure of Petitioner to comply with
6  Insurance Code, section 10134, et seq., or the terms of the underlying structured settlement
7  agreement (including any provisions in the structured settlement agreement that purport to
8  prohibit assignment).

9      16.    Pursuant to Insurance Code, section 10139.3(e), neither the annuity issuer nor the
10 structured settlement obligor may be required to divide any structured settlement payment
11 between the Payee and Petitioner or between two or more transferees or assignees.

12           **The Transfer Complies with Insurance Code, section 10139.5**

13     17.    Insurance Code, section 10139.5(a) provides that a direct or indirect transfer of
14 structured settlement payment rights is not effective and a structured settlement obligor or
15 annuity issuer is not required to make any payment directly or indirectly to any transferee of
16 structured settlement payment rights unless the transfer has been approved in advance in a final
17 court order based on express written findings by the Court that:

18         A.    The transfer is fair and reasonable and is in the best interest of the Payee,
19 taking into account the welfare and support of the Payee's dependents, if any.  See, Insurance
20 Code, section 10139.5(a)(1).  This is demonstrated by the Affidavit of the Payee.

21         B.    The Payee has been advised in writing by Petitioner to seek independent
22 professional advice regarding the transfer and has either obtained such advice or has waived, in
23 writing, the opportunity to receive the advice.  See, Insurance Code, section 10139.5(a)(2).  This
24 is demonstrated by the Disclosure Statement, ¶¶ C, D and E; the Transfer Agreement, ¶¶ 3(i) and
25 3(l); the Affidavit of the Payee, ¶¶ 6 and 7.

26         C.    Petitioner has complied with the notification requirements pursuant to
27 Insurance Code, section 10139.5(f)(2), Petitioner has provided the Payee with a disclosure form
28 that complies with Insurance Code, section 10136, and the transfer agreement complies with
29 Insurance Code sections 10136 and 10138. See, Insurance Code, section 10139.5(a)(3).  This is
30 demonstrated by the Notice of Hearing to be filed herein along with the proof service attached
31 thereto with respect to the notification requirements, ¶¶ 5 and 6, above, with respect to the

-6-

Disclosure Statement, and ¶¶ 7 and 10, above, with respect to the Transfer Agreement.

        D.     The transfer does not contravene any applicable law, any applicable statute or the order of any court or other governmental authority. See, Insurance Code, section 10139.5(a)(4). This is demonstrated by ¶ 9 above. Moreover, Petitioner is not aware of any law, statute or order of any court or other governmental authority that prohibits the transfer set forth herein.

        E.     The Payee understands the terms of the Transfer Agreement, including the terms set forth in the Disclosure Statement required by Insurance Code, section 10136. See, Insurance Code, section 10139.5(a)(5). This is demonstrated by the Affidavit of the Payee.

        F.     The Payee understands and does not wish to exercise the Payee's right to cancel the Transfer Agreement. See, Insurance Code, section 10139.5(a)(6). This is demonstrated by the Affidavit of the Payee.

    18.     Insurance Code, section 10139.5(c) requires the following information to be contained in this Petition:

        A.     The Payee was born October 30, 1999, and resides at the address set forth in the proof of service to be filed herein. See, Insurance Code, section 10139.5(c)(1).

        B.     The Payee is not married. See, Insurance Code, section 10139.5(c)(2). See, Statement of Dependents, Exhibit "5" hereto.

        C.     The Payee has the following minor children or dependents: None. See, Insurance Code, section 10139.5(c)(3). See, Statement of Dependents.

        D.     Income: The Payee had variable monthly income dependent on hours worked at $15.00 per hour. See, Insurance Code, section 10139.5(c)(4).

        E.     The Payee is obligated under the following child support or spousal support order(s): None. See, Insurance Code, section 10139.5(c)(5).

        F.     Prior transfers: None. See, Insurance Code, section 10139.5(c)(6).

    19.     Pursuant to Insurance Code, section 10139.5(e), following the transfer set forth herein.

        A.     The structured settlement obligor and the annuity issuer shall, as to all parties except the transferee, be discharged and released from any and all liability for the transferred payments; and

        B.     The transferee shall be liable to the structured settlement obligor and the

annuity issuer if the transfer contravenes the terms of the structured settlement agreement for the following: (1) Any taxes incurred by those parties as a consequence of the transfer, and (2) Any other liabilities or costs, including reasonable attorney's fees, arising from compliance by those parties with the order of the court or arising as a consequence of the transferee's failure to comply with this article.

        C.     Neither the annuity issuer nor the structured settlement obligor may be required to divide any periodic payments between the payee and any transferee or assignee or between two, or more, transferees or assignees.

        D.     Any further transfer of structured settlement payment rights by the Payee may be made only after compliance with all the requirements of Insurance Code, section 10134, et seq.

    20.     Pursuant to Insurance Code, section 10139.5(f)(1), this Petition is filed by the Petitioner and in the county where the Payee resides at the time the Transfer Agreement was signed by the Payee.

    21.     Pursuant to Insurance Code, section 10139.5(f)(2), at least 20 days prior to the hearing on this Petition, Petitioner shall file with the Court and serve on all interested parties a notice of the proposed transfer and the petition for its authorization.  Included with that notice will be following:

        A.     A copy of this Petition;

        B.     A copy of the Transfer Agreement and disclosure form required by therein;

        C.     A listing of each of the Payee's dependents, together with each dependent's age;

        D.     A copy of the Disclosure Statement;

        E.     A copy of the annuity contract, if available;

        F.     A copy of the qualified assignment agreement if available;

        G.     A copy of the underlying structured settlement agreement, if available;

        H.     If applicable due to unavailability of the underlying structured settlement documents described in subparagraphs 24(E)-(G) above, a statement of the reasonable efforts to locate the same and a description of the payments due and owing to the Payee.

        (I)     Proof of service showing compliance with the notification requirements of

-8-

1  Insurance code, section 10139.5(f)(2);

2          (J)     Notification that any interested party is entitled to support, oppose, or
3  otherwise respond to the Petition, either in person or by counsel, by submitting written comments
4  to the court or by participating in the hearing;

5          (K)     Notification of the time and place of the hearing and notification of the
6  manner in which and the time by which written responses to the Petition must be filed, which
7  may not be less than 15 days after service of the notice, in order to be considered by the court;
8  and

9          (L)     If the Payee entered into the structured settlement agreement at issue
10  within 5 years prior to the date of the Transfer Agreement, then the Petitioner shall provide
11  notice to the Payee's attorney of record at the time the structured settlement was created, if the
12  attorney is licensed to practice in California, at the attorney's address on file with the State Bar
13  of California, in the form prescribed by Insurance Code, section 10139.5(f)(L).

14      22.     Pursuant to Insurance Code, section 10139.5(g), all court costs and filing fees are
15  being paid by the Petitioner.

16      23.     Pursuant to Insurance Code, section 10139.5(h), no later than the time of filing the
17  petition for court approval, Petitioner shall have advised the Payee of the Payee's right to seek
18  independent counsel and financial advice in connection with Petitioner's Petition for court
19  approval of the Transfer Agreement, and shall further advise the Payee that if the Payee retains
20  counsel, a licensed certified public accountant, or a licensed actuary in connection with a petition
21  for an order approving the Transfer Agreement, that the Petitioner shall pay the fees of the
22  Payee's counsel, accountant, or actuary, regardless of whether the Transfer Agreement is
23  approved, and regardless of whether the attorney, accountant, or actuary files any document or
24  appears at the hearing on the petition for transfer, in an aggregate amount not to exceed one
25  thousand five hundred dollars ($1,500). The transferee's accountant, counsel, or actuary may not
26  advise the Payee. Petitioner has advised the Payee of the above. See, Transfer Agreement, ¶
27  3(l). See Statement of Independent professional Advice, Exhibit "6" hereto.

28      24.     Pursuant to Insurance Code, section 10139.5(i), this Court shall retain continuing
29  jurisdiction to interpret and monitor the implementation and closing of the transaction that is the
30  subject of the Transfer Agreement as justice requires.

31      WHEREFORE, Petitioner hereby requests that:

-9-

1.     That this Court approve this Petition and enter an order in accordance with Insurance Code, section 10139.5, and 26 U.S.C. §5891, approving this transfer of structured settlement payment rights and ordering the Payment Obligor and Payment Issuer, regardless of whether the Payee is then living, to pay the Transferred Payments to Petitioner or its designated assigns.

2.     That this Court make the findings required by Insurance Code, section 10139.5(a) and that these findings be set forth in writing in the order issued by this court approving the transfer.

3.     That not later 10 days after service of the Order granting this Petition, the Payment Obligor and Payment Issuer shall send a letter to Petitioner or its assigns acknowledging the transfer, informing Petitioner or its assigns that the change has been made to its records, and specifying the schedule of payments to be made to Petitioner or its assigns, and address or bank account designation to where the Transferred Payments shall be sent.

4.     Petitioner or Petitioner's designated assign, shall have the power, right and authority to change the address to where the Transferred Payments shall be sent, without further order of the Court.

5.     The Payee, having assigned all of Payee's rights, title and interest in and to the Transferred Payments: (i) the Payee shall have no right to request any change in the address to where the Transferred Payments are sent or any change in the designation of the Payee's estate as contingent beneficiary; and (ii) any attempt by the Payee to make any such change or otherwise to redirect or re-assign the Transferred Payments shall be void *ab initio*.

6.     Pursuant to Insurance Code, section 10139.5(i), the Court shall retain continuing jurisdiction to interpret and monitor the implementation of the Transfer Agreement, as justice requires.

DATED: June 11, 2020                    Respectfully submitted,

LAW OFFICES OF JOHN Z. SHAFAI

By:

JOHN Z. SHAFAI,
Attorneys for Petitioner,
OPEN CAPITAL, LLC

-10-

# EXHIBIT "1"

# EXHIBIT "1"

## SWORN AFFIDAVIT IN LIEU OF SETTLEMENT AGREEMENT

I, Alexander Navas, and being duly sworn upon my oath, state as follows:

1.      I am over the age of 18.  I am of sound mind, sane, sober, not under the influence of drugs or alcohol, and am not suffering from any physical impairment affecting my judgment.

2.      I reside in Los Angeles County, California.

3.      I am entitled to the settlement payments set forth in that certain Structured Settlement Payment Purchase Agreement between Open Capital, LLC or its assigns as Purchaser and me to be signed contemporaneously with this Affidavit.

4.      Despite making a diligent effort, I have been unable to obtain a copy of the settlement agreement under which I am entitled to receive the certain periodic payments.

5.      I entered into a settlement agreement with Pacific Life and Annuity Services, Inc. (the "Annuity Owner"), or its predecessor in interest, under which I became entitled to receive the following payments: Forty Three (43) monthly payments, each in the amount of One Thousand Ninety Eight and 53/100 Dollars ($1,098.53), beginning with the payment on March 30, 2023 through to and including September 30, 2026; plus One (1) lump sum payment in the amount of Forty Five Thousand and 00/100 Dollars ($45,000.00), due and payable on October 30, 2024. (the "Periodic Payments").  The settlement was for a personal injury claim, which did not result from a worker's compensation proceeding.

(THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)

*Alexander Harry William Navas*
_____
Alexander Navas

State of Texas

~~STATE OF California~~                    )

COUNTY OF Dallas_____              )

The foregoing instrument was acknowledged before me this 23rd day of _May_____,
2020 by Alexander Navas, who is either (  ) personally known to me or ( ✓ ) who has
produced Driver ID_____ as identification.

Christin D Johnson

ID NUMBER
13216336-2
COMMISSION EXPIRES
September 9, 2023

_____
Notary's Signature
Commission      Exp.      Date:      09/09/2023

Notarized online using audio-video communication

# EXHIBIT "2"

# EXHIBIT "2"

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

## STRUCTURED SETTLEMENT PAYMENT PURCHASE CONTRACT

I, A. Navas ("I", "Me", "My", "Payee", "Seller", or "Transferor"), a resident of Los Angeles County, CA. SS# XXX-XX-0245 am entitled to receive the following payments: As described in the Settlement Agreement and Annuity Policy ("Periodic Payments") pursuant to a Release and Settlement Agreement (the "Structured Settlement Agreement"). The obligor to make the Periodic Payments is Pacific Life and Annuity Services, Inc. (the "Structured Settlement Obligor"). The Periodic Payments were funded by an annuity contract issued by Pacific Life Insurance Company    (the "Annuity Issuer"). to which annuity contract number To be provided at a later date was assigned.

1) <u>Transfer.</u>  I hereby transfer and assign (the "Transfer") to Open Capital, LLC, or its assignee ("Transferee") all of my rights, title and interest in and to the following payments due under the Structured Settlement Agreement: Forty Three (43) monthly payments, each in the amount of One Thousand Ninety Eight and 53/100 Dollars ($1,098.53), beginning with the payment on March 30, 2023 through to and including September 30, 2026; plus One (1) lump sum payment in the amount of Forty Five Thousand and 00/100 Dollars ($45,000.00), due and payable on October 30, 2024. (the "Transferred Payments").

2) <u>Purchase Price.</u>  In consideration for this Transfer, Transferee shall pay to me the sum of Forty Two Thousand Eight Hundred Thirteen and 11/100 Dollars ($42,813.11) (the "Transfer Price"). I understand that at Your sole discretion, You reserve the right to convey an interest in the Transferred Payments to any third party in order to satisfy My obligations to said third party.

3) <u>Disclosures.</u>

   a)  This Agreement is not effective until the date on which a court enters a final order approving the transfer agreement and that payment to the payee pursuant to the transfer agreement will be delayed up to 30 days or more after the date the payee signed the transfer agreement in order for the court to review and approve the transfer agreement.

   b)  The aggregate amount of the structured settlement payments to be transferred: $92,236.79.

   c)  The aggregate amount of all expenses, if any, to be deducted from the purchase price to be paid to the payee in exchange for the payments to be transferred, and an itemization of all expenses by type and amount: $0.00.

   d)  The amount payable to the payee, net of all expenses, in exchange for the payments to be transferred: $42,813.11.

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

e) The discounted present value of all structured settlement payments to be transferred, is set forth as follows. This is the value of your structured settlement in current dollars: $91,903.67.

f) The federal rate, as described in subdivision (c) of Section 10134, used in determining the discounted present value is 0.8%

g) YOU WILL BE PAYING THE EQUIVALENT OF AN INTEREST RATE OF 18.7% PER YEAR. Based on the net amount that you will receive from us and the amounts and timing of the structured settlement payments that you are transferring to us, if the transferred structured settlement payments were installment payments on a loan, with each payment applied first to accrued unpaid interest and then to principal, it would be as if you were paying interest to us of 18.7% per year, assuming funding on the effective date of transfer."

h) The quotient (expressed as a percentage) obtained by dividing the net payment amount by the discounted present value of the payments: 46.58%.

i) Payee should obtain independent professional advice regarding any federal and state income tax consequences arising from the proposed transfer, and the Transferee may not refer the Payee to any specific adviser for that purpose.

j) The court approving the transfer agreement retains continuing jurisdiction to interpret and monitor implementation of the agreement as justice may require.

k) If the Payee believes that the Payee was treated unfairly or were misled as to the nature of the obligations the Payee assumed upon entering into this agreement, the Payee should report those circumstances to the Payee's local district attorney or the office of the Attorney General.

l) The Payee has the right to seek independent counsel and financial advice in connection with the transferee's petition for court approval of the Transfer Agreement, and if the Payees retains counsel, a licensed certified public accountant, or a licensed actuary in connection with a petition for an order approving the Transfer Agreement, and the Transferee shall pay the fees of the Payee's counsel, accountant, or actuary, regardless of whether the Transfer Agreement is approved, regardless of whether the attorney, accountant, or actuary files any document or appears at the hearing on the application for transfer, in an aggregate amount not to exceed one thousand five hundred dollars ($1,500). The Transferee's accountant, counsel, or actuary may not advise the payee.

4) Representations and Warranties.    I hereby make the following unconditional representations and promises:

a) I own outright, and have good, marketable and defensible title to the Periodic Payments, free and clear of any lien, pledge, mortgage, security interest, charge,

TRANSFER AGREEMENT -- Page 2 of 8

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

adverse claim, right or equity of redemption, or other right, interest or claim of any nature or description whatsoever of any other person or entity. I have not sold, assigned, transferred, conveyed, or pledged to any other person or entity any of the Periodic Payments (except as acknowledged herein) and none of the Periodic Payments has been attached, levied, foreclosed upon, seized, restricted, or subjected to levy, garnishment or other legal process or proceeding, nor have I entered into any agreement or understanding of any nature whatsoever, whether written or oral, with respect thereto.

b) I am not indebted to anyone that would affect in any way either the Transfer of the Transferred Payments or Transferee's absolute rights to receive the Transferred Payments.

c) I agree to conduct my affairs so as to ensure that Transferee obtains all of the benefits of the Transfer.

d) I am of the age of majority, am of sound mind, and understand the terms and provisions of this Agreement and the related documents, and am entering into this Agreement of my own free will and volition.

e) The Periodic Payments are not my primary source of income and are not used or intended for medical expenses or treatments. I and/or other members of my household have other sources of income, other than the Periodic Payments.

f) I have been advised by Transferee to seek, and have had the opportunity to receive advice from my own independent financial, tax and accounting advisors and legal counsel in connection with the negotiation and execution of this Agreement.

g) I acknowledge that Transferee has provided me a Disclosure Statement prepared in accordance with applicable law and that I have read, understand, and signed the Disclosure Statement and have returned the same to Transferee on or prior to the execution of this Agreement.

5) Events of Breach. I agree that the following shall be considered an event of breach of contract under this Agreement:

a) The representations set forth above and my representations and/or statements in any and all documents drafted and/or signed by me including but not limited to my application(s), letter(s), declaration(s), affidavit(s), contract(s), agreement(s) and other such documents are at any time not true.

b) My failure to perform the promises set forth above.

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

    c) The failure of the Structured Settlement Obligor or the Annuity Issuer to make any one of the Transferred Payments as a result of any act by me, my estate or any of my heirs.

    d) The failure of the Structured Settlement Obligor or the Annuity Issuer to forward any one of the Transferred Payments to Transferee as a result of any act by me, my estate or any of my heirs.

    e) My failure to forward promptly to Transferee any Transferred Payment received by me from the Structured Settlement Obligor or Annuity Issuer.

    f) My failure to fulfill any other of my obligations under this Agreement.

6) <u>Conditions Precedent</u>. The following are conditions precedent to Transferee's obligation to pay me the Transfer Price:

    a) Transferee shall be satisfied, in its sole discretion, that there are no claims or interests of any kind or nature whatsoever that do or may affect Transferee's rights to or interest in the Transferred Payments and Transferee's ability to receive the Transferred Payments on the dates and in the amounts set forth herein.

    b) Transferee shall have received a final, non-appealable court order, or a signed acknowledgment from the Structured Settlement Obligor and the Annuity Issuer satisfactory to Transferee in its sole discretion, authorizing the transfer by assignment of the Transferred Payments (which may be made out in my name) to Transferee, and directing that the Transferred Payments be forwarded, or authorizing the forwarding of the Transferred Payments, directly to Transferee.

    c) A completed and signed Application to transfer structured settlement payment rights.

    d) A signed spousal consent form, if applicable, consenting to Transferor's transfer of structured settlement payment rights to Open Capital, LLC.

7) <u>Security Agreement</u>. It is the intention of the parties that the provisions of this Transfer Agreement constitute the purchase and sale of My right, title and interest in and to the Transferred Payments, and not a loan secured by the Periodic Payments. In the event, however, that a court of competent jurisdiction were to hold that the transaction embodied by this Transfer Agreement constitutes a loan and not a purchase and sale, it is the intention of the parties that I am granting to the Transferee a security interest in and to the Periodic Payments as set forth in more detail below. This grant is a present grant and not conditioned on the contingency described above.

Under this Agreement and only to the extent permitted by law, Transferee and I intend to create a security agreement under Article 9 of the Uniform Commercial Code of the State of California, in my rights and interests in and to the payments due

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

to me under the Structured Settlement Agreement, which rights have been assigned to Transferee as General Intangibles under Article 9 of the Uniform Commercial Code of the State of California. This Agreement shall also function as a security agreement. This security interest secures payment of the rights assigned and performance of my obligations under this Agreement. Transferee may direct any account debtor, obligor on an instrument, including without limitation, the Structured Settlement Obligor or Annuity Issuer, to make periodic payments directly to Transferee as contemplated by the Uniform Commercial Code. Transferee may file a UCC-1 financing statement to perfect its rights hereunder. This security interest shall be in the amount of the aggregate value of the Transferred Payments and shall not exceed that aggregate value, as provided in Insurance Code, section 10138(a)(11).

8) Change of Beneficiary; Will. The portion of the Transferred Payments that are guaranteed shall be paid to Transferee regardless of whether I am alive or deceased at the time such Transferred Payments are due. I shall request that the Structured Settlement Obligor and/or the Annuity Issuer accept Transferor's irrevocable designation of Transferee or Transferor's estate as the sole beneficiary under the Annuity during the term that the Transferred Payments are due. Transferor shall, at the request of Transferee, execute an agreement to include certain provisions in his will (the "Testamentary Agreement); and/or have a will prepared or modified which names Transferee or its assigns as the beneficiary to receive the Transferred Payments under the Transferor's will and shall keep the will prepared pursuant hereto in full force and effect until Transferee has received all of the Transferred Payments. Transferor shall not amend, modify, alter or otherwise change the Testamentary Agreement or her will, by codicil or otherwise, in any way which may affect Transferee's status as the beneficiary to receive the Transferred Payments, without the express prior written consent of Transferee.

9) Power of Attorney. I hereby grant to Transferee an Irrevocable Power of Attorney with full powers of substitution to do all acts and things that I might do regarding the Transferred Payments and any and all rights I have under the Structured Settlement Agreement, including, without limitation, the power to endorse checks, drafts or other instruments, the power to alter, edit, and change payment instructions and/or beneficiary designations and any other act which, in the sole discretion of Transferee as my Attorney-in-Fact is necessary or expedient for it to obtain all of the benefits of the bargain contemplated by this transaction. This power of attorney is coupled with an interest and shall survive my death or disability.

10) Access to Information. Transferee shall have the right, power, and authority to obtain and perform credit checks on Transferor and other investigations, including without limitation, searches for abstracts of judgment or other claims against Transferor. Transferee is under no duty or obligation to perform any such check or investigation and Transferor shall not rely on Transferee obtaining such information or the accuracy thereof.

11) <u>Adjustments</u>.  In the event that prior to the consummation of the transaction contemplated hereby, I, or any person or entity entitled to receive Periodic Payments on My behalf, receives any of the Transferred Payments, or any portion thereof, the Transfer Price shall be reduced in like amount and the terms of this Agreement regarding the payments to be transferred shall be deemed to be adjusted accordingly.

12) <u>Division of Payments</u>.  As Insurance Code, section 10139.3(e) provides that neither the Annuity Issuer nor the Structured Settlement Obligor may be required to divide any structured settlement payment between the Payee and any Transferee, I hereby authorize the Payment Obligor and the Payment Issuer to send to Transferee all Periodic Payments falling due on the dates on which Transferred Payments fall due, from which Transferee shall deduct out the Transferred Payments and then remit the non-Transferred Payments therefrom to me.

13) <u>Holdback</u>.  In the event that the Closing occurs within sixty (60) days of the first scheduled monthly payment of the Periodic Payments, Purchaser may, in its discretion at the Closing, hold in Purchaser's bank account and deduct from the Purchase Price, an amount equal to no more than the first two (2) monthly payments to be received by Purchaser hereunder.  Upon the receipt by Purchaser of the first monthly payment from the Structured Settlement Obligor (thereby insuring the effective change of Payment address), Purchaser shall immediately release such funds withheld from the Purchase Price to the Seller.  Purchaser shall have the right to retain funds sufficient to cover any payments not received by Purchaser.  Any funds withheld are for the purpose of assuring Transferee that the Annuity Issuer/Obligor makes the proper address change for the Transferred Payments.

14) <u>Discharge of Adverse Claims</u>.  Transferee shall be entitled to discharge any adverse claims against Payee or any of the Transferred Payments whether or not such adverse claims are disclosed.  Transferee may, provided Transferee furnishes prior written notice to Payee, pay any and all amounts necessary or, of the Transferred Price has been deposited into an escrow account, instruct the escrow agent to pay any and all amounts necessary to discharge such liens or adverse claims, and the Transfer Price shall be reduced by the amount of such payments.

15) <u>Not a Loan</u>.  This is not a loan.  The assignment and sale of the Transferred Payments by Transferor to Transferee is and shall constitute an absolute conveyance by Transferor to Transferee of the Transferred Payments.  This Transfer does not constitute and is not intended to constitute a loan between Transferor and Transferee and nor does it create a partnership or other joint ownership arrangement between the Transferor and the Transferee.

16) <u>Transferee's Right to Assign</u>.  Transferee (and each assignee of Transferee) may assign all or any portion of its right, title and interest in and to this Agreement and/or the Transferred Payments at any time without the requirement of prior consent or notice to Transferor.  Upon any such assignment, Transferee shall be released from any liability hereunder and thereunder without any requirement of further

<u>TRANSFER AGREEMENT</u> -- Page 6 of 8

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

documentation and Transferor shall look solely to such assignee for any payment (e.g., the Transfer Price, the servicing of non-Transferred Payments) and any other performance hereunder and thereunder.   Without limiting the generality of the foregoing, Transferor shall upon request of Transferee or any of Transferee's assignees execute and deliver any such documents as Transferee or Transferee's assignees may require to effectuate and consummate the transaction(s) contemplated hereby.  If Transferee does make an assignment as contemplated hereby, any such references in this Agreement and its related documents shall mean Transferee's assignee.

17) <u>Effective Date</u>.  This Agreement shall take effect on the date signed by me or on such later date prescribed by Insurance Code, section 10134, et seq.

18) <u>Disclosure Statement</u>.  All disclosure statements are a material part of this Agreement and shall be read in conjunction herewith.

19) <u>California Law</u>.  Except as otherwise required by applicable law, this Agreement shall be governed by and interpreted in accordance with the laws of the State of California.  Pursuant to Insurance Code, section 10139.5(f), the Court shall retain continuing jurisdiction to interpret and monitor the implementation of the Transfer Agreement, as justice requires.

---

**You have the right to cancel this agreement without any cost or obligation until the date the court approves this agreement.  You will receive notice of the court hearing date when approval may occur.  You must cancel in writing and send your cancellation to Open Capital, LLC, 500 Crawford St., Suite 345, Houston, TX 77002.**

---

(THE   REMAINDER   OF   THIS   PAGE   IS   INTENTIONALLY   LEFT   BLANK)

DocuSign Envelope ID: DFE71272-908C-42B9-B42C-ED4236447B5D

In witness whereof I hereunto set my hand.

DocuSigned by:

Alexander Navas

6/2/2020

Date

SIGN HERE

Accepted:

Open Capital, LLC

Authorized Signature

6/3/20

Date

# **AFFIDAVIT OF SAME NAME**

I, Alexander Navas, ("I", "Me", "Seller", "Payee"), being duly sworn upon my oath depose and say that:

1. I have at various times been known as: Alexander H. Navas and Alexander Henry William Navas. At no time were these name variations used for purposes of fraud or dishonesty.

2. My Social Security Number is XXX-XX-0245; and my date of birth is October 30, 1999.

(THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)

Affidavit of Same Name
Alexander Navas

FURTHER AFFIANT SAYETH NOT

_____     **SIGN HERE**          05/23/2020
Alexander Navas                                             _____
                                                            Date


## Acknowledgment of Alexander Navas

State of Texas
~~State of California~~     )

County of ___Dallas_____          )

On this, the __23rd__ day of __May_____, 2020, before me a Notary
Public, personally appeared Alexander Navas  known to me (or satisfactorily proven) to
be the person whose name is subscribed to the within instrument, signed the same before
me as said signatory's free act and deed.

_____
Notary Public

_____Christin D Johnson_____
Print Name
My Commission Expires:___09/09/2023___

*[Notary seal: NOTARY PUBLIC STATE OF TEXAS — Christin D Johnson — ID NUMBER 13216336-2 — COMMISSION EXPIRES September 9, 2023]*

Notarized online using audio-video communication


Affidavit of Same Name
Alexander Navas

DocuSign Envelope ID. 6AF60359-5FED-4C28-A5B4-AE58771F82BD

<u>May 22, 2020</u>
## <u>COLORADO DISCLOSURE STATEMENT-SUPPLEMENTAL</u>
### Payee: Alexander Navas- Resident of: California

A. **The amounts and due dates of the structured settlement payments to be transferred:** <u>Forty Three (43) monthly payments, each in the amount of One Thousand Ninety Eight and 53/100 Dollars ($1,098.53), beginning with the payment on March 30, 2023 through to and including September 30, 2026; plus One (1) lump sum payment in the amount of Forty Five Thousand and 00/100 Dollars ($45,000.00), due and payable on October 30, 2024.</u>

B. **The aggregate amount of the payments:** <u>$92,236.79</u>.

C. **The discounted present value of the payments to be transferred which is the calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities:** <u>$91,903.67</u>. **This amount is determined by applying the applicable federal rate of <u>0.8%</u> as of <u>May, 2020</u>.**

D. **The gross advance amount:** <u>$42,813.11</u>.

E. **The following is an itemized listing of all applicable transfer expenses, other than attorneys' fees and related disbursements payable in connection with the transferee's application for approval of the transfer:** <u>$0.00</u>.

F. **The following is the transferee's best estimate of the amount of attorneys' fees and related disbursements payable in connection with the transferee's application for approval of the transfer:** <u>$0.00</u>.

G. **<u>Independent Professional Advice.</u> Payee will be solely responsible for any independent professional advice or advisor's fees related to the rendering of any advice regarding Payee's transfer of structured settlement payments. These fees are in addition to any legal or other fees estimated above.**

H. **Amount payable to Payee, net of all expenses, in exchange for the payments to be transferred:** <u>$42,813.11</u>.

DocuSign Envelope ID: 6AF60359-5FED-4C28-A5B4-AE58771F82BD

**I.** The amount of any penalties or liquidated damages payable by the Payee in the event of any breach of the transfer agreement by the Payee: <u>$0.00</u>.

**J.** The payee has the right to cancel the transfer agreement, without penalty or further obligation, not later than the third (3rd) business day after the date the agreement is signed by the Payee.

**YOU ARE ADVISED TO SEEK INDEPENDENT PROFESSIONAL ADVICE. COLORADO LAW DEFINES "INDEPENDENT PROFESSIONAL ADVICE" AS "ADVICE OF AN ATTORNEY, CERTIFIED PUBLIC ACCOUNTANT, ACTUARY OR OTHER LICENSED PROFESSIONAL ADVISER," WHO CAN ADVISE YOU REGARDING THE TRANSFER OF YOUR STRUCTURED SETTLEMENT PAYMENTS.**

**By signing below, I am confirming that I received a copy of this disclosure statement at least three (3) days prior to the date on which I signed the transfer agreement, pursuant to Colorado's Structured Settlement Protection Act. By my signature, I am also confirming that I have read and understood this disclosure statement.**

DocuSigned by:

_____   _____   SIGN HERE

0F35C0AD8CD54C3

Alexander Navas

DocuSign Envelope ID: 6AF60359-5FED-4C28-A5B4-AE58771F82BD

<u>May 22, 2020</u>

**<u>NEBRASKA DISCLOSURE STATEMENT-SUPPLEMENTAL</u>**
**Payee: Alexander Navas- Resident of: California**

This Disclosure Statement is being provided by Open Capital, LLC ("OC") to Alexander Navas ("Payee") in connection with Payee's agreement to transfer and assign to OC certain structured settlement payment rights.

A. The amounts and due dates of the structured settlement payments to be transferred: <u>Forty Three (43) monthly payments, each in the amount of One Thousand Ninety Eight and 53/100 Dollars ($1,098.53), beginning with the payment on March 30, 2023 through to and including September 30, 2026; plus One (1) lump sum payment in the amount of Forty Five Thousand and 00/100 Dollars ($45,000.00), due and payable on October 30, 2024.</u>

B. The aggregate amount of the payments: <u>$92,236.79</u>.

C. The discounted present value of the payments, together with the discount rate used in determining the discounted present value: <u>$91,903.67</u>. This amount is determined by applying the applicable federal rate of <u>0.8%</u> as of <u>May, 2020</u>.

D. The gross amount payable to the Payee in exchange for the structured settlement payments: <u>$42,813.11</u>.

E. The following is an itemized listing of all brokers' commissions, service charges, application fees, processing fees, closing costs, filing fees, referral fees, administrative fees, legal fees, and notary fees and other commissions, fees, costs, expenses, and charges payable by the payee or deductible from the gross amount otherwise payable to the payee: <u>$0.00</u>.

F. <u>Independent Professional Advice.</u> Payee will be solely responsible for any independent professional advice or advisor's fees related to the rendering of any advice regarding Payee's transfer of structured settlement payments. These fees are in addition to any legal or other fees estimated above.

DocuSign Envelope ID. 6AF60359-5FED-4C28-A5B4-AE58771F82BD

G. The net amount payable to the Payee after deducting all commissions, fees, costs, expenses, and charges described in sub-paragraph E: <u>$42,813.11</u>.

H. The net amount that you will receive from us in exchange for your future structured settlement payments represent <u>46.58%</u> of the estimated current value of the payments based upon the discounted present value using the applicable federal rate.

I. Based on the net amount that you will receive from us and the amounts and timing of the structured settlement payments that you are turning over to us, you will, in effect, be paying interest to us at a rate of <u>18.7%</u> per year.

J. The amount of any penalty and the aggregate amount of any liquidated damages, including penalties, payable by the payee in the event of a breach of the transfer agreement by the payee: <u>$0.00</u>.

**YOU ARE ADVISED TO SEEK INDEPENDENT PROFESSIONAL ADVICE. "INDEPENDENT PROFESSIONAL ADVICE" IS COMMONLY DEFINED AS "ADVICE OF AN ATTORNEY, CERTIFIED PUBLIC ACCOUNTANT, ACTUARY OR OTHER LICENSED PROFESSIONAL ADVISER," WHO CAN ADVISE YOU REGARDING THE LEGAL, TAX AND FINANCIAL IMPLICATIONS OF YOUR TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS.**

**By my signature, I am also confirming that I have received, read and understood this disclosure statement.**

DocuSigned by:

0F35C0AD8CD54C3                                          **SIGN HERE**

**Alexander Navas**

Nebraska Disclosure Statement
Page 2 of 2

nedsver.1

# EXHIBIT "3"

# EXHIBIT "3"

DocuSign Envelope ID: 6AF60359-5FED-4C28-A5B4-AE58771F82BD

**May 22, 2020**

## CALIFORNIA Disclosure Notice Required By Law
Payee: Alexander Navas- Resident of: California

A.     You are selling (technically called "transferring") your right to receive your payments under a structured settlement.  You should get this disclosure notice at least 10 days before you sign any contract.

## IMPORTANT TERMS:

**You have agreed to sell to the transferee future payments totaling Ninety Two Thousand Two Hundred Thirty Six and 79/100 Dollars ($92,236.79) in exchange for a purchase price of Forty Two Thousand Eight Hundred Thirteen and 11/100 Dollars ($42,813.11).**

**Those future payments have a discounted present value equal to Ninety One Thousand Nine Hundred Three and 67/100 Dollars ($91,903.67), calculated by applying the discount rate of 0.8% percent utilized by the Internal Revenue Service to value annuities in probate proceedings.**

**The purchase price to be paid to you was calculated using a discount rate of 18.7% percent.**

**The purchase price payable to you is less than the present value of the future payments stated above because the discount rate of your transaction is greater than the rate utilized by the Internal Revenue Service.**

**        For comparison purposes:**
**If you did not sell your right to receive structured settlement payments, but instead borrowed the net amount of $42,813.11 and paid that loan back in installments with each of the payments you are now selling, the equivalent interest rate you would be paying that loan would be 18.7% per year.**

B.     To figure the net amount we are paying, we have charged you for the following expenses (itemized in a list by type and estimated amount):

$0.00

For a total of $0.00 in expenses.

California Disclosure Statement
Page 1 of 2                                                                                                              cadsver 1

DocuSign Envelope ID: 6AF60359-5FED-4C28-A5B4-AE58771F82BD

C.      You should get independent professional advice about whether selling your structured settlement payments is a good idea for you and for your dependents.

D.      You are advised to seek independent legal or financial advice regarding the transaction and, under the law, the cost of that advice, up to one thousand five hundred dollars ($1,500) will be paid by the transferee, the person or entity to whom you have agreed to transfer and assign the payments in question.  The transferee or purchaser's accountant, counsel, or actuary may not advise you in this transaction.

E.      You also should get independent professional advice from an accountant or lawyer experienced in tax matters about any income tax consequences from selling your structured settlement payments.  We cannot give you the name of anyone to advise you.

F.      **Court approval is needed.**  A court must approve any agreement you sign to sell your rights under a structured settlement.  You will not receive any money until the court approves the sale.  Court approval could take more than 30 days following the day you sign an agreement selling your rights under a structured settlement.

G.      A sale of future structured settlement payments will mean that you will no longer receive the future payments that are sold.  You are advised to enter into this transaction only after you have carefully considered the consequences of the transaction.

H.      **You may cancel the contract before court approval.**  You may cancel the agreement selling (or transferring) your rights under a structured settlement without any cost or obligation.  You may cancel at any time before the court approves the contract.  You will get the notice of the date of the court hearing.

I.      If you want to cancel, you do not need any special form.  But, you must cancel in writing.  Send your cancellation letter to: Open Capital, LLC, 500 Crawford St., Suite 345, Houston, TX 77002.

J.      If you believe that you have been treated unfairly or have been misled, you should report contact your local district attorney or the state Attorney General.

K.      By signing below, I am confirming that I received a copy of this disclosure statement at least ten (10) days prior to having received the transfer agreement, pursuant to California's Transfer Act.  By my signature, I am also confirming that I have read and understood all of the above disclosures and information required to be disclosed by the California Transfer Act.

Alexander Navas

# EXHIBIT "4"

EXHIBIT "4"

I. Alexander Navas declare and state as follows:

1.      I am an adult residing in the County of Los Angeles in the State of California.  I have personal knowledge of the facts set forth herein and if called upon to testify. I could and would competently testify thereto.  I make this Declaration in support of the Petition for Approval of Transfer of Structured Settlement Payment Rights.

2.      I am the recipient of certain structured settlement payments pursuant to a structured settlement agreement under which Pacific Life and Annuity Services, Inc. (the "Payment Obligor") is the obligor and pursuant to which the Payment Obligor purchased an annuity contract from Pacific Life Insurance Company   (the "Payment Issuer") to fund the aforesaid obligation.

3.      I have entered into a transfer agreement (the "Transfer Agreement") to transfer the following structured settlement payments to the Open Capital, LLC (the "Petitioner" or "Transferee") or its assignee: Forty Three (43) monthly payments, each in the amount of One Thousand Ninety Eight and 53/100 Dollars ($1,098.53), beginning with the payment on March 30, 2023 through to and including September 30, 2026; plus One (1) lump sum payment in the amount of Forty Five Thousand and 00/100 Dollars ($45,000.00), due and payable on October 30, 2024. (the "Transferred Payments").  I reviewed and understand the terms of the Transfer Agreement.  A true and correct copy of the Transfer Agreement is attached hereto as Exhibit "1" and is incorporated herein by this reference.

4.      Ten or more days prior before I signed the Transfer Agreement, I received, reviewed, and understand a separate written disclosure statement (the "Disclosure Statement"). A true and correct copy of the Disclosure Statement is attached hereto as Exhibit "2" and is incorporated herein by this reference.

5.      I understand and do not wish to exercise my right to cancel the Transfer Agreement.

6.      I understand that I have the right to seek independent counsel and financial advice in connection with the transferee's petition for court approval of the Transfer Agreement, and if I retain counsel, a licensed certified public accountant, or a licensed actuary in connection with a petition for an order approving the Transfer Agreement, the Transferee shall pay the fees of my counsel, accountant, or actuary, regardless of whether the Transfer Agreement is approved, regardless of whether the attorney, accountant, or actuary files any document or appears at the

-2-

hearing on the application for transfer, in an aggregate amount not to exceed one thousand five hundred dollars ($1,500). I also understand that the Transferee's accountant, counsel, or actuary may not advise me.

7. I have been advised in writing by the Transferee to seek independent professional advice regarding the transfer and I have received that advice or I hereby knowingly waive that advice.

8. I suffer from no mental or physical disabilities that would prevent me from working. I have thoroughly considered this transaction, my alternatives and the use to which I will put the proceeds of this sale. I have considered the impact of this transaction on my dependents and myself. After considering these factors, I believe that this transaction is in my best interest. Further, I have no dependents who will be impacted in any way by this transaction.

9. I intend to use the proceeds from this transaction to find an apartment and cover living expenses during the pandemic. Due to COVID-19, my mother lost her job and I am the sole provider for my family. Our current residence is being sold and I can't afford to move due to a cut in my work hours. I'll use the funds received to pay first, last, and security on an apartment, and furnish it. The remaining funds will be used to cover living expenses during the pandemic.

10. I am employed by JRD Enterprises and am currently earning an annual salary of approximately $31,200.00. Therefore, the structured settlement payments are not my only source of income. Further, the Court will note that I have not assigned all of my structured settlement payments, as I will still receive the following periodic payments even if the Court approves this transfer: monthly payments of $1,690.05 due on the 30th of each month through 2/28/2023. Monthly payments of $591.52 from 3/30/2023 to 9/30/2026. And 1 lump sum payment of $4,929.46 due and payable 10/30/2024.

12. I do not believe that approval of this transfer will negatively affect my standard of living. I have determined that the subject Transfer is in my family's best interests and will improve our quality of life.

13. I understand that once the Court approves this Petition, I, and my beneficiaries and heirs, will no longer be entitled to receive the Transferred Payments.

14. I have entered into the Transfer Agreement of my own free will and without undue influence or duress or under the influence of any controlled substances, including drugs or alcohol.

-3-

DECLARATION OF ALEXANDER NAVAS IN SUPPORT OF PETITION FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on the date set forth below.

DATED: May____ 2020

05/23/2020

*Alexander Henry William Navas*

_____

Alexander Navas

-4-

# EXHIBIT "5"

# EXHIBIT "5"

DocuSign Envelope ID: 6AF60359-5FED-4C28-A5B4-AE58771F82BD

# <u>STATEMENT OF DEPENDENTS</u>

1.  I understand that the applicable state transfer statute defines "dependents" to include "payee's spouse and minor children and all other family members and other persons for whom the payee is legally obligated to provide support, including alimony."

2.  I am single.

3.  I have no minor children.

4.  I am not legally obligated to provide support, including alimony, to any other family members and/or other persons.

(THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)

Statement of Dependents
Alexander Navas

DocuSign Envelope ID. 6AF60359-5FED-4C28-A5B4-AE58771F82BD

DocuSigned by:

0F35C0AD8CD54C3

Alexander Navas

SIGN HERE

Statement of Dependents
Alexander Navas

# EXHIBIT "6"

# EXHIBIT "6"

DocuSign Envelope ID: 6AF60359-5FED-4C28-A5B4-AE58771F82BD

## STATEMENT OF
## INDEPENDENT PROFESSIONAL ADVICE

1.  On or about May, 2020, I entered into a Structured Settlement Payment Right Purchase and Assignment Agreement with Open Capital, LLC (the "Agreement") to transfer certain structured settlement payment rights.

2.  With regard to said Agreement, I received a Disclosure Statement from Open Capital, LLC in which I was advised to seek independent professional advice from an attorney, certified public accountant, actuary, or other licensed professional adviser who can advise me regarding the legal, tax, or financial implications of the transfer of structured settlement payment rights.

3.  Accordingly,

    a.   I understand the legal, tax, and financial implications of my transfer of structured settlement payment rights and hereby expressly waive my right to seek independent professional advice regarding same.

SIGN HERE ⟶
DocuSigned by:

0F35C0AD8CD54C3...

Signature

Statement of Independent Professional Advice for Alexander Navas

# EXHIBIT "3"

# EXHIBIT "3"

LAW OFFICES OF JOHN Z. SHAFAI
John Z. Shafai [State Bar No. 170518]
9461 Charleville Boulevard
Beverly Hills, California 90212
Telephone: (310) 788-2889
Facsimile: (310) 788-2885

Attorneys for Petitioner,
OPEN CAPITAL, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR COUNTY OF LOS ANGELES, CENTRAL DISTRICT

In Re:

OPEN CAPITAL, LLC

CASE NO. 20STCP01954

NOTICE OF HEARING ON PETITION
FOR APPROVAL OF TRANSFER OF
STRUCTURED SETTLEMENT PAYMENT
RIGHTS

Date: 9 | 4 2020
Time: 8:30 a.m. 3:00 p m
Place: Department 31
Los Angeles County Superior Court
111 North Hill Street
Los Angeles, California 90012

-1-
NOTICE OF HEARING ON PETITION FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT
PAYMENT RIGHTS

TO THE COURT AND ALL INTERESTED PARTIES SET FORTH BELOW:

YOU ARE HEREBY NOTIFIED THAT on the above date, at the above time, in the above listed Department of the above-entitled court, located at the above address, pursuant to California Insurance Code, section 10139.5, the Court will hold a hearing on the Petition (the "Petition") filed by Petitioner Open Capital, LLC ("Petitioner") seeking approval of the transfer of certain structured settlement payment rights by Alexander Navas ("Payee") to Petitioner or its assignee.

Any interested party may support, oppose, or otherwise respond to the Petitioner's application for approval of the transfer of structured settlement payment rights either in person, or by counsel, by submitting written comments to the Court or by participating in the hearing. If you desire to submit written comments to the Court, any such response must be filed with the Court within 15 days of service of this Notice of Hearing in order to be considered by the Court.

Pursuant to California Insurance Code, section 10139.5, Petitioner has attached hereto copies of the following documents and provides the following information:

A.    A copy of the Petition for Approval of Transfer of Structured Settlement Payment Rights is served herewith.

B.    A copy of the Transfer Agreement between Petitioner and Payee, which is attached to the Petition.

C.    A copy of the Disclosure Statement provided to Payee pursuant to California Insurance Code Section 10136(a), which is attached to the Petition.

D.    Copies of the underlying structured settlement documents, to the extent available, are attached to the Petition.

E.    The Notice of Compliance, with the original thereof to the California Department of Justice / Attorney General, is attached hereto as Exhibit "A."

F.    The Declaration of the Payee is attached to the Petition.

This Notice has been served upon the Attorney General's office pursuant to California Insurance Code, section 10139 and the following interested parties pursuant to California Insurance Code, section 10139.5:

NOTICE OF HEARING ON PETITION FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS

Structured Settlement Coordinator
Department of Justice
California Attorney General's Office
Attention Consumer Law Section
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-3364

Alexander Navas
5051 Cahuenga Boulevard, Apt. 6
North Hollywood, California 91601

Pacific Life and Annuity Services, Inc.
Attention: Agent for Service of Process
700 Newport Center Drive
Newport Beach, California 92660

Pacific Life Insurance Company
Attention: Agent for Service of Process
700 Newport Center Drive
Newport Beach, California 92660

DATED:  June 23, 2020                          Respectfully noticed,

                                               LAW OFFICES OF JOHN Z. SHAFAI

                                               By:

                                                   JOHN Z. SHAFAI,
                                                   Attorneys for Petitioner,
                                                   OPEN CAPITAL, LLC

-3-
NOTICE OF HEARING ON PETITION FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT
PAYMENT RIGHTS

# EXHIBIT "A"

# EXHIBIT "A"

Attorney at Law
# JOHN Z. SHAFAI, ESQ.
Solicitor of England and Wales

Law Offices of John Z. Shafai
9361 Charleville Boulevard, #334, Beverly Hills, California 90212 USA ● telephone (310) 788-2889 ● facsimile (310) 788-2885

To:     Structured Settlement Coordinator
        Department of Justice
        California Attorney General's Office
        Attention: Consumer Law Section
        455 Golden Gate Avenue, Suite 11000
        San Francisco, California 94102-3364

From:   Open Capital, LLC

Date:   June 23, 2020

Re:     Transfer of Structured Settlement Payment Rights of Alexander Navas

## NOTICE OF COMPLIANCE

This notice is provided to the Office of the Attorney General pursuant to California Insurance Code, section 10139(a). Open Capital, LLC, hereby verifies that all provisions of Insurance Code, sections 10136, 10137, 10138 have been met relating to the application for approval of the transfer of the structured settlement payment rights of Alexander Navas.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of June, 2020.

John Z. Shafai, Esq.,
Counsel for Open Capital, LLC

# EXHIBIT "4"

# EXHIBIT "4"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

**20STCP01954**                                                     September 14, 2020
**IN THE MATTER OF: OPEN CAPITAL, LLC**                                        2:00 PM

| | |
|---|---|
| Judge: Honorable Yolanda Orozco | CSR: None |
| Judicial Assistant: H. Garcia | ERM: None |
| Courtroom Assistant: T. de la Paz | Deputy Sheriff: None |

APPEARANCES:

For Petitioner(s): John Z. Shafai (Telephonic)

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Hearing on Petition For Approval Of Transfer Of Structured Settlement Payment Rights

The Court's tentative ruling is posted online for parties to review.

The matter is called for hearing.

Petitioner submits to the Court's tentative ruling.

The Court adopts its tentative ruling as the final order of the Court as follows:

The Petition Petition for Approval of Transfer of Structured Settlement Payment Rights filed by Open Capital, LLC on 06/19/2020 is Granted.

Background

On June 19, 2020, Petitioner Open Capital, LLC filed the instant petition for court approval of a transfer of certain structured settlement payments from A. Navas ("Payee"). The petition states that Payee is the recipient of certain structured settlements payments under which Pacific Life and Annuity Services, Inc. (the "Payment Obligor") is the obligor and pursuant to which the Payment Obligor purchased an annuity contract issued by Pacific Life Insurance Company (the "Payment Issuer") to fund the aforesaid obligation. Subject to the Court's approval of this Petition, Payee has entered into a transfer agreement with Petitioner's assignor (the "Transfer Agreement") to transfer those certain structure settlement payments described in Paragraph 1 of the Transfer Agreement (the "Transferred Payments").

Legal Standard

This Petition is governed by Insurance Code sections 10134–10139.5. (See 321 Henderson

---

Minute Order                                                          Page 1 of 6

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 31

20STCP01954                                                      September 14, 2020
IN THE MATTER OF: OPEN CAPITAL, LLC                                      2:00 PM

Judge: Honorable Yolanda Orozco          CSR: None
Judicial Assistant: H. Garcia            ERM: None
Courtroom Assistant: T. de la Paz        Deputy Sheriff: None

Receivables Origination LLC v. Sioteco (2009) 173 Cal.App.4th 1059, 1066.) Under Insurance
Code section 10137, a transfer of structured settlement payment rights is void unless a court
reviews and approves the transfer and finds the following conditions are met:

a. The transfer of the structured settlement payment rights is fair and reasonable and in the best
interest of the payee, taking into account the welfare and support of his or her dependents.

b. The transfer complies with the requirements of this article and will not contravene other
applicable law, and the court has reviewed and approved the transfer as provided in Section
10139.5.

Pursuant to Insurance Code section 10139.5(a), the Court must make the following express
findings as to a transfer of structured settlement payment rights:

1. The transfer is in the best interest of the payee, taking into account the welfare and support of
the payee's dependents.
2. The payee has been advised in writing by the transferee to seek independent professional
advice regarding the transfer and has either received that advice or knowingly waived receipt of
that advice in writing.
3. The transferee has provided the payee with a disclosure form that complies with Section
10136 and the transfer agreement complies with Sections 10136 and 10138.
4. The transfer does not contravene any applicable statute or the order of any court or other
government authority.
5. The payee reasonably understands the terms of the transfer agreement, including the terms set
forth in the disclosure statement required by Section 10136.
6. The payee understands and does not wish to exercise the payee's right to cancel the transfer
agreement.

The transfer agreement is effective only upon approval in a final court order. (Ins. Code, §
10139.5(a).)

Insurance Code section 10139.5(b) sets forth 15 factors to consider in determining whether the
transfer is fair and reasonable and in the best interest of the payee, including but not limited to:
(1) the reasonable preference and desire of the payee to complete the proposed transaction,
taking into account the payee's age, mental capacity, legal knowledge, and apparent maturity
level; (2) the stated purpose of the transfer; (3) the payee's financial and economic situation; and
(4) the terms of the transaction, including whether the payee is transferring monthly or lump sum
payments or all or a portion of his or her future payments.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 31

**20STCP01954**                                                September 14, 2020
**IN THE MATTER OF: OPEN CAPITAL, LLC**                                 2:00 PM

Judge: Honorable Yolanda Orozco              CSR: None
Judicial Assistant: H. Garcia                 ERM: None
Courtroom Assistant: T. de la Paz             Deputy Sheriff: None

---

Procedurally, Insurance Code section 10136(b) provides that ten or more days before the payee executes a transfer agreement, the transferee shall provide the payee with a separate written disclosure statement, accurately completed with the information that applies to the transfer agreement in at least 12-point type.

The court-approval process requires the transferee to file a petition in the county in which the transferor resides for approval of the transfer. (Ins. Code, § 10139.5(f)(1).) In addition, the following elements are required to be served and filed not less than 20 days prior to the scheduled hearing on any application for approval of a transfer of structured settlement payment rights (Id. § 10139.5(f)(2)):

A. A copy of the transferee's current petition and any other prior petition, whether approved or withdrawn, that was filed with the court in accordance with paragraph (6) of subdivision (c).
B. A copy of the proposed transfer agreement and disclosure form required by paragraph (3) of subdivision (a).
C. A listing of each of the payee's dependents, together with each dependent's age.
D. A copy of the disclosure required in subdivision (b) of Section 10136.
E. A copy of the annuity contract, if available.
F. A copy of any qualified assignment agreement, if available.
G. A copy of the underlying structured settlement agreement, if available.
H. If a copy of a document described in subparagraph (E), (F), or (G) is unavailable or cannot be located, then the transferee is not required to attach a copy of that document to the petition or notice of the proposed transfer if the transferee satisfies the court that reasonable efforts to locate and secure a copy of the document have been made, including making inquiry with the payee. If the documents are available, but contain a confidentiality or nondisclosure provision, then the transferee shall summarize in the petition the payments due and owing to the payee, and, if requested by the court, shall provide copies of the documents to the court at a scheduled hearing.
I. Proof of service showing compliance with the notification requirements of this section.
J. Notification that any interested party is entitled to support, oppose, or otherwise respond to the transferee's petition, either in person or by counsel, by submitting written comments to the court or by participating in the hearing.
K. Notification of the time and place of the hearing and notification of the manner in which and the time by which written responses to the petition must be filed, which may not be less than 15 days after service of the transferee's notice, in order to be considered by the court.
L. If the payee entered into the structured settlement at issue within five years prior to the date of the transfer agreement, then the transferee shall provide the following notice to the payee's attorney of record at the time the structured settlement was created, if the attorney is licensed to

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 31

**20STCP01954**
**IN THE MATTER OF: OPEN CAPITAL, LLC**

September 14, 2020
2:00 PM

Judge: Honorable Yolanda Orozco
Judicial Assistant: H. Garcia
Courtroom Assistant: T. de la Paz

CSR: None
ERM: None
Deputy Sheriff: None

practice in California, at the attorney's address on file with the State Bar of California...

Further, at the time of filing such a petition, the transferee shall file a copy of the petition with the California Attorney General. (Ins. Code, § 10139.) Lastly, the court shall retain continuing jurisdiction to interpret and monitor the implementation of the transfer agreement as justice requires. (Id. § 10139.5(i).)

Discussion

The petition contains declarations providing support for the required factors. Attached to the petition is: (1) Exhibit 1 – an affidavit attesting to unavailability of copy of the underlying structured settlement agreement; (2) Exhibit 2 – the Transfer Agreement; (3) Exhibit 3 – a copy of the required Disclosure Statement; and (4) Exhibit 4 – an affidavit of the Payee.

The Transfer Agreement provides that A. Navas has agreed to transfer and assign to Open Capital, LLC the rights, title, and interest in the following payments due under the Structured Settlement Agreement: forty-three (43) monthly payments, each in the amount of one-thousand ninety eight and 53/100 dollars ($1,098.53), beginning with the payment on March 30, 2023 through to and including September 30, 2026; plus one (1) lump sum payment in the amount of forty-five thousand and 00/100 dollars ($45,000.00), due and payable on October 30, 2023. (Exhibit 2, ¶ 1.) Open Capital, LLC, in consideration for the transfer, will pay forty-two thousand eight hundred thirteen and 11/100 dollars ($42,813.11). (Exhibit 2, ¶ 2.) The aggregate amount of the structured settlement payments to be transferred is $92,236.79. (Exhibit 2, ¶ 3(b).) The discounted present value of all structured payments to be transferred is $91,903.67, determined by applying the applicable federal rate of 0.8% as of May 2020. (Exhibit 2, ¶ 3(e)-(f).) The purchase price to be paid was calculated using a discount rate of 18.7%. (Exhibit 2, ¶ 3(g).)

A. Navas is 20 years old and has no dependents. (Exhibit 2, Affidavit of Same Name; Exhibit 4, ¶ 8.) The underlying settlement in this action was a result of a settlement he received for a personal injury claim which did not result from a workers' compensation proceeding. (Exhibit 1.) Navas intends to use the proceeds from the transaction to find an apartment and cover living expenses during the pandemic. (Exhibit 4, ¶ 9.) Due to COVID-19, Navas' mother lost her job and Navas is the sole provider for his family. (Exhibit 4, ¶ 9.) Navas' current residence is being sold and he cannot afford to move due to a cut in his work hours. (Exhibit 4, ¶ 9.) The funds will be used to pay first, last, and security on an apartment and to furnish it. (Exhibit 4, ¶ 9.) The remaining funds will be used to cover living expenses during the pandemic. (Exhibit 4, ¶ 9.)

Navas attests to being employed by JRD Enterprises and currently earns an annual salary of

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 31

**20STCP01954**                                                September 14, 2020
**IN THE MATTER OF: OPEN CAPITAL, LLC**                                      2:00 PM

Judge: Honorable Yolanda Orozco          CSR: None
Judicial Assistant: H. Garcia            ERM: None
Courtroom Assistant: T. de la Paz        Deputy Sheriff: None

approximately $31,200.00. (Exhibit 4, ¶ 10.) Navas asserts that the structured settlement payments are therefore not his only source of income. (Exhibit 4, ¶ 10.) Navas also points out that he has not assigned all of his structured settlement payments, as he will still receive the following periodic payments: monthly payments of $1,690.05 due on the 30th of every month through February 28, 2023; monthly payments of $591.52 from March 30, 2023 to September 30, 2026; and 1 sump sum payment of $4,929.46 due and payable on October 30, 2024. (Exhibit 4, ¶ 10.)

The Court finds that Petitioner and Payee have complied with all statutory requirements. The Court further finds that:

1. The transfer is in the best interests of Payee, taking into account the welfare and support of Payee's dependents;
2. Payee has been advised in writing by Petitioner to seek independent professional advice regarding the transfer and has knowingly waived receipt of that advice in writing;
3. Petitioner has provided Payee with a disclosure form that complies with Section 1013 and the Transfer Agreement complies with Sections 10136 and 10138;
4. The transfer does not contravene any applicable statute, order of any court, or other government authority;
5. Payee reasonably understands the terms of the Transfer Agreement, including the terms set forth in the Disclosure Statement required by Section 10136; and
6. Payee understands and does not wish to exercise his right to cancel the Transfer Agreement.

Based on the foregoing, Open Capital, LLC's Petition for Approval of Transfer of Structured Settlement Payment Rights is GRANTED.

Conclusion

Open Capital, LLC's Petition for Approval of Transfer of Structured Settlement Payment Rights is GRANTED.

Order to Show Cause Re: Dismissal is scheduled for 12/14/2020 at 09:30 AM in Department 31 at Stanley Mosk Courthouse.

The parties are strongly encouraged to attend all scheduled hearings virtually or by audio. Effective July 20, 2020, all matters will be scheduled virtually and/or with audio through the Court's LACourtConnect technology. The parties are strongly encouraged to use LACourtConnect for all their matters. All social distancing protocols will be observed at the

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 31

**20STCP01954**                                          September 14, 2020
**IN THE MATTER OF: OPEN CAPITAL, LLC**                        2:00 PM

Judge: Honorable Yolanda Orozco          CSR: None
Judicial Assistant: H. Garcia            ERM: None
Courtroom Assistant: T. de la Paz        Deputy Sheriff: None

Courthouse and in the courtrooms.

Counsel for petitioner is to give notice.

**PROOF OF SERVICE BY MAIL**

1
2
3

    I am over the age of 18 years, and not a party to the within action; my business address is 9461 Charleville Boulevard, #334, Beverly Hills, California 90212.

4
5
6
7
8
9

    On **October 27, 2020,** a true and correct copy of the within document(s) more fully described as **NOTICE OF MOTION AND MOTION BY PETITIONER OPEN TABLE, LLC FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS, MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN Z. SHAFAI** was placed for deposit in the United States Postal Service in a sealed envelope, with postage fully prepaid, on the party(ies) named below, and that envelope was placed for collection and mailing on that date following ordinary business practices addressed as follows:

10
11
12
13
14

**Dale K. Galipo, Esq.**
**Melanie T. Partow, Esq.**
**THE LAW OFFICES OF DALE K. GALIPO**
**21800 Burbank Blvd., Suite 310**
**Woodland Hills, CA 91367**

**Christel Emmet**
**12336 Foxcroft Place**
**Granada Hills, CA 91344**

**CPT**
**1 Civic Center Drive – Suite 310**
**San Marcos, CA 92069**

15
16
17

**Cory Brente**
**Colleen Smith**
**200 N. Main St., 6th Floor**
**Los Angeles, CA 90012**

**Department of Health Services, Remainder Beneficiary**
**MS 4720, P.O. Box 997425,**
**Sacramento, CA 95899-7425**

18
19
20

**A.N.**
**12336 Foxcroft Place**
**Granada Hills, CA 91344**

**Department of Mental Health, Remainder Beneficiary**
**1600 9th Street, Sacramento, CA 95814**

21
22

**BY MAIL:**

23
24
25

    I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, it is deposited with the United States Postal Service that same day in the ordinary course of business.

26
27

    I declare under penalty of perjury under the laws of the State of California that the foregoing Proof of Service is true and correct and that this declaration was executed on **October 27, 2020.**

28
29
30
31

*Ariana Blumenfeld-James*
_____
Ariana Blumenfeld-James